CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendant
ZHEJIANG FUCHUEN CO. LTD.
366 Main Street
Port Washington, New York 110050
Telephone:    516-767-3600
Telefax:       516-767-3605
Owen F. Duffy (OD-3144)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
TRANSFIELD ER CAPE LIMITED                                  :
                                                            :
                                                            :
              Plaintiff,                                    :          07 CV 04528 (MGC)
                                                            :
         - against -                                        :
                                                            :
FUCHUEN DIHAI SHIPPING CO. LTD., and                        :
ZHEJIANG FUCHUEN CO. LTD.                                   :
                                                            :
              Defendants,                                   :
                                                            :
------------------------------------------------------------x


# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT ZHEJIANG FUCHUEN'S
## MOTION TO VACATE PROCESS OF MARITIME ATTACHMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ………………………………………………...………....…ii

TABLE OF AUTHORITIES ……………………………………………....................iii

PRELIMINARY STATEMENT...……………………..…………………....……………1

THE FACTS………………………………………………….............................3

LEGAL ARGUMENT……………………………………………...........................3

    I.     THE PLAINTIFF TRANSFIELD HAS THE BURDEN
          TO SHOW WHY THE ATTACHMENT SHOULD NOT
          BE VACATED………………………………………………………………3

    II.    THE ATTACHMENT SHOULD BE VACATED BECAUSE
          PLAINTIFF'S CLAIM IS NOT BASED UPON A MARITIME
          CONTRACT AND, THEREFORE, THE REQURIEMENTS FOR
          A RULE B ATTACHMENT ARE NOT MET…………..……………..5

    III.   THE ATTACHMENT SHOULD BE VACATED
          BECAUSE THE PLAINTIFF HAS FAILED TO PLEAD
          A SUFFICIENT CLAIM FOR ALTER EGO LIABILITY
          AGAINST ZHEJIANG…………………………………………………11

    IV.   THE ATTACHMENT SHOULD BE VACATED
          BECAUSE THE EFTs ATTACHED IN THIS ACTION DO
          NOT CONSTITUTE ATTACHABLE PROPERTY AND THE
          REQUIREMENTS OF RULE B ARE NOT MET………………….....19

    V.    THE ATTACHMENT SHOULD BE VACATED
          BECAUSE THERE IS A STATUTORY BAR TO A
          PREJUDGMENT ATTACHMENT OF DEFENDANT
          ZHEJIANG'S PROPERTY……………………….……………..29

    VI.   THE COURT SHOULD VACATE THE ATTACHMENT
          AS THE PLAINTIFF COULD OBTAIN *IN PERSONAM*
          JURISDICTION OVER THE DEFENDANT, ZHEJIANG, IN A
          DISTRICT WHERE THE PLAINTIFF IS LOCATED AND IS
          CONVENIENT TO THE PLAINTIFF………...........................35

CONCLUSION ……………………………......................................38

## TABLE OF AUTHORITIES

**PAGE**

CASES

Alifieris v. American Airlines, Inc.,
      523 F. Supp. 1189 (E.D.N.Y. 1981)……………………………………………..30

American Renaissance Lines, Inc. v. Saxis Steamship Co.,
      502 F.2d 674 (2nd Cir. 1974)……………………………………………………..12

Aqua Stoli Shipping Ltd. v. Gardiner Smith Pty Ltd.,
      460 F.3d 434 (2d Cir. 2006)...1, 2, 3, 4, 5, 19, 20, 21, 22, 23, 25, 28, 35, 36, 37, 38

Arango v. Guzman Travel Advisors Corp.,
      621 F.2d 1371 (5th Cir. 1980)………………………………………………...30

Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.,
      85 F.3d 44 (2d Cir. 1996)……………………………………………………...21, 27

Banco de Seguros del Estado v. Mut. Marine Office, Inc.,
      344 F.3d 255 (2d Cir. 2003)…………………………………………………...29

Brown v. M/V Global Link,
      2003 U.S. Dist. LEXIS 14723 (S.D.N.Y. 2003)…………………………………..8

Carey v. National Oil Corp.,
      592 F.2d 673 (2d Cir. 1979)…………………………………………………...30

Cargill Int'l S.A. v. M/T Pavel Dybenko,
      991 F.2d 1012 (2d Cir. 1993)…………………………………………………29

Chi Shun Hua Steel Co. v. Crest Tankers, Inc.,
      708 F. Supp. 18 (D.N.H. 1989)…………………………………………………....8

Cimino v. Raymark Indus.,
      751 F. Supp. 649 (E.D. Tex. 1990), *aff'd in part, vacated in part on other grounds*, 151 F.3d 297 (5th Cir. 1998), *reh'g denied* (Sept. 21, 1998)…………..31

Citizens Bank v. Strumpf,
      516 U.S. 16 (1995)……………………………………………………….....23, 26

City Nat'l Bank of Fla. v. Morgan Stanley DW, Inc.,
      2007 U.S. Dist. LEXIS 34932 (S.D.N.Y. May 14, 2007)………………………15, 16

Consub Del. LLC v. Schahin Engenharia Limitada,
      476 F. Supp. 2d 305 (S.D.N.Y. 2007)…………………………………………20, 28

David v. Glemby,
     717 F.Supp. 162 (S.D.N.Y. 1986)...................................................12

Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.,
     341 F.2d 50 (2d Cir. 1965)........................................................21

Dolco Invs., Ltd. v. Moonriver Dev., Ltd.,
     2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. Apr. 26, 2007)................15, 16, 17, 18

Dole Food Co. v. Patrickson,
     538 U.S. 468 (2003).............................................................33

Dow Chemical Pacific, Ltd. v. Rascator Maritime S.A.,
     782 F.2d 329 (2d Cir. 1986)......................................................13

EED Holdings v. Palmer Johnson Acquisition Corp.,
     228 F.R.D. 508 (S.D.N.Y. 2005)..................................................14

Exxon Corp. v. Central Gulf Lines,
     500 U.S. 603 (1991)..............................................................7

Favour Mind Ltd. v. Pacific Shores, Inc.,
     1999 U.S. Dist. LEXIS 18887 (S.D.N.Y. Dec. 7, 1999).......................32, 33

Feitshans v. Kahn,
     2006 U.S. Dist. LEXIS 68633 (S.D.N.Y. Sept. 21, 2006)..........................12

Freeman v. Complex Computing Co.,
     119 F.3d 1044, (2d Cir. 1997)....................................................12

Gartner v. Snyder,
     607 F.2d 582 (2d Cir. 1979).....................................................13

Grain Traders v. Citibank, N.A.,
     160 F.3d 97 (2d Cir. 1998)......................................................27

Greenly v. Mariner Mgmt. Group, Inc.,
     192 F.3d 22 (1st Cir. 1999).....................................................21

Holborn Oil Trading, Ltd. v. Interpetrol Bermuda, Ltd.,
     774 F. Supp. 840 (S.D.N.Y. 1991)............................................13, 14

In re Complaint of Clearsky Shipping Corp.,
     1999 U.S. Dist. LEXIS 17784 (E.D. La. Nov. 3, 1999), *later proceeding*
     *at* 2003 U.S. Dist. LEXIS 1245 ((E.D. La. Jan. 28, 2003)...................33

Insurance Co. v. Dunham,
      78 U.S. 1 (1871)...........................................................................7

Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.,
      476 F. Supp. 119 (S.D.N.Y. 1979)...........................................35

International Marine Consultants, Inc. v. Karavias,
      1985 U.S. Dist. LEXIS 19272 (S.D.N.Y. June 3, 1985).............................12

ITEL Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd.,
      909 F.2d 698 (2d Cir. 1990).................................................................13

Kossick v. United Fruit Co.,
      365 U.S. 731 (1961)...........................................................................7

Lopez del Valle v. Gobierno de la Capital,
      855 F. Supp. 34 (D.P.R. 1994)...........................................................30

Maersk, Inc. v. Neewra, Inc.,
      443 F. Supp. 2d 519 (S.D.N.Y. 2006)................................................4, 5

MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC,
      268 F.3d 58 (2d Cir. 2001)...............................................................13

Matimak Trading Co. v. Khalily,
      118 F.3d 76 (2d Cir. 1997) *cert. denied*, 522 U.S. 1091 (1998)...................32

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.,
      2007 U.S. Dist. LEXIS 29789 (S.D.N.Y. Apr. 24, 2007)....................20, 28

Norfolk Southern Ry. V. James N. Kirby, Pty Ltd.,
      543 U.S. 14 (2004).......................................................................6, 7

North Pacific S.S. Co. v. Hall Bros. Marine R. & Shipbuilding Co.,
      249 U.S. 119 (1919)...................................................................7

Northern Tankers (Cyprus) v. Backstrom,
      967 F. Supp. 1391 (D. Conn. 1997)...................................................13

OGI Oceangate Transportation Co., Ltd. v. R. P. Logistics Pvt. Ltd., et al.,
      06 Civ. 9441 (June 21, 2007)............................................................36

Pardo v. Wilson Line of Washington, Inc.,
      134 U.S. App. D.C. 249, 414 F.2d 1145 (1969).....................................12

Pere ex rel. Pere v. Nuovo Pignone, Inc.,
     150 F.3d 477 (5th Cir. 1998) *cert. denied* 525 U.S. 1141 (1999)....................33

Pitstick v. Potash Corp. of Saskatchewan Sales, Ltd.,
     698 F. Supp. 131 (S.D. Ohio 1988)..........................................…...30, 31, 34

P.R. Ports Auth. v. Barge KATY-B,
     427 F.3d 93 (1st Cir. 2005).................................................................14

Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.), Ltd.,
     759 F.2d 262 (2d Cir. 1985).................................................…...21, 22, 23

Republic of Argentina v. Weltover, Inc.,
     504 U.S. 607 (1992)........................................................................…...29

Rolls-Royce Motor Cars v. Schudroff,
     929 F. Supp. 117 (S.D.N.Y. 1996)......................................................14

Royal Swan Navigation Co. v. Global Container Lines,
     868 F. Supp. 599 (S.D.N.Y. 1994)......................................................35

S & S Mach. Co. v. Masinexportimport,
     706 F.2d 411 (2d Cir. 1983)..........................................................29, 30

