Exhibit 11

Adopted by the Documentary Committee of the General Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

| | |
|---|---|
| **1. Shipbroker**<br>OCEANIC SHIPPING LTD<br>ROOM 1804 LUCKY COMMERCIAL CENTRE<br>103-109 DES VOEUX ROAD WEST<br>HONG KONG | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "GENCON"    Part I |
| | **2. Place and date**<br>11th AUGUST, 2006 |
| **3. Owners/Place of business (Cl. 1)**<br>SINOEAST SHIPPING LTD<br>AS DISPONENT OWNERS | **4. Charterers/Place of business (Cl. 1)**<br>FUCHEUN DIHAI SHIPPING CO., LTD.,<br>B.V.I. |
| **5. Vessel's name (Cl. 1)**<br>MV RED SETO | **6. GRT/NRT (Cl. 1)**<br>SEE CLAUSE 36 |
| **7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)**<br>SEE CLAUSE 36 | **8. Present position (Cl. 1)**<br>TRADING |
| **9. Expected ready to load (abt.) (Cl. 1)**<br>3RD SEPTEMBER 2006 | |
| **10. Loading port or place (Cl. 1)**<br>ONE SAFE BERTH, ONE SAFE PORT,<br>ESPERANCE, AUSTRALIA | **11. Discharging port or place (Cl. 1)**<br>ONE SAFE BERTH, ONE SAFE PORT,<br>BEILUN, CHINA |
| **12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)**<br>70,000 METRIC TONS 10 PERCENT MORE OR LESS IN OWNERS' OPTION IRON ORE IN BULK ALWAYS EXCLUDING DRI/DRIP CARGO TO BE LOADED/TRANSPORTED AND DISCHARGED IN ACCORDANCE WITH IMO RECOMMENDATIONS. | |
| **13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)**<br>US$    PER METRIC TON BASIS 1/1<br>ON BILLS OF LADING WEIGHT | **14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)**<br>SEE CLAUSE 20 |
| **15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)**<br>F.I.O.S.T. | **16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)**<br>a) Laytime for loading<br>SEE CLAUSE 22 |
| **17. Shippers (state name and address) (Cl. 6)**<br>TO BE ADVISED | b) Laytime for discharging<br>SEE CLAUSE 23<br>c) Total laytime for loading and discharging<br>ALSO SEE CLAUSE 22 AND 23 |
| **18. Demurrage rate (loading and discharging) (Cl. 7)**<br>SEE CLAUSES 22 AND 32 | **19. Cancelling date (Cl. 10)**<br>9TH SEPTEMBER 2006 |
| **20. Brokerage commission and to whom payable (Cl. 14)**<br>1.25% BROKERAGE TO OCEANIC SHIPPING LTD | |
| **21. Additional clauses covering special provisions, if agreed.**<br>RIDER CLAUSES NO. 20 TO 51 INCLUSIVE AS ATTACHED TO BE PART OF THIS CHARTER PARTY. | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

SINO EAST SHIPPING LIMITED
華洋船務有限公司
Signature (Owners)
Authorized Signature(s)

For and on behalf of
Fucheun Dihai Shipping Co., Ltd.
Signature (Charterers)
Authorised Signature(s)

Printed and sold by Witherby & Company Limited, 32/36 Aylesbury Street, London EC1R 0ET. Tel. No. 071 251 5341  Fax No. 071 251 1296
by authority of The Baltic and International Maritime Council (BIMCO) Copenhagen

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:
The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12 which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. Owners' Responsibility Clause
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. Deviation Clause
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. Payment of Freight (SEE CLAUSE 22)
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.
(b) Prepaid. If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost.
Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.
(c) On delivery. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.
Cash for Vessel's ordinary disbursements at port of loading to be advanced by the Charterers, if required, at highest current rate of ex-change, subject to two (2) per cent to cover insurance and other expenses.

5. Loading/Discharging Costs
(a) Costs/Risks
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board. The Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.
(b) Cargo Handling Gear
Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power – pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party – shall not count as laytime or time on demurrage.
On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.
(c) Stevedore Damage
The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.
The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage effecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.