Sahu v. Union Carbide Corp.,
     2006 U.S. Dist. LEXIS 84475 (S.D.N.Y. Nov. 20, 2006)...................12, 13, 17

Scelsa v. City Univ. of N.Y.,
     76 F.3d 37 (2d Cir. 1996)....................................................................6

Seamar Shipping Corporation v. Kremikovtzi Trade Limited,
     461 F. Supp.2d 222 (S.D.N.Y. 2006).................................................. 28, 29

SPL Shipping Ltd. v. Gujarat Cheminex Ltd.,
     2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007)......................…...16, 17

Straub v. A P Green, Inc.,
     38 F.3d 448 (9th Cir. 1994).............................................................…...33

T&O Shipping, Ltd. v. Source Link Co.,
     2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. Dec. 6, 2006)..........................…...17

Thanning v. Nassau County Med. Exam'rs Office,
     187 F.R.D. 69 (E.D.N.Y. 1999).........................................................…...6

Tide Line, Inc. v. Eastrade Commodities, Inc.,
    2006 U.S. Dist. LEXIS 60770 (S.D.N.Y. Aug. 25, 2006)............................17

Ullises Shipping Corp. v. FAL Shipping Co., Ltd.,
    415 F. Supp. 2d 318 (S.D.N.Y. 2006)
    *overruled on other grounds,* Aqua Stoli Shipping Ltd. v. Gardiner
    Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006) .........................…...…..3

Universal Africa Line (UAL) v. ED&F Man Cocoa,
    1996 U.S. Dist. LEXIS 4767 (E.D. Pa. Apr. 15, 1996)..............................36

United States v. Butterworth-Judson Corp.,
    267 U.S. 387 (1925)....................................................................…...26

United States v. Daccarett,
    6 F.3d 37 (2d Cir. 1993), *cert. denied* 510 U.S. 1191 (1994)...........19, 20, 22, 23

U. S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,
    241 F.3d 135 (2d Cir. 2001)...........................................................…...31

Vamvaship Mar. Ltd. v. Shivnath Rai Hanarain (India) Ltd.,
    C.A. docket 06-2121-cv.................................................................28

Wajilam Exps. (Singapore) Pte, Ltd. v. ATL Shipping Ltd.,
    475 F. Supp. 2d 275 (S.D.N.Y. 2006)......................................…...13, 14, 17

Western Bulk Carriers, Pty. v. P.S. Int'l,
    762 F. Supp. 1302 (S.D. Ohio 1991)....................................................35

Westvaco Worldwide Corp. v. M/V Niger Basin,
    1989 U.S. Dist. LEXIS 5323 (E.D. Pa. May 10, 1989).....................7, 8, 9, 10

Winter Storm Shipping, Ltd. v. TPI,
    310 F.3d 263 (2d Cir. N.Y. 2002) *cert. denied* 539 U.S. 927
    (2003) *prior proceeding at* 198 F.Supp.2d 385 (S.D.N.Y. 2002).....1, 19, 20, 21, 23

Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,
    933 F.2d 131 (2d Cir. 1991)......................................................…...…18

**STATUTES and RULES**

11 United States Code § 362(a)(3)...........................................................26

11 United States Code § 362(a)(6)...........................................................26

21 United States Code § 881(a)(6)....................................................................21

28 United States Code § 1292(b).............................................................20, 28

28 United States Code § 1333.................................................................…..5

28 United States Code §§ 1602-1611, The Foreign Sovereign Immunities Act...29, 33, 34

28 United States Code § 1603.................................................................31

28 United States Code § 1603(b)...........................................30, 31, 33, 34

28 United States Code § 1603(b)(3)......................................……..........32

28 United States Code § 1610(d)........................................…...29, 30, 34

46 U.S.C. Appendix § 740 ...................................................................…..7

55 Fed. Reg. 40792 (Oct. 5, 1990)..........................................................27

Federal Reserve System Regulation J, 12 C.F.R. Part 210...................................27

*Fed. R. Civ. P.* 8(a)...........................................................…..…..12, 14

*Fed. R. Civ. P.* 9(h)..................................................................…..............5

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
Rule B...........................................................................................................*passim*

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
Rule B(1)(a).........................................................................................................22

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
Rule C...........................................................................................................8, 10, 21

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
Rule E(2)(a).................................................................................................12, 14, 18

*Fed. R. Civ. P.*, Supplemental Rules for Certain Admiralty and Maritime Claims,
Rule E(4)(f).......................................................................................................1, 3

N.Y. U.C.C. § 4-A-404(1) (McKinney's 2006)..............................................24

N.Y. U.C.C. § 4-A-502 (McKinney's 2006).............................................23, 24

N.Y. U.C.C. § 4-A-503 (McKinney's 2006)......................................20, 21, 24

N.Y. U.C.C. § 4-A-504 (McKinney's 2006)...............................................25, 26

Uniform Commercial Code Article 4A.......................................................23, 27

**OTHER AUTHORITIES**

29 James W.N. Moore, MOORE'S FEDERAL PRACTICE, § 7.05.04 [5] (3rd Ed. 2005)........4

R. Force & M. Norris, 1 The Law of Seamen § 1:15 (55th ed. 2003).........................7

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of the Defendant, Zhejiang Fuchuen Co. Ltd., (hereinafter "Zhejiang") in support of Defendant's application, pursuant to F.R.C.P. Supplemental Rule E (4) (f), to Vacate the Process of Maritime Attachment and Garnishment issued in this matter to Plaintiff, Transfield ER Cape Limited (hereinafter "Transfield") on May 31, 2007.

The instant case pushes past the boundaries of both Winter Storm and the Second Circuit's later decision in Aqua Stoli on a number of fronts and should be vacated. Armed with the Process of Maritime Attachment and Garnishment, the Plaintiff Transfield has already restrained funds in the significant amount of $3,889,316.30 which were being electronically transferred through intermediary banks located in this district.

The arguments in support of the Motion to Vacate the Process of Maritime Attachment are several and each one provides an independent ground for Vacatur. First, the Plaintiff fails to allege a valid *"prima facie"* admiralty claim against the putative Defendant, Fuchuen Dihai Shipping Co., Ltd. (hereinafter "Fuchuen Dihai") and, therefore, the Plaintiff has not satisfied the requirements for issuance of a Process of Maritime Attachment and Garnishment against any party in this action. Second, the Plaintiff has failed to state a valid "prima facie" admiralty claim against the Defendant Zhejiang because the allegations against Zhejiang are based solely on alter ego liability, but are conclusory and, therefore, insufficient to state a claim for alter ego liability. Third, the Plaintiff Transfield has not found any attachable property of the Defendant Zhejiang within the Court's jurisdiction and, therefore, the attachment should be vacated and garnishees presently restraining funds should be directed to release all funds that

have been restrained. Fourth, there is a statutory bar to the attachment of the property of Defendant Zhejiang as the Defendant Zhejiang is "an agency or instrumentality of a foreign state" for purposes of the Foreign Sovereign Immunities Act. Finally, the Court should vacate the Process of Maritime Attachment and Garnishment, as against the Defendant Zhejiang, because the Defendant Zhejiang is subject to *in personam* jurisdiction in another jurisdiction convenient to the plaintiff and, in accordance with the principles enunciated by <u>Aqua Stoli</u>,  a maritime attachment is properly vacated when the Plaintiff and the Defendant are both present in the same district and would be subject to jurisdiction there, but the Plaintiff goes to another district to attach the Defendant's assets.

In the unlikely event that the Court is not persuaded by any of the arguments set forth above, and more fully developed below, then, at the very least, the attachment should be reduced. In the first instance, the attachment should be reduced because the Plaintiff's present claim is far in excess of the original claim that was filed in this Court back in 2004 and there is no discernable reason why the contractual damages under the very same contract could have been increased by more than $20,000.00 a day. In the second instance, the garnishees that have restrained funds being remitted to Zhejiang, as beneficiary, have made such restraints in violation of the rule that EFTs being remitted to a beneficiary are not properly attached.

All of these arguments are more fully developed below under the several points of legal argument. As the Court will see from those points of argument, the Process of Maritime Attachment and Garnishment must be vacated as to Defendant Zhejiang Fuchuen Co., Ltd.

## THE FACTS

The facts pertaining to the instant Motion to Vacate the Process of Maritime are more fully set forth in the accompanying Attorney's Affidavit of Owen F. Duffy, dated June 27, 2007. Rather than restate the facts fully herein, this Memorandum of Law will make reference to the facts set forth the accompanying Attorney's Affidavit. Citation to the Attorney's Affidavit will be noted as "Duffy Affidavit at ¶ -."

## LEGAL ARGUMENT

### POINT I

### THE PLAINTIFF TRANSFIELD HAS THE BURDEN
### TO SHOW WHY THE ATTACHMENT SHOULD NOT BE VACATED

Supplemental Admiralty Rule E (4)(f) of the Federal Rules of Civil Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief consistent with these rules.

F.R.C.P., Supplemental Rules for Admiralty and Maritime Claims, Rule E (4)(f) (emphasis added).  It is clear from the text of Rule E (4)(f) that  Plaintiff, Transfield, is required to defend the attachment and, more to the point, Plaintiff, Transfield, bears the burden of proof to demonstrate why the attachment should not be vacated. *See e.g.*, Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318, 323 (S.D.N.Y. 2006), *overruled on other grounds*, Aqua Stoli Shipping Ltd. v. Gardiner Smith Pty Ltd., 460 F. 3d 434, 445 (2d Cir. 2006). Given the nature of the attachment mechanism, which results in the freezing of

3

assets without any prior opportunity to be heard, both the Courts and legal

commentators have recognized that the burden placed on an attaching Plaintiff at

the Rule E hearing is considerable. *See e.g.*, 29 James W.N. Moore, MOORE'S

FEDERAL PRACTICE, § 7.05.04 [5] (3rd Ed. 2005).

Indeed, the Court of Appeals for the Second Circuit affirmed that it is Plaintiff's

burden to demonstrate that the requirements of Rule B have been met:

> "A district court must vacate an attachment if the plaintiff fails to sustain
> its burden of showing that he has satisfied the requirements of Rules B and
> E. We also believe vacatur is appropriate in other limited circumstances.
> While, as we have noted, the exact scope of a district court's vacatur
> power is not before us, we believe that a district court may vacate the
> attachment if the defendant shows at the Rule E hearing that 1) the
> defendant is subject to suit in a convenient adjacent jurisdiction; 2) the
> plaintiff could obtain in personam jurisdiction over the defendant in the
> district where the plaintiff is located; or 3) the plaintiff has already
> obtained sufficient security for the potential judgment, by attachment or
> otherwise."