6. Laytime (SEE CLAUSE 23)
*(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.
The cargo shall be discharged within the number of running days/hours as indicated in Box16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.
*(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.
(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of

readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.
If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.
If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.
Time used before commencement of laytime shall count.
* Indicate alternative (a) or (b) as agreed, in Box 16.

7. Demurrage (SEE CLAUSE 24)
Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.
In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.

8. Lien Clause
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. Cancelling Clause
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.
(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.
Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.
The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter party as per sub-clause (a) of this Clause.

10. Bills of Lading
Bills of Lading shall be presented and signed by the Master as per the 'Congenbill' Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. Both-to-Blame Collision Clause
If the Vessel comes into collision with another vessel as result of the negligence of the other vessel and any act, neglect or default of the Master, mariner, pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of the said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect to a collision or contact.

12. General Average and New Jason Clause      HONG KONG
General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).
If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery."

13. Taxes and Dues Clause
(a) On Vessel – The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, however the amount thereof may be assessed
(b) On cargo – The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, however the amount thereof may be assessed.
(c) On freight – Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

This computer generated form is printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss or damage caused as a result of discrepancies between the original BIMCO document and this document.

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

14. Agency (SEE CLAUSE 29)
~~In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.~~

15. ~~Brokerage~~
~~A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.~~
~~In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.~~

16. General Strike Clause
(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.
(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

17. War Risks ("Voywar1993")
(1) For the purpose of this Clause, the words:
(a) The "Owners" shall include the shipowners, bareboat Charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.
(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may expose, or is likely to expose, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.
(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.
(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The vessel shall have liberty:
(a) to comply with all order, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo delivery or in any other way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;
(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;
(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;
(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;
(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;
(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.
(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

18. General Ice Clause
Port of loading
(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter Party.
(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.
Port of Discharge
(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.
(b) If during discharging the Master for fear of Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

19. Law and Arbitration   HONG KONG
*(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in ~~London~~ in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.
For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.
~~*(b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc..~~
For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc..
*(c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party
(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply
* (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.
** Where no figure is supplied in Box 25 in Part I, this provision only shall be void ~~but the other provisions of this Clause shall have full force and remain in effect~~

This computer generated form is printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the preprinted text of this document, which is not clearly visible, the original BIMCO approved document shall apply. BIMCO assume no responsibility for any loss or damage caused as a result of discrepancies between the original BIMCO document and this document.

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

Clause 20
Full (100%) freight to be paid within 7 banking days, after completion of loading, sailing loading port, signing/releasing Bills of Lading marked "Freight Payable As Per Charter Party".

Demurrage/despatch at loading/discharging ports, if any, within 20 days of completion of discharge.

Owners have lien on cargo for freight/dead-freight.

Freight is deemed earned upon completion of loading, discountless non-returnable whether vessel/cargo lost or not.

Clause 21
The vessel to be in every way fully suitable to load, carry and discharge this cargo. No cargo to be loaded in the vessel's deeptanks, bunker or other places inaccessible to grabs by Charterers' stevedores.

The vessel to be guaranteed suitable for grab discharge.
Owners guarantee vessel is ITF/AHL fitted and to satisfy themselves regarding any restriction/limitation at loading port and discharging port.

Clause 22 - Loading Rate

Loading Terms

a)   Buyer shall employ vessels that are acceptable by Esperance Port Authority and the Seller. LOA shall not be more than 290 meters, Beam shall not be more than 47 meters. Maximum sailing draft shall not exceed 17.8m plus tide. Should Seller be unable to load the nominated quantity requested by Buyer due to causes attributable to Seller, Seller shall pay dead freight to Buyer commencurate with freight paid as stated on the relevant charter party. Any vessel employed must be suitable in every respect for loading iron ore at the Port of Esperance.

Seller shall be responsible for the loading of the vessel despatched by Buyer which is suited to the port specifications and accepted by Seller.

b)   Seller shall deliver Iron Ore to Buyer in bulk, alongside Seller's wharf at the Port of Loading into a vessel supplied by Buyer and compatible with the port specifications.