Aqua Stoli, 460 F.3d at 445.

At a Rule E(4)(f) hearing, a defendant may attack "'the complaint, the arrest, the

security demanded, or any other alleged deficiency in the proceedings.'" Aqua Stoli, 384

F. Supp. 2d at 728 (quoting Supp. R. Fed. R. Civ. P. advisory committee's notes). To

satisfy the requirements of Rule B, the Plaintiff has the burden to show: (a) it has a *prima*

*facie* admiralty claim; (b) the named defendant cannot be found within district; (c) the

attached defendant's property was within the district; and (d) there is no statutory or

maritime law bar to the attachment. Aqua Stoli, 460 F.3d at 445. Simply put, in order to

maintain an attachment at a Rule E hearing, the Plaintiff must demonstrate that all

technical requirements for effective attachment have been met, Maersk, Inc. v. Neewra,

Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006), and there are no other grounds for

Vacatur. Aqua Stoli, 460 F.3d at 445.


## POINT II

### THE ATTACHMENT SHOULD BE VACATED BECAUSE PLAINTIFF'S CLAIM IS NOT BASED UPON A MARITIME CONTRACT AND, THEREFORE, THE REQUIREMENTS FOR A RULE B ATTACHMENT ARE NOT MET

Plaintiff commenced this action with the filing of a Verified Complaint on May

30, 2007. In the first paragraph of the Complaint, the Plaintiff alleged, "This is an

admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of

Civil Procedure and 28 United States Code § 1333" and, on that basis, sought an "order

directing the Clerk of the Court to issue Process of Maritime Attachment pursuant to Rule

B of the Supplemental Rules for Certain Admiralty and Maritime Claims, ...." *See*,

Duffy Affidavit at ¶ 32, Ex. 9, Verified Complaint at ¶ 32. To satisfy the requirements of

Rule B, the Plaintiff must have a *prima facie* admiralty claim. Aqua Stoli, 460 F.3d at

445. However, the Plaintiff, Transfield, does not have a *prima facie* admiralty claim and,

consequently, the Process of Maritime Attachment must be vacated.

In this case, it is beyond any credible argument that the Plaintiff's sole cause of

action against Defendant Fuchuen Dihai is for an alleged breach of a settlement

agreement. *See*, Duffy Affidavit at ¶s 37 to 39, Ex. 9, Verified Complaint at ¶s 15-17.

This presents the issue of whether a settlement agreement like the one sued upon herein is

a maritime contract and, thereby, a sufficient basis for invoking this court's admiralty

jurisdiction. If the settlement agreement is not a maritime contract giving rise to this

court's admiralty jurisdiction, then the Court does not have subject matter jurisdiction

over Plaintiff's claims, and the Complaint, the *ex parte* Order for the Issuance of a

Process of Maritime Attachment and Garnishment pursuant to Rule B of the

Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter "Rule B")

and the Process of Attachment, itself. must be vacated by this Court.

As an initial point, the U.S. district courts generally do not have subject matter

jurisdiction to enforce settlement agreements. Scelsa v. City Univ. of N.Y., 76 F.3d 37,

41 (2d Cir. 1996) (district court lacks jurisdiction to enforce a settlement agreement

where the dismissal order "neither expressly retains jurisdiction nor incorporates its

terms"); Thanning v. Nassau County Med. Exam'rs Office, 187 F.R.D. 69, 71 (E.D.N.Y.

1999) (same). Consequently, unless there is some other independent basis for federal

jurisdiction, such as diversity or admiralty jurisdiction, the plaintiff's remedy was to

bring a breach of contract action against Fuchuen Dihai in another court of competent

jurisdiction, whether that was Hong Kong or the U.S., where the plaintiff could obtain

personal jurisdiction over Fuchuen Dihai and Zhejiang.

In order for this court to exercise its subject matter jurisdiction and permit the

Plaintiff to make use of the Rule B procedure, the Plaintiff must present a valid *prima*

*facie* maritime claim and invoke the court's admiralty jurisdiction. The settlement

agreement is, of course, a contract, but it does not automatically follow that it is a

maritime contract, a breach of which would give rise to admiralty jurisdiction. In this

regard, the Supreme Court of the United States recently attempted to clarify the

differences between maritime and non-maritime contracts in Norfolk Southern Ry. v.

James N. Kirby, Pty Ltd., stating:

> Our cases do not draw clean lines between maritime and non-maritime
> contracts. We have recognized that "[t]he boundaries of admiralty

jurisdiction over contracts--as opposed to torts or crimes--being
conceptual rather than spatial, have always been difficult to draw." 365
U.S., at 735, 6 L. Ed. 2d 56, 81 S. Ct. 886. To ascertain whether a contract
is a maritime one, we cannot look to whether a ship or other vessel was
involved in the dispute, as we would in a putative maritime tort case. Cf.
Admiralty Extension Act, 46 U.S.C. App. § 740 [46 U.S.C.S. Appx. §
740] ("The admiralty and maritime jurisdiction of the United States shall
extend to and include all cases of damage or injury . . . caused by a vessel
on navigable water, notwithstanding that such damage or injury be done or
consummated on land"); R. Force & M. Norris, 1 The Law of Seamen §
1:15 (55th ed. 2003). Nor can we simply look to the place of the contract's
formation or performance. Instead, the answer "depends upon . . . the
nature and character of the contract," and the true criterion is whether it
has "reference to maritime service or maritime transactions." North Pacific
S. S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co., 249 U.S.
119, 125, 63 L. Ed. 510, 39 S. Ct. 221 (1919) (citing Insurance Co. v.
Dunham, 78 U.S. 1, 11 Wall. 1, 26, 20 L. Ed. 90 (1871)). See also Exxon
Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 611, 114 L. Ed. 2d 649,
111 S. Ct. 2071 (1991) ("[T]he trend in modern admiralty case law . . . is
to focus the jurisdictional inquiry upon whether the nature of the
transaction was maritime").

543 U.S. 14, 23-24 (2004).

In the context of considering whether the Plaintiff's claim against the Defendant

Fuchuen Dihai is maritime or non-maritime, an opinion from the Eastern District of

Pennsylvania is both consistent with the holding of Norfolk Southern and directly on

point with the case at hand. In Westvaco Worldwide Corp. v. M/V NIGER BASIN, 1989

U.S. Dist. LEXIS 5323 (E.D. Pa. May 10, 1989), plaintiff Westvaco commenced an

original action in a New York district court to recover for cargo losses occasioned during

carriage on board the M/V NIGER BASIN. Before the case was resolved by the district

court, the parties entered into a settlement agreement and a stipulation of discontinuance

without prejudice was filed in the New York district court. 1989 U.S. Dist. LEXIS 5323

*1. The Plaintiff later claimed that the settlement agreement was breached by the

defendant, and the Plaintiff re-filed the claim *in rem* and *in personam* in the Eastern

7

District of Pennsylvania together with a prayer for process of arrest under Supplemental Rule C. *Id.* Exactly like the case at hand, the Plaintiff sought the arrest warrant to obtain security for its claim. Unfortunately for Westvaco, the district court held that the Plaintiff's claim did not fall within the admiralty jurisdiction of the court. 1989 U.S. Dist. LEXIS 5323 *12. As observed by the district court:

> "[g]enerally, a contract relating to a ship in its use as such, or to commerce or navigation on navigable waters. ... is subject to maritime law and the case is one of admiralty jurisdiction. (citations omitted) Athough the original action stems from a dispute within admiralty jurisdiction, the action at bar is one of breach of the subsequent settlement agreement. The contract does not relate to any maritime activity or services. It is not a maritime contract.

> 1989 U.S. Dist. LEXIS 5323, *12 & 13.

Consequently, the district court held that the plaintiff could not assert a maritime lien in order to obtain an arrest of the vessel predicated on the defendant's breach of the settlement agreement. 1989 U.S. Dist. LEXIS 5323, *12 & 13; *accord*, Chi Shun Hua Steel Co., Ltd. v. Crest Tankers, Inc., 708 F.Supp. 18, 22 (D.N.H. 1989)(a settlement agreement to post a bond in order to release a vessel is not a maritime contract sufficient to bring disputes arising from the agreement with the admiralty jurisdiction of the court), *but cf.*, Brown v. M/V GLOBAL LINK, 2003 U.S. Dist. LEXIS 14723 (S.D.N.Y. 2003)(A seaman's settlement agreement, i.e. a "Red Letter Release", was a maritime contract sufficient to support admiralty jurisdiction because it related to maritime employment.).

Other than the fact that the Westvaco court considered a request for the issuance of Rule C arrest warrant and this court is concerned with the validity of a Rule B attachment, the case at bar is identical to Westvaco and, therefore, the result should be the

same. In this case, which does not involve the employment rights of a seaman, the

Plaintiff's Complaint states that it commenced a "prior action" for an attachment pursuant

to Rule B of the Supplemental Admiralty Rules on June 17, 2004, *see*, Duffy Affidavit at

¶ 21, Ex. 3, 2004 Complaint at ¶ 15, but that "[s]ubsequently, the parties negotiated a

compromise settlement and the action was voluntarily dismissed." *See*, Duffy Affidavit

¶s 26 to 28, Ex. 9, Verified Complaint at ¶ 15. The Plaintiff now claims that Defendant

Fuchen Dihai has "denied the existence of the settlement agreement, and Fuchuen Dihai

refused to pay the sum owed to the Plaintiff under the agreement." *See id.*, Ex 9 at ¶ 16.[1]

In particular, the Plaintiff argues that "[d]espite due demand Defendant Fuchuen Dihai

has failed to pay the amounts due and owing under the agreement and has failed to adhere

to the terms of the settlement, *See id.*, Ex. 9 at ¶ 17. All things considered, it is

abundantly clear that the Plaintiff is not suing or demanding arbitration from the

Defendant Fuchuen Dihai for any breach of a charter party, but is, instead, asserting a

claim for breach of a settlement agreement.