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

c)  Seller shall load the agreed quantity of Iron Ore spout trimmed for each vessel at the rates set out below in this clause averaged over the laytime used during loading. Laytime shall run 24 hours per weather working day Saturday, Sunday and public holidays included (SHINC).

| Vessel Size (in DWT) | Loading Rate (in WMT per WWD SHINC) |
| --- | --- |
| 70,001 – 90,000 | 50,000 |
| 90,001 – 110,000 | 60,000 |
| 110,001 – 130,000 | 70,000 |
| 130,001 – 150,000 | 75,000 |
| Over 150,000 | 80,000 |

It is understood that loading rates and demurrage/despatch rates shall be on the basis of vessel size (DWT), however if a vessel does not load to maximum DWT cargo carrying capacity due to reasons attributable to the vessel and/or buyer, the loading rates as shown above shall be on the basis of cargo quantity loaded and not DWT.

c)  Notice of readiness to load shall not be tendered or accepted until after the vessel has arrived at the pilot boarding area with clean holds and hatches open and is in all respects ready to load and after the Letter of Credit has been opened and the vessel has tendered general arrangement plans and these have been approved by Seller. Vessel's place in any queue shall be determined by reference to the time at which notice of readiness is accepted by Seller. If the vessel is not in free pratique on its arrival at the berth due to causes attributable to the vessel, then the new notice of readiness must be tendered after free pratique is granted. Laytime for loading shall commence from the time loading actually starts or twelve (12) running hours after acceptance of notice of readiness whichever is sooner. If Buyer's Letter of Credit has not been established at Seller's nominated bank by the time the vessel has arrived at the pilot boarding area then laytime will not commence until after the Letter of Credit is established at Seller's bank and the pilot boards the vessel to bring it to berth. In case loading has to be interrupted due to reasons of responsibility of the vessel, such as the vessel's inability to load at the rate prescribed in Clause 11.3, any other defect and/or default in the vessel or deficiency and/or default of the vessel or vessel's personnel including inability to ballast or deballast at a rate commensurate with the loading rates, such time lost shall not count as laytime and no demurrage will be payable in respect of such time whether the vessel is on demurrage or not. Subject to Clause 17 stoppage of loading due to breakdown of the ore loading plant shall be counted as laytime. Laytime shall cease on completion of loading.

2

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

e) Demurrage and Despatch

The allowed laytime hours for each vessel shall be calculated by dividing the actual loaded quantity of Iron Ore by the loading rate specified in Clause 22 (c).

Time used for draught checks and surveys during the course of loading and other time used due to reasons within the responsibility of the vessel as described in Clause 22(d) shall not count as laytime and no demurrage shall be payable in respect of such time whether the vessel is already on a demurrage or not.

Seller shall pay Buyer demurrage at the applicable rate for laytime used in loading in excess of the allowed laytime.

Buyer shall pay Seller despatch at the applicable rate for allowed laytime saved in loading.

The applicable rates of demurrage and despatch are set out in the table below.

| Vessel Size (in DWT) | Demurrage rate (in US dollars per day) | Despatch rate (in US dollars per day) |
|---|---|---|
| 70,001 – 90,000 | 8,500 | 4,250 |
| 90,001 – 110,000 | 10,500 | 5,250 |
| 110,001 – 130,000 | 10,500 | 5,250 |
| 130,001 – 150,000 | 13,000 | 6,500 |
| Over 150,000 | 13,000 | 6,500 |

Clause 23  Discharging Rate
20,000 metric tons per weather working day Sundays and holidays inclusive.

Clause 24
Laytime for loading shall commence 12 hours after acceptance of Notice of Readiness, whether in berth or not, unless loading is sooner commenced, and waiting time, if any, for a berth and shifting time shall count as laytime. Notice of Readiness may be presented provided vessel is in every respect ready to load/discharge whether in berth or not, whether in port or not, whether clear of customs formality or not, whether free of pratique or not, at any time in or out of office hours. Laytime shall terminate upon completion of loading.

Laytime for discharging shall commence 24 Hrs after acceptance of notice of readiness. Time used for luffing boom and moving the shiploader at loading/discharging ports is not to count as laytime and the cranes are centrally positioned.