The situation before this Court is almost identical to the situation presented in

Westvaco. In both cases, the Plaintiffs' original claims were for breach of maritime

contracts, and the Plaintiffs' original actions were commenced in the U.S. Federal courts

on the basis of the courts' admiralty jurisdiction. In both cases, the parties subsequently

entered into settlement agreements and proceeded to dismiss the original maritime causes

of action without prejudice. Finally, in both Westvaco and here, the Plaintiffs made

claims for breach of the settlement agreement and brought subsequent actions in the U.S.

---

[1] It is noteworthy that the Plaintiff's Complaint at ¶ 16 admits that "The settlement agreement did not contain a jurisdiction clause." Thus, Plaintiff concedes that there was a settlement agreement.

district courts to make use of the arrest and attachment procedures provided for in the Supplemental Rules for Admiralty and Maritime claims at Rules B and C and, thereby, obtain security for their respective claims. In such circumstances, this Court should follow the lead of the <u>Westvaco</u> court in recognizing that the plaintiff is no longer presenting a maritime claim and the action should be dismissed for lack of subject matter jurisdiction.

Simply put, a settlement agreement to compromise a maritime claim is not, itself, a maritime contract and, consequently, a claim for breach of a settlement agreement does not entitle the Plaintiff to make use of the extraordinary remedy of prejudgment attachment as set forth in Rule B. Although the original action stems from a dispute within admiralty jurisdiction, the action at bar is one for a breach of a settlement agreement. 1989 U.S. Dist. LEXIS 5323, *13. The contract does not relate to any maritime activity or services and it is not a maritime contract. Whereas the Plaintiff Transfield does not have a maritime claim against the putative Defendant, Fuchuen Dihai; it follows that the Plaintiff cannot have a maritime claim against Defendant Zhejiang. Without a maritime claim, the requirements for Rule B have not been met and, therefore, the Process of Maritime Attachment and Garnishment must be vacated.

In any event, even if this Honorable Court were to conclude that the alleged breach of the settlement agreement is a breach of a maritime contract, it must be pointed out that the Plaintiff's resurrected claim is significantly overstated and cannot support the attachment of funds in the amount requested by the Plaintiff. In its original Complaint against Fuchuen Dihai only, the Plaintiff Transfield alleged a breach of charter party and asserted a claim for $1,980,000.00 in respect of detention damages incurred during a

24.75 day wait at Beilun, China. *See*, Duffy Affidavit at ¶ 18, Ex. 3, 2004 Complaint at ¶ 5. At the time, it was asserted that the detention of the vessel required Fuchuen Dihai to pay the plaintiff $80,000.00 per day in accordance with the contract. *See*, Duffy Affidavit at ¶ 18, Ex. 3, 2004 Complaint at ¶ 5. In the present action, by contrast, the amount of the plaintiff's damages under the very same contract has inexplicably increased from $80,000 per day to $100,000.00 per day, *see*, Duffy Affidavit at ¶ 34, Ex. 9, Verified Complaint at ¶ 7, which in turn has the effect that the Plaintiff's principal claim increased from $1,980,000.00 to $2,475,000.00. *See*, Duffy Affidavit at ¶ 34, Ex. 9, Verified Complaint at 19. Since the Plaintiff's claims for interest, estimated attorneys' fees and estimated arbitration expenses have also increased exponentially without any real change in circumstances, the attachment should be for the maximum sum of the Plaintiff's original principal claim, i.e. $1,980,000.00 and not the exorbitant amount of $3,889,316.30, *see*, Duffy Affidavit at ¶ 36, Ex. 9, which is nearly double the original claim.

## POINT III

### THE ATTACHMENT SHOULD BE VACATED BECAUSE THE PLAINTIFF HAS FAILED TO PLEAD A SUFFICIENT CLAIM FOR ALTER EGO LIABILITY AGAINST ZHEJIANG

As set forth in the preceding points, in order to satisfy the requirements of Rule B and maintain a maritime attachment, the Plaintiff has the burden to show it has a *prima facie* admiralty claim. With respect to the Defendant Zhejiang, the Plaintiff seeks to hold Zhejiang liable pursuant to an alter-ego theory. In order to have a *prima facie* admiralty claim based on alter-ego liability, the Plaintiff is required to sufficiently state a claim in accordance with the pleading requirements of the Federal Rules of Civil Procedure.

Plaintiff, Transfield, has failed to meet its burden in this regard and the complaint against Defendant Zhejiang must be dismissed in accordance with F.R.C.P. Rule 8(a) and Supplemental Rule E(2)(a). The end result is that the Process of Maritime Attachment must be vacated as to Defendant Zhejiang.

As a general rule, corporations are entitled to a presumption of corporate separateness. American Renaissance Lines, Inc. v. Saxis Steamship Co., 502 F.2d 674, 677 (2nd Cir. 1974); see also, International Marine Consultants, Inc. v. Karavias, 1985 U.S. Dist. LEXIS 19272 * 14 (S.D.N.Y. 1985); Freeman v. Complex Computing Company, Inc., 119 F.3d 1044, 1052 (2nd Cir. 1997); and, Feitshans v. Kahn, 2006 U.S. Dist. LEXIS 68633, *14 (S.D.N.Y. Sept. 21, 2006)("Piercing the corporate veil is the equitable limitation of the principle that corporations have a separate and independent legal personality such that shareholders are not personally liable for corporate acts and obligations."). Veil piercing is a rare exception to the well-settled American principle of limited liability for individual and corporate shareholders. David v. Glemby, 717 F.Supp. 162, 166 (S.D.N.Y. 1986). Indeed, as observed by Judge Scheindlin in Feitshans: "Because it is legitimate to incorporate to avoid personal liability, plaintiffs seeking to pierce the corporate veil bear a 'heavy burden' in showing that the defendants have perverted the privilege of doing business in a corporate form." Indeed, as recently stated by Judge Keenan:

> "Courts start with the presumption of corporate regularity and will only disregard the corporate form when the party seeking to veil pierce makes a substantial showing that the subject corporation is really a dummy or decoy corporation, see Pardo v. Wilson Line of Washington, Inc., 134 U.S. App. D.C. 249, 414 F.2d 1145 (D.C. Cir. 1969) (applying New York law), or where the subject corporation's "separate identity [is] so disregarded that it primarily transacted the dominator's business rather than its own

and can be called the other's alter ego," *Gartner v. Snyder, 607 F.2d 582 (2d Cir. 1979)."*

Sahu v. Union Carbide Corp., 2006 U.S. Dist. LEXIS 84475, * 10 (S.D.N.Y. Nov. 20, 2006).

Federal common law involves a two pronged test for piercing the corporate veil, to wit: the party sought to be charged must have used its alter ego to perpetrate a fraud or have so dominated and disregarded its alter ego's corporate form that the alter ego was actually carrying on the controlling party's business instead of its own. Holborn Oil Trading v. Interpetrol Bermuda, Ltd., 774 F. Supp. 840, 844 (S.D.N.Y. 1991). To state a claim for alter ego liability in federal court, a plaintiff need only plead domination, and not fraud as well. *See*, ITEL Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd., 909 F.2d 698, 703 (2d Cir. 1990); Dow Chem. Pac. v. Rascator Mar. S.A., 782 F.2d 329, 342 (2d Cir. 1986); Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping, 475 F. Supp.2d 275, 282 (S.D.N.Y. 2006); N. Tankers (Cyprus) v. Backstrom, 967 F. Supp. 1391, 1398-1401 (D. Conn. 1997) (discussing this issue at length). In this regard the Second Circuit has identified a number of factors that are relevant to evaluate alter ego claims based on an allegation of domination, and those factors include: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities. MAG Portfolio Consultant, GmbH v.

13

Merlin Biomed Group, LLC, 268 F.3d 58, 63 (2d Cir. 2001); *and see,* Holborn v. Interpetrol, 774 F. Supp. at 844 (applying these factors in the admiralty context); Wajilam Exports, 475 F. Supp.2d at 284 (same).

When not based on fraud, "veil-piercing claims are generally subject to the pleading requirements imposed by Fed.R.Civ.P.8(a), which requires only 'a short and plain statement' of the claim showing that the pleader is entitled to relief.'" EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005), *citing,* Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F.Supp. 117, 122 (S.D.N.Y. 1996). Suits in admiralty are further subject to Fed.R.Civ.P.Supp. Rule E(2)(a), which provides that:

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

> Fed.R.Civ.P.Supp.Rule E(2)(a).

"This heightened pleading standard [provided by Supp. R. E (2)(a)] is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* [or *quasi in rem*] admiralty proceedings." P.R. Ports Auth. v. Barge KATY-B, 427 F.3d 93, 105 (1st Cir. 2005) (noting that "[o]rdinary notice pleading does not satisfy the stringencies of [the supplemental] rules"). In this context, and in order survive a motion to dismiss, Transfield needs to have alleged ***sufficient facts*** to support an inference that Zhejiang has so dominated and disregarded Fuchuen Dihai Shipping's form that Zhejiang, rather than Fuchuen Dihai, actually conducted Fuchuen Dihai's business. Wajilam Exports, 475 F. Supp.2d at 282-83. Unfortunately for the Plaintiff Transfield, sufficient facts have not

14

been alleged and, therefore, the complaint against Defendant Zhejiang must be dismissed and the attachment vacated.

Recently, Judge Sweet of the Southern District of New York had the opportunity to consider the sufficiency of alter ego allegations made in a similar case where the Plaintiff actually did assert a valid maritime claim for breach of contract to provide services and supplies to a vessel, as opposed to a breach of settlement agreement, and the Plaintiff further sought to obtain security for that maritime claim against the property of an alleged alter ego defendant with a Rule B Process of Maritime Attachment. Dolco Investments, Ltd., Cypress v. Moonriver Development, Ltd., GML Ltd. and Kevin Bromely, 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. April 26, 2007). In Dolco, alter ego liability was asserted against the defendant GML with the following allegations:

> Upon information and belief, defendant GML, has been used by defendant Moonriver, from time to time, as a vehicle to pay funds owed to plaintiff Dolco.

> Upon information and belief, defendant Bromley is a director of both Moonriver and GML.

> Upon information and belief, defendant GML has used Moonriver to perpetuate a fraud and/or has so dominated and disregarded its corporate form that it primarily transacted GML's corporate business rather than Moonriver's own corporate business.