3

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

Clause 25 -- Agents
Charterers' agents both ends. Port disbursement to be for Charterers account at discharge port, except Owners own expenses such as crew changes, spare parts delivery etc. and Owners to contribute maximum USD40,000 which to be deducted from the initial freight payment.

Clause 26
Cargo to be loaded at *one safe berth, one safe port, Esperance, Australia,* and to discharged at *one safe berth, one safe port, Beilun, P.R. China.* Owners to verify themselves about any prevailing restriction at all ports, berths and approaches under this Contract at both loading and discharging ports.
Vessel employed under this Contract at all times to comply with all current Australian port regulations.

Clause 27
Vessel to work overtime if requested to do so, and all extra expenses incurred thereby to be paid by party ordering same, except for crew/officers overtime, which always to be for Owners' account, if overtime ordered by port authorities, same to be shared equally between Owners and Charterers.

Clause 28
Shifting alongside loading and discharging berth if required to facility loading/discharging and trimming to be effected by Owners shifting time to count, shifting expenses to be for Owners' account. Shifting from waiting berth to loading respectively discharging berth to be done by Owners at their time, risk and expense.

Clause 29
Before loading of the cargo commenced, cleaning of the vessel to be carried out by Owners for Owners' account, if vessel has been washed, humidity is allowed, but no water to be left when loading commences. The vessel to have clean and dry hold and to be in every way suitable for loading this cargo to Shippers' inspector's satisfaction.

Before tendering Notice of Readiness and before commencement of loading, vessel's holds, hatches, beams and bottom sides of hatch cover to be free of all containing substances and loose rust.

Clause 30
Deleted.

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

### Clause 31

General Average, if any, to be settled according to York-Antwerp Rules 1974 amended 1990 and any amendment thereto at London and English Law to apply.

### Clause 32 - Demurrage/Despatch Money

Demurrage/despatch as per Scale at loading port only.

Demurrage/despatch at discharging port USD31,000.00 (Thirty One Thousand) despatch half of demurrage laytime saved.

### Clause 33

New Jason Clause, New Both-to-Blame Collision clause, P & I Bunkering Clause, Voywar 1993 and Clause Paramount incorporated Hague Rules Legislation are deemed to be incorporated in this Contract.

### Clause 34

In the absence of Bill(s) of Lading at discharging port, Owners/Master to allow cargo discharge against Charterers' Letter of Indemnity only in Owners standard P and I wording without bank endorsement or guarantee.

### Clause 35

Master/Owners or their Agents have to give Charterers and Suppliers with *10/7/5/3* days/forty-eight (48) hours notice of ETA and thereafter 24 hours definitely notice before vessel arrival at loading port.

Upon sailing from loading port, Master to advise Charterers and Agents at discharging port by telex or cable of time of sailing, Bill(s) of Lading quantity, holdwise loaded, sailing draft, ETA discharging port and estimated arrival draft.

Thereafter Master/owners have to advise the same parties *7/5/3/2* days and 24 hours prior to ETA discharging port.

Loadable quantity to be advised by Owners or Master approximate 5 days prior to vessel's ETA loading port which is for Charterers' reference. Exact loadable quantity to declared in writing by Master upon tendering Notice of Readiness. The vessel shall be seaworthy.

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

Clause 36 -Performing Vessel
MV "RED SETO"
FLAG PANAMANIAN, BUILT 2002
75,966MT DWAT ON 14.028M DRAFT SSW
LOA/BEAM 225.0/32.26M
GROSS TONNAGE 40030
7/7 HOLD/HATCH, GEARLESS
GRAIN 91,311 CBM

Clause 37
Owners to ensure that vessel's crew to open and close hatches (provided same is allowed by shore regulation) whenever required at vessel's time and expense and vessel provides light as on board for night work free of expense to the Charterers. The vessel is to permit the use of it's winches and other appropriate gear and is to provide sufficient power for same without cost to Charterers.

Clause 38
Deleted.

Clause 39
When so required by stevedores (Charterers), Receivers, vessel to close hatch covers during non-weather permitting periods, in both loading and discharging ports.