> 2007 U.S. Dist. LEXIS 31101, * 21 – 22.

Judge Sweet determined that the Plaintiff, Dolco, failed to meet its pleading burden because the Verified Complaint did not include any *factual* allegations that GML exercised complete domination over the putative defendant. Dolco v. Moonriver, 2007 U.S. Dist. LEXIS 31101, * 28. Consequently, Judge Sweet held that Dolco failed to state a claim against GML. 2007 U.S. Dist. LEXIS 31101, * 31; *accord*, City Nat'l Bank of

15

<u>Fla. v. Morgan Stanley DW, Inc.</u>, 2007 U.S. Dist. LEXIS 34932, *4 (S.D.N.Y. May 14, 2007)(Pure conclusory allegations cannot suffice to state a claim based on veil piercing or alter ego liability even under the liberal notice pleading standard.).

Similar to the situations presented to Judge Sweet in <u>Dolco v. Moonriver</u> and to Judge Cote in <u>City Nat'l Bank of Fla.,</u> Transfield presents insufficient factual allegations to state a claim against Zhejiang based on alter ego liability. Transfield has not presented any, or otherwise any sufficient, factual allegations that Zhejiang exercised complete domination over Fuchuen Dihai such that Zhejiang so dominated and disregarded Fuchuen Dihai's corporate form that the alter ego was actually carrying on the controlling party's business instead of its own. Other than the formulaic and conclusory allegations of domination set forth in the Verified Complaint, *see*, Duffy Affidavit at ¶ 42, Ex. 9 at ¶s 20, 21, 23, 26, 28, 29 &30, the sole factual allegations presented to support a claim for alter ego liability based on domination rests with the meager and wholly inadequate allegations that:

> Defendants have the same exact address: United Centre 35th Floor, Room B, 95 Queensway Admiral, Hong Kong.; and,

> Upon information and belief, Zhejiang Fuchuen made a payment on Fuchuen Dihai's behalf with regard to the above agreement on May 18, 2004 in the amount of $248,192.56.

*See*, Duffy Affidavit at ¶ 43, Ex. 9, Verified Complaint at ¶s 22 and 27.

Those allegations are even less than what was alleged in <u>Dolco</u> and, under the heightened standard of Fed.R.Civ.P.Supp.Rule E(2) (a), more is required. *See e.g.*, <u>Dolco v. Moonriver,</u> *citing to,* <u>SPL Shipping Ltd. v. Gujarat Cheminex Ltd.</u>, 2007 U.S. Dist. LEXIS 18562, at *11 (S.D.N.Y. Mar. 15, 2007)(denying motion to dismiss where complaint alleged that dominant company had made multiple payments on behalf of

16

servient company, "there existed such unity of ownership and interest . . . that no

separation exist[ed] between" the two, and funds were intermingled); T & O Shipping,

Ltd. v. Source Link, Co., Ltd., 2006 U.S. Dist. LEXIS 88153 at *23-*25 (S.D.N.Y. Dec.

5, 2006) (denying motion to dismiss when the complaint alleged that contracts transacted

by the servient company inexplicably always bore the name of the dominant company

and the entities shared the same ownership, employees, and fax number); Wajilam

Exports, 475 F. Supp.2d at 283 (denying motion to dismiss when complaint alleged a

"regular practice" of diverting and commingling funds, which was supported by an

affidavit alleging that funds were *always* diverted to the dominant company); Tide Line,

Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 60770 at *7 n.3 (S.D.N.Y.

Aug. 25, 2006)(denying motion to dismiss when complaint alleged that servient company

was "merely a shell-corporation" which had no assets, employees or office of its own,

used the dominant company's letterhead, and for which the dominant company routinely

transacted business despite no contractual agreement to do so).

   More like Dolco, but substantially less than was the case in SPL Shipping, T & O

Shipping, Ltd., Wajilam Exports, and Tide Line, Inc., Transfield only points to one

instance where, *upon information and belief*, the Defendant Zhejiang made a payment on

behalf of Fuchuen Dihai and, otherwise, claims that the defendants have an office in the

same building. Even if proven true, those allegations do not suggest the complete

domination necessary to establish alter ego liability. *Cf.*, Sahu v. Union Carbide Corp.,

2006 U.S. Dist. LEXIS 84475, * 12 (S.D.N.Y. Nov. 20, 2006)("[t]he mere existence of a

parent-subsidiary corporate relationship is insufficient to establish a unity of interest

between the two corporations" absent a showing of "complete dominion and control

17

[over] the subsidiary's daily operations."). Transfield, however, makes no, and indeed it cannot make, any factual allegations with respect to the complete "domination" of Fuchuen Dihai such as: recurrent payments by Zhejiang on behalf of Fuchuen Dihai; an intermingling of funds between the two companies; a disregard of corporate formalities; inadequate capitalization of Fuchuen Dihai; and, most certainly, no factual allegations to suggest overlap in ownership, officers, directors, and personnel. *See*, Duffy Affidavit at ¶ 32, Ex. 9, Verified Complaint at ¶s 22 and 27. Contrary to the inadequate approach taken by Plaintiff Transfield in its Verified Complaint, factual allegations of domination require the assertion of multiple factual indicators of persuasive domination. Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2nd Cir. 1991).

Under the precedent of Wm. Passalacqua Builders, Inc., the precedent of Dolco and the plain language of Fed.R.Civ.P.Supp.R. E(2)(a), Transfield's formulaic recitation of the elements of a cause of action will not do. The so-called "factual" allegations presented by the Plaintiff are simply not enough to raise a right to relief above the speculative level, and Transfield's sparse "factual" allegations in support of the alter ego claim against Zhejhiang are a woefully insufficient basis to maintain a prejudgment attachment of Zhejiang's property and, especially so, where the amount restrained is the significant sum of $3,889,316.30. Accordingly, and consistent with the holding of Judge Sweet in Dolco, the Process of Maritime Attachment and Garnishment must be vacated as to Defendant Zhejiang Fuchuen Co., Ltd. for failure to state a claim.

**POINT IV**

## THE ATTACHMENT SHOULD BE VACATED BECAUSE THE EFTs ATTACHED IN THIS ACTION DO NOT CONSTITUTE ATTACHABLE PROPERTY AND THE REQUIREMENTS OF RULE B ARE NOT MET

In the case at hand, several garnishee banks in New York have restrained funds as being the property of the Defendant, Zhejiang. *See,* Duffy Affidavit at ¶s 47 to 53. However, there is no restraint of actual tangible funds because the "funds" under restraint were actually electronic transfers through intermediary banks in New York. *See,* Duffy Affidavit at ¶s 47 & 53. The intangible transfers represented monies that were being paid by or to the Defendant Zhejiang to third parties who have no involvement with any disputes between Fuchuen Dihai Shipping Co. Ltd. and Transfield or the charter of the M/V ALINA. *See,* Duffy Affidavit at ¶ 53.

The propriety of attaching electronic fund transfers (hereinafter "EFTs") pursuant to Rule B as they move through intermediary banks in New York was established by the Second Circuit in <u>Winter Storm Shipping Ltd. v. TPI</u>. 310 F.3d 263 (2d Cir. 2002) *cert. denied* 539 U.S. 927 (2003). However, in a later case entitled <u>Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty. Ltd.,</u> 460 F.3d 434 (2d Cir. 2006), while the Second Circuit did not overrule <u>Winter Storm,</u> it did unmistakably reflect on the wisdom of its decision in <u>Winter Storm</u> as "... open to question ...." <u>Aqua Stoli, supra</u> 460 F.3d at 446 n. 6. More specifically, the Court wrote:

> The correctness of our decision in <u>***Winter Storm***</u> [S<u>*hipping Ltd. v. TPI*</u>, 310 F.3d 263 (2d Cir. 2002)] seems open to question, especially its reliance on [<u>*U.S. v. Daccarett*</u>, 6 F.3d 37, 55 (2d. Cir. 1993), <u>*cert. denied*</u>, 510 U.S. 1191 (1994)] to hold that E[lectronic] F[unds] T[ransfer]s are property of the beneficiary or sender of an EFT.
>
> <u>*Id.*</u>

19

Indeed, as later recognized by Judge Hellerstein of this district court, the issue of whether electronic transfers through New York clearing banks can be attached has been the subject of divided opinions among the several district judges in the Second Circuit. Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahls Rohren, Ltd., 2007 U.S. Dist. LEXIS 29789 * 1(S.D.N.Y. April 24, 2007); see also, Consub Delaware LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305 (S.D.N.Y. 2007)(Judge Scheindlin denied a motion to vacate an attachment ruling against the defendant's contentions as to the propriety of attachment of EFTs, but found that the issue warranted immediate review on appeal and, therefore, certified the question for appeal under 28 U.S.C. § 1292(b).).

The core issue presented on appeal in Aqua Stoli was whether a court should consider certain factors not specified in Rule B when addressing a motion to vacate a maritime attachment. The footnote quoted above referred to the Court's prior decision in Winter Storm dealt directly with the issue at the center of the instant motion, to wit: whether funds in the possession of an intermediary bank may be attached pursuant to Rule B. In the district court, Judge Scheindlin had held that electronic funds transfers at an intermediary bank did not constitute "property" of the Defendant subject to maritime attachment. Winter Storm Shipping. Ltd. v. TPI, 198 F.Supp.2d 385 (S.D.N.Y. 2002). Finding no relevant federal authority, Judge Scheindlin relied upon New York state law, which she found to be "... directly on point", for her holding that Section 4-A-503 of the New York Uniform Commercial Code, N.Y. U.C.C. Art. 4A (McKinney 1991), precluded a maritime attachment of funds in an intermediary bank. Id. at 390.

On appeal, the Second Circuit reversed Judge Scheindlin on that point, but the reversal rested entirely upon the previous holding in U.S. v. Daccarrett, 6 F.3d 37 (2d Cir.

1993), which involved the application of a federal criminal forfeiture statute, 21 U.S.C. §

881(a)(6), that incorporated Rule C of the Supplemental Rules for Certain Admiralty and

Maritime Claims in allowing for the institution of civil forfeiture proceedings. Winter

Storm, 310 F.3d at 276-278. The Second Circuit also stated, in *dicta,* that Section 4-A-503 of

the New York U.C.C. "cannot abrogate Winter Storm's right to a maritime attachment"

and that disallowing an attachment would be "... an impermissible effect because

Admiralty Rule B preempts U.C.C. § 4-A-503." *Id.* at 278-9.