Clause 40
Deleted.

Clause 41
Any taxes and/or dues and/or wharfage on cargo to be for Charterers' account at both ends. Any taxes and/or dues and/or wharfage on vessel and/or freight to be for Owners' account at both ends.

Clause 42 - Arbitration Clause
Any dispute arising out of this Charter Party or any Bill of Lading issued hereunder shall be referred to arbitration in London in accordance with the arbitration act 1996 and any statutory modification or re-enactment in force. Upon receipt of the nomination in writing of the claimant's arbitrator, the party receiving the nomination shall appoint its arbitrator within fourteen days, failing which the dispute shall be determined by the single arbitrator. If both parties each appoint an arbitrator and those arbitrators do not agree, they shall appoint an umpire whose decision shall be final and binding. If the amount in dispute is less than US$50,000 the matter shall be referred to the small claim tribunal in London in accordance with the L.M.A.A. procedure 1989. The

6

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the security council of the united nations, any directives of the European community, the effective orders of any other supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment; imprisonment or other sanctions;

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfillment of the contract of carriage.

Clause 51
Owners to pay a lumpsum of USD40,000 to Charterers as port disbursement account at discharge port. Charterers will deduct same from the freight payment and will settle PDA with agent directly.

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

Clause 36 – Performing Vessel
MV "RED SETO"
FLAG PANAMANIAN, BUILT 2002
75,966MT DWAT ON 14.028M DRAFT SSW
LOA/BEAM 225.0/32.26M
GROSS TONNAGE 40030
7/7 HOLD/HATCH, GEARLESS
GRAIN 91,311 CBM

Clause 37
Owners to ensure that vessel's crew to open and close hatches (provided same is allowed by shore regulation) whenever required at vessel's time and expense and vessel provides light as on board for night work free of expense to the Charterers. The vessel is to permit the use of it's winches and other appropriate gear and is to provide sufficient power for same without cost to Charterers.

Clause 38
Deleted.

Clause 39
When so required by stevedores (Charterers), Receivers, vessel to close hatch covers during non-weather permitting periods, in both loading and discharging ports.

Clause 40
Deleted.

Clause 41
Any taxes and/or dues and/or wharfage on cargo to be for Charterers' account at both ends. Any taxes and/or dues and/or wharfage on vessel and/or freight to be for Owners' account at both ends.

Clause 42 – Arbitration Clause
Any dispute arising out of this Charter Party or any Bill of Lading issued hereunder shall be referred to arbitration in London in accordance with the arbitration act 1996 and any statutory modification or re-enactment in force. Upon receipt of the nomination in writing of the claimant's arbitrator, the party receiving the nomination shall appoint its arbitrator within fourteen days, failing which the dispute shall be determined by the single arbitrator. If both parties each appoint an arbitrator and those arbitrators do not agree, they shall appoint an umpire whose decision shall be final and binding. If the amount in dispute is less than US$50,000 the matter shall be referred to the small claim tribunal in London in accordance with the L.M.A.A. procedure 1989. The

6

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

arbitrators, umpire and mediator shall be commercial persons normally engaged in the shipping industry.

Clause 43
All stevedore damages to be settled directly between Owners and stevedores, Charterers will assist Owners to recover eventual stevedores damages, only when notified in writing by the Master at the time of occurrence of damage or latest within 24 hours thereafter. Master to co-operate with Charterers and Agents on giving prompt notice of claim in writing to party causing same latest before sailing. The Master to use his best efforts to obtain written acknowledgement by responsible parties causing damage unless damage be made good in the meantime by stevedores otherwise Charterers will not assist.

Clause 44
There is no guarantee on port disbursement except for discharging port.  (Also see Rider Clause 51)

Clause 45
Owners fax the ISM/DOC Certificates to Charterers for nomination.