Indeed, prior to both Winter Storm and Aqua Stoli, the Second Circuit had

held: "Federal law generally governs questions as to the validity of Rule B

attachments." Reibor International Ltd., v. Cargo Carriers (KACZ-CO.) Ltd., 759 F.2d

262, 265 (2d Cir. 1985). When neither statutory nor judicially created principles of

federal law provide an answer to a specific legal issue, federal courts should apply

state law, provided that the application of state law does not frustrate the national

interest of uniformity in admiralty law. *See,* Aurora Maritime Co. v. Abdullah Mohamed

Fahem & Co., 85 F.3d 44 (2d Cir. 1996); Greely v. Mariner Mgt. Group, Inc., 192 F.3d 22

(1st Cir. 1999). Moreover, deference should be given to state law when a court's ruling

has the potential for a profound impact upon that state. As the Second Circuit

reasoned in Det Bergenske Dampskibsselskab v. Sabre Shipping Co.:

> As a matter of federal law ... we defer to the judgment made by New
> York in this particular instance. Branch banking is typically a matter
> for state regulation, and a decision here contrary to the general rule of
> the state might have disruptive consequences for that state's banking
> system.
> 341 F.2d 50, 52-53 (2d Cir. 1965).

The Second Circuit addressed this tension between federal law and state law in

Reibor Int'l, Ltd. v. Cargo Carriers (KACZ-CO.), Ltd., 759 F.2d 262 (2d Cir. 1985), in

which it looked to New York state law for an equitable rule as to whether after-

acquired funds could be attached pursuant to Rule B, stating:

> [T]he precedent in federal admiralty law is so thin that we should turn
> to state law more directly on point. We clearly have this option
> where we find it appropriate. ... And we think it especially
> appropriate where, as here, a decision contrary to the general rule
> of the state might have disruptive consequences for the state banking
> system. New York being the situs for multiple transactions in
> world commerce, the New York banking system is particularly
> vulnerable to such disruption. Often, when a person in one foreign
> county makes a payment in U.S. dollars to someone in another foreign
> country, the payment clears through New York. ... It is only
> appropriate therefore that we look to the New York law of attachment
> for guidance.
> *Id.* at 266.

In the case at bar, much like that in <u>Reibor</u>, the parties are foreign

corporations whose only connection with this jurisdiction is by reason of the fact

that they were parties to an electronic funds transfer involving payment in U.S.

dollars. As such, the holding in <u>Reibor</u> is extremely relevant to the question of

whether a Rule B attachment of funds at an intermediary bank is permissible because

allowing such attachments has a substantial, adverse effect on a bank's ability to

participate in the funds transfer payment system and the intermediary banks are

already to subject to the regulation of New York State.

There is no established maritime law regarding the ownership of funds while in

the possession of an intermediary bank handling an electronic funds transfer. Rule B

simply allows a plaintiff to "attach the defendant's tangible or intangible personal

property" without clarifying what is or is not tangible or intangible personal property.

Supp. R. for Certain Admiralty & Maritime Claims B(l)(a) (2006). As <u>Aqua Stoli</u>

<u>Shipping, Ltd., v. Gardner Smith Pty. Ltd.,</u> 460 F.3d 434 (2d Cir. 2006), alluded to,

<u>U.S. v. Daccarett,</u> 6 F.3d 37 (2d Cir. 1993), <u>*cert. denied,*</u> 510 U.S. 1191 (1994), a non-

maritime forfeiture case, held that electronic funds transfers are attachable assets as

intangible personal property. *Id.* at 55. Subsequently, as noted above, <u>Winter Storm</u>

<u>Shipping, Ltd. v. TPI,</u> 310 F.3d 263 (2d Cir. 2002), *cert. denied,* 539 U.S. 927 (2003),

relied on <u>Daccarett</u> to conclude that an electronic funds transfer, when intercepted at

an intermediary bank, constitutes property for purposes of Rule B attachment. <u>Winter</u>

<u>Storm</u> at 278.

However, as the Court of Appeals has apparently recognized, its reliance on a

case involving a criminal forfeiture statute is woefully "thin" and neither <u>Winter</u>

<u>Storm</u>, <u>Daccarett,</u> nor any other admiralty case "answer the more salient question of

*whose* assets they are while in transit." <u>Aqua Stoli</u> at 446 n. 6. (emphasis in original).

The Second Circuit went on to state in <u>Winter Storm</u> that, "[t]here is no question that

federal admiralty law regards a defendant's bank account as property subject to

maritime attachment." *Id.* at 276. In the case at bar, however, the funds in question

are present in an intermediary bank and not in the account of either the sender or

recipient of the transfer. Moreover, the Supreme Court has declared that bank

accounts are not the property even of a depositor, but are merely promises to pay a

depositor upon demand. *See*, <u>Citizens Bank of Maryland v. Strumpf</u>, 516 U.S. 16 (1995).

Thus, and consistent with <u>Reibor Int'l, Ltd.</u>, New York law should be

considered. New York state law provides that an EFT is property of neither the originator

nor the beneficiary while present in an intermediary bank. Article 4A of the Uniform

Commercial Code governs wire transfers of funds in New York and the 51 other

jurisdictions where it has been adopted. With respect to attaching an "originator's" funds,

Section 502 of New York's codification of Article 4A provides that, "[a] creditor of the

23

originator can levy on the account of the originator in the originator's bank before the funds transfer is initiated .... The creditor of the originator cannot reach any other funds because no property of the originator is being transferred." Official Comment 4, U.C.C. § 4-A-502 (McKinney's 2006).

> With respect to attaching a "beneficiary's" funds, Article 4 provides that:

> A creditor of the beneficiary cannot levy on property of the originator and until the funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, the beneficiary has no property interest in the funds transfer which the beneficiary's creditor can reach. A creditor of the beneficiary that wants to reach the funds to be received by the beneficiary must serve creditor process on the beneficiary's bank to reach the obligation of the beneficiary's bank to pay the beneficiary which arises upon acceptance by the beneficiary's bank under [§ 4-A-404(l)].[2]

> Official Comment 4, U.C.C. § 4-A-502 (McKinney's 2006).

Section 502, therefore, contemplates that there are only two places at which a funds transfer credit is attachable property. First, the funds could be attached at the originator's bank, and only then if attachment occurs before the payment order is executed. Second, the funds could be attached at the beneficiary's bank, but only after process has been served on the beneficiary's bank, and upon the beneficiary's bank acceptance of a payment order, and only then if attachment occurs before the funds are released or paid to the beneficiary. As the Official Comment to § 4-A-503 states, "[i]n particular, intermediary banks are protected ...." *See,* Official Comment, U.C.C. § 4-A-503 (McKinney's 2006).

---

[2] Section 4-A-404(l) states: "... if a beneficiary's bank accepts a payment order, the bank is obliged to pay the amount of the order to the beneficiary of the order...."

Applying New York law to the case at bar, which is aimed at protecting intermediary banks, the Plaintiff Transfield did not properly attach the Defendant's "tangible or intangible personal property" within the meaning of Rule B because the funds were attached while in the possession of an intermediary bank and not at the Defendant originator's bank. In this matter, the provisions of the New York U.C.C. make clear that Defendant Zhejiang did not have the requisite property interest in the funds while they were being transferred between intermediary banks in New York and, thus, the funds do not constitute attachable property under Rule B.

In *Aqua Stoli,* the Second Circuit also made reference to Section 4-A-504 of the New York U.C.C. which governs the order in which items and payment orders may be charged to an account. *Aqua Stoli,* supra 460 F.3d at 446 n. 6. Official Comment One to Section 4-A-504 states that:

> Subsection [(1)] concerns priority among various obligations that are to be paid from the same account. A customer may have written checks on its account with the receiving bank and may have issued one or more payment orders payable from the same account. If the account balance is not sufficient to cover all of the checks and payment orders, some checks may be dishonored and some payment orders may not be accepted. Although there is no concept of wrongful dishonor of a payment order in Article 4A in the absence of an agreement to honor by the receiving bank, some rights and obligations may depend on the amount in the customer's account. Section 4A-209(b)(3) [§ 4-A-209(2)(c)] and § 4A-210(b) [§ 4-A-210(2)]. Whether dishonor of a check is wrongful also may depend upon the balance in the customer's account. Under subsection (a) [subsec. (1)], the bank is not required to consider the competing items and payment orders in any particular order. Rather it may charge the customer's account for the various items and orders in any order.

> Official Comment 1, U.C.C. § 4-A-504 (McKinney's 2006).

The issue the drafters of Section 504 contemplated is clearly the order in which banks may pay funds from the same account. However, Section 504 also provides guidance as it relates to *whose* property funds belong while in the banks possession.

To this end, within the context of determining the meaning of "property" under the automatic stay provisions of the bankruptcy code, 11 U.S.C. §§ 362(a)(3) and (a)(6), the Supreme Court, in Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995), examined the "false premise" that a bank's administrative hold on deposited funds was an "exercise [of] dominion over property that belonged to the respondent." *Id.* at 21. While concluding that a bank account was not "money belonging to the depositor and held by the bank," the Court observed that an account "consists of nothing more or less than a promise to pay, from the bank to the depositor." *Id. See,* U.S. v. Butterworth-Judson Corp., 267 U.S. 387, 394 (1925) (holding that money deposited in a bank account is the property of the bank, the deposit creating a debt owed by the bank to the depositor). Consequently, the Supreme Court held that the bank's denial in turning over the contents of an account to a bankruptcy estate "was neither a taking of possession of respondent's property nor an exercise of control over it, but merely a refusal to perform its promise." Strumpf, *supra* 516 U.S. at 21.

As Strumpf and Butterworth-Judson demonstrate, funds that are already on deposit in a bank do not belong to either the depositor or the beneficiary, but are instead merely subject to a promise to pay. It logically follows that if funds that are already on deposit in a bank cannot be the property of even the depositor, then funds

26

that are merely "in transit" via an electronic funds transfer cannot be property of either as well.