Clause 46 - ISM Clause
Owners guarantee that from the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during currency of the Contract, the vessel and the 'Company' (as defined by the ISM Code) shall comply with all requirement of the ISM Code and hold a valid Safety Management Certificate (SMC) an Document of Compliance (DOC) upon request the Owners shall provide a copy of relevant and DOC to Charterers. Notwithstanding anything to the 'Company' in this Contract, Owners shall be liable for agree to indemnify Charterers against all losses including but not limited to loss of profit), damages (direct and indirect), expense and/or delay (including but not limited to any time lost whether the vessel is on demurrage or otherwise) arising from or in any connected with the failure by the vessel, its Owners and/or the 'Company' to comply with the requirement of the ISM Code and/or any regulations promulgated in relation thereto.

Further, Owners shall be liable for and agree to indemnify Charterers against any claims against Charterers arising from or in any way connected with the failure by the vessel, its Owners and/or the 'Company' to comply with requirement of the ISM Code and/or any law or regulation promulgated in relation thereto.

Clause 47
Fixture to be kept top private and confidential and not to report on market.

7

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

Clause 48  War Cancelling Clause
In the event of war or warlike operation involving either Japan, R.O.C. (Taiwan), United States of America, Great Britain, CIS, People's Republic of China, Brazil, Germany, France, Norway of the nation under the flag of which any vessel performing under this Contract is registered, and this, seriously affects Charterers' or Owners' ability to perform or cost of performing their obligations under this Contract, Charterers or Owners may cancel this Charter Party.

Clause 49
Charterers and Owners agree to sign the Charter Party within two months after fully fixed.

Clause 50 - BIMCO Standard War Risks Clause for Voyage Chartering, 1993
       Code Name:  "Voywar 1993"

(1)  For the purpose of this clause, the words:

(a) "Owners" shall include the Shipowners, Bareboat Charterers, Disponent Owners, managers or other operators who are charged with the management of the vessel, and the Master; and

(b) "War risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise how-soever), by any person, body, terrorist or political group, or the government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

(2) If at any time before the vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performances of the Contract of carriage, or any part of it, may expose, or is likely to expose, the vessel, her cargo, crew or other persons on board the vessel to war risks, the Owners may give notice to the Charterers canceling this Contract of carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the vessel, her cargo, crew or other persons on board the vessel to war risks; provided always that if this Contract or carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the vessel, her cargo, crew, or other persons onboard the vessel may be exposed, or may be likely to be exposed, to war risks, the

8

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bill(s) of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the vessel, her cargo (or any part thereof), crew or other persons on board the vessel (or any one or more of them) may be, or are likely to be, exposed to war risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading in complete fulfillment of the contract of carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight Contract for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the vessel, her cargo, crew or other persons on board the vessel may be, or are likely to be, exposed to war risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The vessel shall have liberty:

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the government of the nation under whose flag the vessel sails, or other government to whose laws the Owners are subject, or any other government which

9

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

---

### NEW BOTH TO BLAME COLLISION CLAUSE

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner Pilot or the servants of the carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.
The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than or in addition to, the colliding ships or objects are at fault in respect to a collision or contract."
And the Charterers shall procure that the Bills of Lading issued under this Charter Party shall contain the same Clause.

### P & I BUNKER DEVIATION CLAUSE 1948

The vessel in additional to all other liberties shall have liberty as part of the contract voyage and at any stage thereof to proceed to any port or ports whatsoever whether such ports are on or off the direct and/or customary route or routes to the ports of loading or discharge named in this charter and there take oil bunkers in any quantity in the discretion of Owners even to the full capacity of fuel tanks, deep tanks, and any other compartment in which oil can be carried whether such amount is or is not required for the chartered voyage.

### THE NEW JASON CLAUSE

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees, or Owners of the goods shall contribute with the carrier in General Average to the payment of any sacrifices, losses, or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.
If a salvage ship is owned or operated by the carrier, salvage shall be paid for as fully as if such salving ship or ships belonged to strangers. Such deposit as the carrier or his Agents may deem sufficient to cover the estimated contribution of the goods and any salvage or special charges thereon hall, if required, be made by he goods, shippers, consignees or Owners of the goods to the carrier before delivery."
And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

11

RIDER CLAUSE TO MV RED SETO / FUCHUEN DIHAI
CHARTER PARTY DATED 11TH AUGUST, 2006

---

### CLAUSE PARAMOUNT

The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract.
When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.