Article 4A of the U.C.C. furthers the ultimate goal of admiralty by providing uniformity. In addition to having been adopted by fifty-two jurisdictions, Article 4A of the U.C.C. has also been adopted by the Board of Governors of the Federal Reserve System by regulation, and thus is federal law. *See,* Federal Reserve System Regulation J, 12 C.F.R. Part 210. Even though the Federal Reserve's adoption of Article 4A is plainly federal law only with regard to funds transfers through the Federal Reserve Banks' Fedwire system, the official comment associated with the issuance of Part 210 makes it clear that one of the principal goals of the regulation adopting Article 4A was uniformity in the law as it applies to all fund transfers. *See,* 55 Fed. Reg. 40792 (Oct. 5, 1990). *See,* Grain Traders, Inc. v. Citibank. N.A., 160 F.3d 97, 102 (2d Cir. 1998) ("One of Article 4-A's primary goals is to promote certainty and finality so that the various parties to the funds transfer [will] be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to adjust price transfer services appropriately.").

Given the national adoption of the U.C.C. and the important national interest in a consistent federal and international banking system, applying Article 4A of the U.C.C. in determining whether funds at an intermediary bank are attachable property within the meaning of Rule B would be an appropriate reflection of admiralty law's foremost goal of uniformity. *See,* Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996).

Accordingly, this court must conclude that the EFT payments which have been restrained by the garnishee banks in this action do not constitute attachable property for the purposes of Supplemental Rule B and the attachment must be vacated as to those restraints. In the alternative, if the Court concludes that the EFTs are attachable property under the existing Second Circuit precedent, then, at a minimum, the Court should follow the holding of Consub Delaware and certify the question for immediate appeal pursuant to 28 U.S.C. § 1292(b). Indeed, since the Second Circuit's decision in Aqua Stoli in 2006, at least four other courts in the Southern District have determined that this is an open question and have certified an interlocutory appeal on the issue. The Court of Appeals has agreed to hear three[3] of those cases, including: Consub Delaware; Seamar Shipping Corp[4].; and, Navalmar[5].

Separate and apart from the above argument, there is another more discrete issue presented in the case at a hand, which is whether any of the EFTs being remitted to the Defendant Zhejiang were lawfully attached. The issue arises because, as detailed in the accompanying affidavit of Owen F. Duffy, a portion of the funds under attachment represent monies that were being wire transferred from H&C S Holdings Pte. Ltd. to Zhejiang Fuchuen Co. Ltd. as beneficiary. *See*, Duffy Affidavit at ¶ 47. The original amount attached was $2,856,582.90, but the Plaintiff caused the sum of $2,210,902.20 to be released after further funds were restrained at the Wachovia Bank. *See*, Duffy Affidavit at ¶ 51. Consequently, the amount restrained by The Standard Chartered Bank for Zhejiang as beneficiary is $645,675.75. *See*, Duffy Affidavit at ¶ 51.

---

[3] The fourth case was settled, and the appeal withdrawn. Vamvaship Mar. Ltd. v. Shivnath Rai Hanarain (India) Ltd., C.A. docket 06-2121-cv.
[4] Consub Delaware and Seamar Shipping will be heard in tandem by the Court of Appeals. C.A. docket 07-0833-cv.
[5] Navalmar was certified for appeal on May 14, 2007, and does not yet appeared to have been added to the Court of Appeal's docket.

In Seamar Shipping Corporation v. Kremikovtzi Trade Limited, 461 F. Supp.2d 222, 226 (S.D.N.Y. 2006), Judge Rakoff vacated an attachment holding that Kremikovtzi had no property interest in an EFT payment where Kremikovtzi was the intended beneficiary and the EFT payment had not been completed. That rationale applies with equal force to the funds restrained by The Standard Chartered Bank. Accordingly, at a minimum, The Standard Chartered Bank should be ordered to release the funds that it is restraining in the amount of $645,675.75.

## POINT V

### THE ATTACHMENT SHOULD BE VACATED BECAUSE THERE IS A STATUORY BAR TO A PREJUDGMENT ATTACHMENT OF DEFENDANT ZHEJIANG'S PROPERTY

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"), governs actions against foreign states and agencies or instrumentalities of foreign states. Republic of Argentina v. Weltover, 504 U.S. 607, 610-11, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992). Relevant to the case at bar, unless there has been an explicit waiver of immunity by the defendant, a foreign sovereign, or an agent or instrumentality of a foreign sovereign, is immune from any prejudgment attachment of its assets, even if used for commercial activity, in the United States. See, 28 U.S.C. § 1610(d); Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 261 (2d Cir. 2003) and S&S Mach. Co. v. Masinenexportimport, 706 F.2d 411, 416 (2d Cir. 1983).

To claim immunity under the FSIA, a defendant must present a *prima facie* case that it is a foreign sovereign, or an agent or instrumentality of a foreign sovereign and, thereafter, the burden switches to the plaintiff to demonstrate that an FSIA exception applies. Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993).

29

Section 1603(b) of the FSIA defines an agency or instrumentality of a foreign state for the purposes of 28 U.S.C. § 1610(d) as "any entity (1) which is a separate legal person, corporate or otherwise, and (2) . . . a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States. . . , nor created under the laws of a third country."

Under the definition set forth in the statute, foreign corporations incorporated in and at least fifty percent owned by a foreign state are regarded as agencies or instrumentalities of a foreign state. *See e.g.*, <u>S&S Mach. Co. v. Masinenexportimport</u>, 706 F.2d 411, 415 (2d Cir. 1983) (finding a wholly state-owned export/import company established to carry out the foreign trade goals of the state to be an agency or instrumentality); <u>Arango v. Guzman Travel Advisors Corp.</u>, 621 F.2d 1371, 1374 (5th Cir. 1980) (noting a wholly foreign state-owned corporation's prerogative to remove action to federal court); <u>Carey v. Nat'l Oil Co.</u>, 592 F. 2d. 673, 676 n.1 (2d Cir. 1979) (finding a government owned oil company to be a foreign state); <u>Lopez del Valle v. Gobierno de la Capital</u>, 855 F. Supp. 34, 36 (D.P.R. 1994) (finding a corporation to be a "foreign state" since the Government of Venezuela owns a majority of its shares); <u>Alifieris v. Am. Airlines, Inc.</u>, 523 F. Supp. 1189, 1190-91 n.2 (E.D.N.Y. 1981) ("Congress clearly intended that commercial entities [i.e. Olympic Airways] ... which are owned by foreign states should be afforded the same protections as foreign governments under the Foreign Sovereign Immunities Act.").

In <u>Pitstick v. Potash Corporation of Saskatchewan Sales Limited</u>, 698 F. Supp. 131 (S.D. Ohio 1988), the district court was called upon to consider whether the defendant was "an agency or instrumentality of a foreign state" for purposes of the

Foreign Sovereign Immunities Act and the definition set forth in 28 U.S.C. § 1603 of the Act. The defendant, Potash Corporation of Saskatchewan Sales, was a wholly-owned subsidiary of Potash Corporation of Saskatchewan, which, in turn, was a Canadian corporation owned by the Province of Saskatchewan, Canada. 698 F. Supp. at 132, As such, the district court concluded that the Defendant fell within the definition of "foreign state" found in 28 U.S.C. § 1603, which includes an "agency or instrumentality of a foreign state" within the definition of "foreign state," and further defines an "agency or instrumentality of a foreign state" to encompass a separate legal corporation which is largely owned by a political subdivision of a foreign state and which is not a citizen of a state of the United States. 698 F. Supp. at 132. *See also*, <u>Cimino v. Raymark Industries, Inc.</u>, 751 F. Supp. 649 (E.D. Tex. 1990), *aff'd in part, vacated in part on other grounds*, 151 F.3d 297 (5th Cir. 1998), *reh'g denied*, (Sept. 21, 1998)(the court noted that a majority of shares of an asbestos producer were owned by the Canadian province of Quebec and stated that, therefore, the processor was an "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b); and, <u>U.S. Titan Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.</u>, 241 F.3d 135 (2nd Cir. 2001)(The court noted that there was no dispute that the defendant shipping company was an "agency or instrumentality of a foreign state" as defined by 28 U.S.C. § 1603(b) as it was a corporation that was wholly owned by The People's Republic of China.). Consistent with the holding in <u>Pitstick</u>, there is no doubt that Zhejiang, being a separate corporation wholly owned by a Province of The People's Republic of China, has made a prima facie case that it is an agent or instrumentality of foreign sovereign and, therefore, immune from pre-judgment attachment.

Likewise, it also clear that Defendant Zhejiang is neither a citizen of a State of the United States ... , nor created under the laws of a third country." 28 U.S.C. § 1603(b)(3). First, there can be no doubt that Defendant Zhejiang is not a citizen of a State of the United States. Second, the Defendant Zhejiang was established in Hong Kong and was not created under the laws of any third country.

In Favour Mind Ltd. v. Pacific Shores, Inc., Judge Schiendlin considered issues involving the creation and status of Hong Kong corporations with regard to the fact that Hong Kong reverted to the control of The People's Republic of China in July of 1997 in a case where the Defendant moved to dismiss the complaint contending that Plaintiff Favour Mind, as a Hong Kong corporation, was neither a "citizen or subject" of a "foreign state". 1999 U.S. Dist. LEXIS 18887 (S.D.N.Y. Dec. 7, 1999). Of particular interest to the case at hand, Judge Scheindlin considered the holding in the Second Circuit of Matimak Trading Co. v. Khalily, 118 F.3d 76 (2d Cir. 1997) *cert. denied*, 522 U.S. 1091 (1998), where the Second Circuit declared that a Hong Kong corporation created prior to the handover from Great Britain was not a citizen or subject of Great Britain and, therefore, the corporation was "stateless," *see id.* at * 17, but Judge Schiendlin observed that the Second Circuit explicitly limited its holding, stating that it expressed "no view as to Hong Kong's current status, following Great Britain's transfer of sovereignty on July 1, 1997." *Id.* at n.9. Judge Scheindlin, nevertheless, also reviewed *Amici* briefs from The United States and The People's Republic of China in Favour Mind and, in particular, a Diplomatic Note from The People's Republic of China stating that *"Companies established in the Hong Kong SAR in accordance with its laws and decrees enjoy the nationality of the People's Republic of China."* Id. at *22 (emphasis in the

original). In Judge Scheindlin's view, therefore, Hong Kong corporations were re-created after the transfer of sovereignty in 1997 and, therefore, subject to that court's jurisdiction "[b]ecause 'a foreign state is entitled to define who are its citizens or subjects" and the explicit statement by China "compels this Court to find that Hong Kong SAR corporations are citizens of China and that Favour Mind may therefore invoke the alienage jurisdiction of the federal district courts." Id. at *22 (footnote omitted), but cf., In re Complaint of Clearsky Shipping Corp., 1999 U.S. Dist. LEXIS 17784 (E.D. La. Nov. 3, 1999) (Eastern District of Louisiana case holding that Defendant COSCO Hong Kong failed to meet its burden in establishing that it qualified as a 'foreign state' because it viewed Hong Kong to be a "third country" prior to 1997 handover to The People's Republic of China. However, the Eastern District of Louisiana did not have the benefit of the evidence presented to Judge Scheindlin and, in later proceedings, the court concluded there was evidence that the Hong Kong corporations were "re-created" after the transfer of sovereignty. 2003 U.S. Dist. LEXIS 1245 *14.)

Separate and apart from that, Judge Scheindlin's holding in Favour Mind is consistent with the rule that the FSIA is applicable where the defendant is a foreign state (or agency or instrumentality of a foreign state) at the time the lawsuit is filed, irrespective of whether the defendant was a foreign state at the time of the injury which gave rise to the lawsuit. See, Dole Food Co. v. Patrickson, 538 U.S. 468 (2003)(holding that a corporation's instrumentality status for the purpose of the immunity exception of § 1603 (b) of the Foreign Sovereign Immunities Act is defined at the time suit is filed.); Straub v. A.P. Green, Inc., 38 F.3d 448 (9th Cir. 1994); and, Pere ex rel. Pere v. Nuovo Pignone, Inc., 150 F.3d 477 (5th Cir. 1998), cert. denied, 525 U.S. 1141 (FSIA covers

entity that is now private, but which was state owned at the time of the disputed events.).
Simply put, Zhejiang was never created pursuant to the laws of a third country, it was
recreated when the sovereignty of Hong Kong reverted to The People's Republic of
China and, at the time the Complaint was filed against Zhejiang in New York, Zhejiang
was a corporation created under the laws of The People's Republic of China.

In the case at hand, the same situation as in Pitstick and the similar cases
involving provincial ownership is present and, therefore, the result should be the same.
The Defendant Zhejiang is wholly owned by a provincial government, i.e. The Zhejiang
Provincial People's Government. See, Duffy Affidavit at ¶s 10, 12 & 15, Ex. 18,
Declaration of Weng Changrong at ¶ 5. The Defendant Zhejiang was established by The
Zhejiang Provincial People's Government, and The Zhejiang Provincial People's
Government, itself, is an administrative sub-division of The People's Republic of China.
See, Duffy Affidavit at ¶ 11, Ex. 18 Declaration of Weng Changrong at ¶ 6.
Consequently, if a company owned by a province of Canada is an "agency or
instrumentality of a foreign state" for purposes of the FSIA, then it follows that a
company wholly owned by a province of The People's Republic of China is an "agency
or instrumentality of a foreign state" as defined by 28 U.S.C. § 1603(b).

Under the circumstances, the Defendant Zhejiang is absolutely immune from any
prejudgment attachment of its assets, even if used for commercial activity in the United
States, pursuant to the Foreign Sovereign Immunities Act because it meets all three
requirements of 28 U.S.C. § 1610 (d). Consequently, the Process of Maritime Attachment
and Garnishment issued in this case on May 30, 2007 must be vacated as to Zhejiang
Fuchuen Co., Ltd.

## POINT VI

### THE COURT SHOULD VACATE THE ATTACHMENT AS THE PLAINTIFF COULD OBTAIN *IN PERSONAM* JURISDICTION OVER THE DEFENDANT, ZHEJIANG, IN A DISTRICT WHERE THE PLAINTIFF IS LOCATED AND IS CONVENIENT TO THE PLAINTIFF

In <u>Aqua Stoli</u>, the Court of Appeals for the Second Circuit, held that it would proper for a district court to vacate an otherwise admittedly valid Process of Maritime Attachment in circumstances where "the defendant is present in the district where the plaintiff is located." 460 F.3d 434, 436 (2nd Cir. 2006). Indeed, the Court of Appeals recognized that maritime parties are peripatetic and, therefore, the traditional policy underlying maritime attachment has been to permit the attachment of assets wherever they can be found so that a maritime Plaintiff would not have to scour the globe to find a proper forum for suit or property of the defendant so as to satisfy a judgment. 460 F.3d at 422. The Court of Appeals went on to explain that there was a fundamental unfairness in permitting a Plaintiff to make use of the exceptional remedy of maritime attachment when normal civil proceedings were readily available in a district convenient to the plaintiff for suit or satisfaction proceedings. 460 F.3d at 442, *citing with approval*, <u>Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.</u>, 476 F. Supp. 119 (S.D.N.Y. 1979). *See also*, <u>Royal Swan Navigation Co. v. Global Container Lines</u>, 868 F. Supp. 599, 605 (S.D.N.Y. 1994) *and* <u>Western Bulk Carriers, Pty. v. P.S. Int'l</u>, 762 F. Supp. 1302, 1309 (S.D. Ohio 1991) discussing Professor Moore's statements that an otherwise permissible Rule B attachment should be denied where both "the plaintiff and defendant carry on substantial and continuing business activities in another district where an *in personam* proceeding could have been commenced." (Cited with approval by

Universal Africa Line (UAL) v. ED&F Man Cocoa, 1996 U.S. Dist. LEXIS 4767 (E.D.

Pa. Apr. 15, 1996).

On this point, the specific holding of the Court of Appeals in Aqua Stoli was

consistent with the above in that the Court of Appeals stated:

> Although the precise boundaries of a district court's vacatur power are not
> before us, we are persuaded that vacatur may be warranted when the
> defendant can show that it would be subject to *in personam* jurisdiction in
> another jurisdiction convenient to the plaintiff.
> 460 F.3d at 444.

and,

> A maritime attachment would likewise be properly vacated if the plaintiff
> and the defendant are both present in the same district and would be
> subject to jurisdiction there, but the plaintiff goes to another district to
> attach the defendant's assets.
> 460 F.3d at 444-45.

Just recently, Judge Sweet applied the Aqua Stoli principles in a case involving

foreign parties who had no connection to New York, but where the plaintiff initiated an

action in New York to make use of the Rule B attachment procedure to obtain security.

OGI Oceangate Transportation Co., Ltd. v. R.P. Logistics Pvt. Ltd. and R. Piyarelall

International Pvt. Ltd., 06 Civ. 9441 (Opinion of Robert W. Sweet, D.J., dated June 21,

2007). In that case, the Plaintiff and Defendants had been parties to prior litigation in

Kolkata, India when the defendants arrested a vessel alleged to be the property of the

defendant. The Plaintiff later initiated an action in the United States against the

defendants for breach of charter party and for wrongful arrest, but similar to the case

here, the prime purpose of the U.S. proceeding was to obtain security via the Rule B

procedure for the Plaintiff's claims that were to be arbitrated in Hong Kong. Judge Sweet,

with specific reference to Aqua Stoli, noted that it was questionable as to whether the

Southern District of New York was more convenient to the plaintiff than the other jurisdictions implicated, namely Kolkata and Hong Kong. Furthermore, Judge Sweet considered that it was likely that U.S. law would not apply to the claim for wrongful arrest. As it were, Judge Sweet concluded that the "the convenience issue speaks more strongly against the exercise of jurisdiction and therefore in favor of vacating the attachment." Opinion at pg. 16.

In accordance with the principles set forth in Aqua Stoli, and as applied to foreign parties by Judge Sweet, the Process of Attachment obtained by Plaintiff Transfield in this matter against Defendant Zhejiang should be vacated. Whereas Plaintiff Transfield has represented that it is registered in the British Virgin Islands, the fact of the matter is that Transfield does not maintain an office or principal place of business in the British Virgin Islands. See, Duffy Affidavit at ¶ 6, Ex. 3, the 2004 Complaint, at ¶ 2. Instead, Plaintiff Transfield maintains its only office and principal place of business in Hong Kong, see, Duffy Affd. at ¶ 6, Ex. 3, the 2004 Complaint, at ¶ 2, which is the same jurisdiction as where the Defendant Zhejiang maintains its representative office. See, Duffy Affidavit at ¶ 13. The Plaintiff Transfield and the Defendant Zhejiang are both present in the same district (i.e. Hong Kong) and, therefore, Defendant Zhejiang is subject to in personam jurisdiction in another jurisdiction, or district, that is convenient to the Plaintiff Transfield.

Under these circumstances, where Defendant Zhejiang can be found in Hong Kong for enforcement proceedings, the exceptional remedy provided for by Rule B should not be available to Plaintiff Transfield because it is fundamentally unfair.

Accordingly, and consistent with the holding of <u>Aqua Stoli</u>, the Process of Attachment should be vacated as to the Defendant Zhejiang.


## **CONCLUSION**

For any of the multiple reasons stated above, the Process of Maritime Attachment and Garnishment must be vacated and/or should be vacated, and the Court should enter an Order directing the garnishees in New York to release any funds that have been restrained pursuant to the Process of Maritime Attachment and Garnishment.



Dated:  Port Washington, New York
       June 28, 2007


      Respectfully submitted,
      CHALOS, O'CONNOR & DUFFY
      Attorneys for Defendant
      Zhejiang Fuchuen Co. Ltd.


By:                          .
      Owen F. Duffy (OD-3144)
      366 Main Street
      Port Washington, New York 11050
      Telephone: 516-767-3600
      Telefax:    516-767-3605

To:     Lennon, Murphy & Lennon LLP
        Attorneys for Plaintiff, Transfield ER Cape Limted
        420 Lexington Avenue, Suite 300
        New York, New York 10170

        Telephone: 212-490-6050
        Telefax:    212-490-6070

        Attn: Patrick F. Lennon, Esq.


To:     Law Offices of Rahul Wanchoo
        Attorneys for Defendant, Fuchuen Dihai Shipping Co. Ltd.
        Empire State Building
        350 Fifth Avenue, Suite 3304
        New York, New York 10118

        Telephone: 201 882-0303
        Telefax:    201 301-3576

        Attn: Rahul Wanchoo, Esq.