**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Defendant
Fuchuen Dihai Shipping Co. Ltd.
Empire State Building
350 Fifth Avenue, Suite 3304
New York, New York 10118
Phone:(201) 882-0303
Fax:   (201) 301-3576
E-mail: rwanchoo@wanchoolaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

TRANSFIELD ER CAPE LIMITED

                  Plaintiff,

       - against -

FUCHUEN DIHAI SHIPPING CO. LTD., AND
ZHEJIANG FUCHUEN CO. LTD.

                  Defendants.

----------------------------------------------------------------X

ECF CASE

07 cv 4528 (MGC)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
FUCHUEN DIHAI SHIPPING CO. LTD'S MOTION TO DISMISS
VERIFIED COMPLAINT AND VACATE MARITIME ATTACHMENT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. 3

PRELIMINARY STATEMENT ........................................................................ 5

FACTUAL BACKGROUND ............................................................................ 5

ARGUMENTS ...............................................................................................12

POINT I: THE COURT DOES NOT HAVE SUBJECT MATTER
        JURISDICTION OVER PLAINTIFF'S CLAIM WHICH ARISES
        UNDER A SETTLEMENT AGREEMENT AND NOT A MARITIME
        CONTRACT...........................................................................................12

POINT II: THE ATTACHMENT SHOULD BE VACATED BECAUSE
        PLAINTIFF DOES NOT HAVE A VALID PRIMA FACIE
        ADMIRALTY CLAIM……………………………………………………16

POINT III: THE ATTACHMENT SHOULD BE VACATED AS DEFENDANT,
        FUCHUEN IS SUBJECT TO *IN PERSONAM* JURISDICTION IN
        ANOTHER JURISDICTION CONVENIENT TO THE PLAINTIFF..178

POINT IV: THE ATTACHMENT SHOULD BE VACATED BECAUSE
        PLAINTIFF HAS ABUSED SUPPLEMENTAL ADMIRALTY RULE B
        ............................................................................................................21

CONCLUSION ..............................................................................................22

## TABLE OF AUTHORITIES

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434

    (2d Cir. 2006)................................................................... 16, 18, 19, 20

Aqua-Marine Constructors v. Banks, 1993 U.S. Dist. LEXIS 17541

    (D. Or. 1993).......................................................................13, 16

Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd., 968 F.2d 196

    (2d Cir. 1992)......................................................................13

Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552

    (5th Cir. 2003) ...................................................................12, 13

Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603 (1991) ...............13

Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599 (2d Cir. 1991).................15

Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc., 413 F.3d 307

    (2d Cir. 2005).................................................................12, 14, 15

Gen. Tankers PTE., Ltd. v. Kundan Rice Mills, Ltd., 475 F. Supp. 2d 396

    (S.D.N.Y. 2007)...................................................................18

Greenslate v. Tenneco Oil Co., 623 F. Supp. 573 (D. La. 1985) ...........13

Kossick v. United Fruit Co., 365 U.S. 731 (1961).............................12

Norfolk S. Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285 (11th Cir. 2004)..........19

OGI Oceangate Transport Co. Ltd. v. R.P. Logistics Pvt. Ltd. et al, 2007 U.S. Dist.

    Lexis 46841 (S.D.N.Y. 2007) ...............................................17, 18, 19

Seawind Compania, S. A. v. Crescent Line, Inc., 211 F. Supp. 157

(S.D.N.Y. 1962)........................................................................................12, 14

Contichem LPG. v. Parsons Shipping Co. Ltd. 229 F. 3d 426, 434-35 (2d Cir.

2000) ............................................................................................................21

United Philippine Lines v. Metalsrussia Corp., 1997 U.S. Dist. LEXIS 5616

(S.D.N.Y. 1997)........................................................................................14, 22

## Statutes

28 U.S.C. § 1333(1)........................................................................................12

## PRELIMINARY STATEMENT

Defendant, Fuchuen Dihai Shipping Co. Ltd. ("Fuchuen", or Defendant) by and through its undersigned counsel, Law Offices of Rahul Wanchoo, respectfully submits this Memorandum of Law and the accompanying affidavit of Rahul Wanchoo ("Wanchoo Aff.") and the declaration of Paul R. Rodgers ("Rodgers Decl.") in support of its motion to dismiss the Verified Complaint and vacate the *ex parte* order of maritime attachment obtained by Plaintiff, Transfield ER Cape Ltd. ("Transfield" or "Plaintiff") from this Court on or about May 31, 2007.

For the reasons discussed below, we respectfully submit that the Court should dismiss the Verified Complaint and vacate the attachment because (1) it does not have subject matter jurisdiction over Plaintiff's claim which is based not on a maritime contract but on an alleged breach of settlement agreement and; (2) Plaintiff does not have a valid *prima facie* maritime claim (3) Plaintiff could easily obtain *in personam* jurisdiction over Defendant, Fuchuen in Hong Kong where both parties are located and which is more convenient to the Plaintiff than New York, and (4) Plaintiff has abused Supplemental Admiralty Rule B.

## FACTUAL BACKGROUND

As shown in the accompanying declaration of Paul Robert Rodgers, Fuchuen's English solicitor, Plaintiff has omitted highly relevant facts in its Rule B

5

application which show that Plaintiff has no valid basis to obtain an *ex parte* order of maritime attachment from this Court.

Defendant, Fuchuen chartered Plaintiff, Transfield's vessel, M/V ALINA for the carriage of a cargo of iron ore from Brazil to China pursuant to a charter party contract dated November 28, 2003. Wanchoo Aff., Ex. A ¶6. Plaintiff's vessel arrived at the port of Beilun, China on or about March 14, 2004 and discharge of Fuchuen's cargo was completed on or about April 8, 2004.  Wanchoo Aff., Ex. A ¶¶ 9 and10.  On or about May 20, 2004, Winter Scott, Plaintiff's English solicitor advised Fuchuen that Transfield is asserting a claim under the charter party for damages for the alleged detention of the vessel at Beilun.  Rodgers Decl., Ex.1 p.1. Transfield's claim was based on an allegation that Fuchuen failed to discharge the cargo on a Customary Quick Dispatch ("CQD") basis because the receivers allegedly did not have sufficient storage space to remove the cargo from the port and/or that an unspecified party may not have had import/export documentation or did not pay import tax.  Rodgers Decl. ¶4 (a).  However, no evidence was ever produced to substantiate these allegations or quantify Transfield's losses for the alleged detention of the vessel.   Notwithstanding, on or about August 3, 2004 Transfield commenced arbitration against Fuchuen and appointed its arbitrator. Id. Fuchuen's English solicitors, Ince & Co. expressed their "surprise and disappointment" that Transfield had commenced arbitration proceedings without

particularizing its claim or providing proper support before commencing arbitration. Id., Ex.1 p.10.  In fact, Fuchuen has learned for the first time that on or about June 10, 2004, about two months before Transfield commenced arbitration proceedings against Fuchuen in London, Transfield commenced Rule B proceedings against Fuchuen in New York and obtained an *ex parte* order of maritime attachment from this Court on June 17, 2004.  See, Wanchoo Aff., Ex. C. On or about September 9, 2004, Plaintiff voluntarily dismissed the complaint because none of Fuchuen's assets were located in the jurisdiction of this Court.  Id. ¶7, Ex. D and E.

From August 2004 until February 2005, Fuchuen heard nothing from Transfield's solicitors nor were any steps taken by Transfield to prosecute its claim in the arbitration.  Rodgers Decl. ¶4 (a).  Indeed, it is not surprising that Transfield did not advance its claim in the London arbitration as the claim has absolutely no merit.  As stated by Fuchuen's solicitors in their message to Transfield:

> Our clients are not prepared to spent any further time or money in dealing with a matter which they view to be no more than a '**nuisance claim**'.  If your clients choose to proceed to arbitration, then that is a matter for them.  They should however, be aware that any claim brought in arbitration will be defended.

Rodgers Decl., Ex.1 p.7. (emphasis added)

On or about February 23, 2005, Transfield made a proposal to Fuchuen that it would terminate the 'arbitration proceedings' in consideration for Fuchuen to

7

"offer the right of First Refusal to Transfield for chartering vessels in the future marine transport contracts negotiations." Rodgers Decl., Ex. 2 p.1. On April 28, 2005, Transfield eager to resolve its differences with Fuchuen confirmed that both parties had **reached the same agreement** that:

1. Transfield ER would terminate the arbitration procedure immediately and withdraw our arbitration application submitted to London in view of seeking common ground and resolving differences for the long term cooperation.

2. Fuchuen will continue to maintain and strengthen the business cooperation with Transfield ER as usual; observe the principle of equality and Priority, give priority to consider Transfield ER's rates for chartering vessels and give the last opportunity in future marine transport contracts negotiations.

3. Transfield ER and Fuchuen would continue to seek all possibilities of long term cooperation & endeavor to achieve win win developing situation.

On or about July 21, 2005 Transfield and Fuchuen settled their disputes whereby Fuchuen agreed that Transfield would terminate the arbitration proceedings effective immediately and Fuchuen would not recover its substantial legal defense costs against Transfield. Rodgers Decl., Ex. 2 p. 5. Mr. Rodgers opines that:

> As a matter of English law, there is no doubt that this was a **legally binding settlement agreement,** recorded in writing and for which parties give good consideration.

> Rodgers Decl. p. 5. (emphasis added)

8

Indeed, as Mr. Rodger points out Transfield admits that a valid settlement agreement was reached between the parties.  Wanchoo Aff., Ex. A ¶15. Furthermore, on or about July 6, 2006, Transfield's solicitors advised the arbitrators that "the matter has now been amicably settled and we should therefore be grateful if the Tribunal would close this file." Rodgers Decl., Ex. 3.  Similarly, on or about July 8, 2006, Fuchuen's solicitor wrote to the arbitrators confirming that the claim had been settled and thanked him for his appointment in the matter. Rodgers Decl., Ex. 4.  Mr. Rodgers further states that

> As a matter of English law, the original cause of action has been extinguished by reason of that settlement and it is not possible to 'recommence' arbitration proceedings for the same cause of action under the same contract and between the same parties as the Plaintiff have tried to do on May 28, 2007."

Rodgers Decl., p.5.

On or about March 7, 2006, about eight months after Transfield's solicitors advised the London Tribunal that the matter had been settled, Plaintiff started to backtrack and claimed that the parties had not "reached any agreement or common view regarding to the arbitration disputes of M/V ALINA." Rodgers Decl., Ex.5. Plaintiff now contradicts itself by alleging that "Defendant, Fuchuen has now denied the existence of the settlement and refused to pay the sum owed to Plaintiff under the agreement." Wanchoo Aff. Ex. A ¶ 16.  On the contrary, as stated above, it is Transfield who denies the existence of the settlement agreement.

Transfield also claims that money is owed under the settlement agreement when in fact, the agreement is completely silent with regard to any monetary damages payable to the Plaintiff.

On March 17, 2006, Rodgers & Co. put Transfield on notice that it should immediately withdraw its threat to "reopen" the second arbitration proceedings for which there was absolutely no basis failing which, "we will recommend to our clients that they take all appropriate measures to enforce [a settlement] agreement and seek full damages arising out of your breach." Rodgers Decl., Ex.6.

Regretfully, on or about May 28, 2007, Transfield purported to commence fresh (second) arbitration proceedings against Fuchuen under the original charter party dated November 28, 2003 and appointed Mr. O'Donovan as its arbitrator. Rodgers Decl., p.5. Transfield's arbitration demand covered the exact same claim albeit appointed a different arbitrator on this occasion. Id. Mr. Rodgers, Fuchuen's English counsel has written to Mr. O'Donovan advising him that all disputes between the parties have been settled and requesting Plaintiff to withdraw its arbitration demand, failing which Fuchuen will make an application to the English High Court challenging the jurisdiction of Mr. O'Donovan and/or any award that he may make as there is NO cause of action or dispute under the charter party in question for which Transfield can commence arbitration proceedings. Rodgers Decl., Ex. 9.

Almost immediately after commencing the second arbitration, Transfield started this action and obtained an *ex parte* order of maritime attachment from this Court on or about May 31, 2007. As noted above, this is the <u>second</u> attachment (the first being voluntarily dismissed in 2004) obtained by Transfield from this Court with regards to a claim which was settled between the parties in 2005. Furthermore, Transfield is now alleging detention damages of $100,000 per day versus $80,000 per day demanded in the 2004 complaint thereby inflating its claim from $1,980,000 to $2,475,000, exclusive of interest, attorneys' fees and arbitration costs. Wanchoo Aff. ¶ 5. This is clearly an abuse of the Rule B maritime process which warrants an immediate dismissal of Plaintiff's maritime attachment.

Fuchuen is also advised by defendant, Zhejiang Fuchuen Co. Ltd. ("Zhejiang") that Transfield has attached about $3.9 million of its assets in New York on the allegation that Zhejiang is the alter ego of Fuchuen. Wanchoo Aff. Ex. A ¶ 20. While Fuchuen has no property interest in Zhejiang's monies that have been attached in New York, it nevertheless requests that the court immediately vacate the attachment as Transfield has no valid claim against Fuchuen which forms the basis of this attachment. With regards to Transfield's "alter ego" argument, no doubt Zhejiang will vigorously contest this in its motion to vacate the attachment.

11

## ARGUMENTS

### POINT I

### THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIM WHICH ARISES UNDER A SETTLEMENT AGREEMENT AND NOT A MARITIME CONTRACT

Fuchuen moves first to dismiss Transfield's Verified Complaint pursuant to Federal Rules of Civil Procedure 12(b) (1) for lack of subject matter jurisdiction.

The United States District Courts have original jurisdiction, exclusive of the courts of the States, over:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

***

28 U.S.C. § 1333(1) (emphasis added).

As the cases show, the boundaries of admiralty jurisdiction over contracts have always been difficult to draw. Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552, 565 (5th Cir. 2003) citing, Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961); Seawind Compania, S. A. v. Crescent Line, Inc., 211 F. Supp. 157, 159 (S.D.N.Y. 1962). A court must first make a "threshold inquiry" into the subject matter of the dispute in determining whether to invoke the federal courts' admiralty jurisdiction. Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc., 413 F.3d 307, 312 (2d Cir. 2005). Before attempting to categorize

contractual rights as maritime or non-maritime, a federal court must first consider

"whether an issue related to maritime interests has been raised". Id.; see also Atl.

Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd., 968 F.2d 196, 199 (2d Cir. 1992).

Thereafter, the court must inquire into the subject matter of the contract.

Folksamerica, 413 F.3d at 312.

 The test for determining a 'maritime interest' is to see whether the contract

has a more than "speculative and attenuated" connection with maritime commerce.

Folksamerica, 413 F.3d at 313. For instance, coffee lost from a warehouse clearly

has little to do with 'the business of maritime commerce'. Id. citing, Atl. Mut. Ins.

Co., 968 F.2d at 200.

 The next step is to examine whether the contract has any reference to

maritime services or maritime transactions. Effjohn Int'l, 346 F.3d at 565 citing,

Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 610 (1991). The key is

whether the services performed under the contract are maritime in nature. Id.

Along this line, the character of the work to be performed is determinative, not the

contract's value to the shipping industry. Effjohn Int'l, 346 F.3d at 565.

Accordingly, a contract is not considered maritime merely because the services to

be performed under the contract have reference to a ship or to its business, nor

because the ship is the object of such services or that it has reference to navigable

waters. <u>Aqua-Marine Constructors v. Banks</u>, 1993 U.S. Dist. LEXIS 17541, 3*-4* (D. Or. 1993).

Similarly, a non-maritime contract does not acquire a maritime character and is not ordinarily cognizable in admiralty merely because it is collateral to a maritime contract. <u>Aqua-Marine</u>, 1993 U.S. Dist. LEXIS 17541, at 3*-4* <u>citing</u>, <u>Greenslate v. Tenneco Oil Co.</u>, 623 F. Supp. 573, 576 (D. La. 1985). If the essence of the services provided under the contract is non-maritime, identical to or essentially similar to non-maritime services regularly performed by those not involved in the operation of vessels, it is not a maritime contract. <u>Id</u>. *See also* <u>Folksamerica</u>, 413 F.3d at 312. Thus, if the contract is non-maritime in nature, the Federal District Court will not exercise jurisdiction over disputes arising out of such contracts. <u>See</u> 28 U.S.C. § 1333; <u>Folksamerica</u>, 413 F.3d at 312; <u>Seawind Compania</u>, 211 F. Supp. at 159.

Consistent with the foregoing principles courts have held that letters of indemnity or settlement agreements relating to charter party or bill of lading disputes are NOT maritime contracts. <u>United Philippine Lines v. Metalsrussia Corp.</u>, 1997 U.S. Dist. LEXIS 5616, 6* (S.D.N.Y. 1997). In <u>United Philippine Lines</u>, plaintiff sued defendant for breach of a letter of indemnity (LOI) under which defendant allegedly agreed to indemnify plaintiffs for any claim based on the clean bill of lading plaintiffs were to provide and related to the stated

14

exceptions. Defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The court held that the LOI did not relate to maritime services or transactions or relate directly to vessel or cargo. "Its only connection with the cargo or vessel is that it is an agreement to pay damages arising out of claims based on the bill of lading." Id. at *9.

Similarly, an agreement to contribute to the settlement of a charter party claim is not a maritime contract. Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir. 1991). In Fednav, the charterer was sued by the underwriter's subrogee for damage which occurred to the cargo en route. The vessel owner allegedly agreed to contribute to the charterer's 50% of the settlement of the suit and 50% of the charterer's legal fees. When the owner failed to contribute, the charterer sued. Id. at 600. The district court dismissed for lack of subject matter jurisdiction, stating that the alleged contribution agreement "sounded in contract, but not in admiralty." Id. at 601. The Second Circuit affirmed, stating that although a charter party is a maritime contract, "merely agreeing as surety 'to pay damages for another's breach of a maritime charter is not' a maritime contract." Id. The Court stated:

> The direct subject-matter of the suit is the covenant to pay such damages, which neither involves maritime service nor maritime transaction; and . . . the mere fact that the event and measure of liability are referable to the charter party does not make [the agreement to pay] a maritime contract, nor make its obligation maritime in the jurisdictional sense.

Fednav, 925 F.2d at 601. (citations omitted)

15

In the present case, Transfield sues Fuchuen for breach of a settlement agreement. Wanchoo Aff. ¶ 4. On or about July 21, 2005 Transfield and Fuchuen entered into a <u>full and final settlement</u> to "terminate the arbitration proceedings". <u>See</u> Rodgers Decl. ¶ 4(b). The settlement agreement did not provide for any monetary damages payable by Fuchuen to Transfield. Transfield simply dropped its claim in expectation of some future unspecified business. Rodgers Decl. ¶ 4(a). The settlement resulted in Transfield ending the arbitration proceedings and Fuchuen agreeing not to recover its costs. The subject matter of the settlement agreement does not relate directly to maritime services or to a ship or cargo, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment. <u>See</u> <u>Aqua-Marine</u>, 1993 U.S. Dist. LEXIS 17541, at 3*-4*. The agreement merely concerns ending the arbitral proceedings and continuation of some vague and indefinite future transactions between Transfield and Fuchuen. Accordingly, we respectfully submit that the settlement agreement in question and any dispute arising therefrom is NOT a maritime dispute cognizable by this Court under 28 U.S.C. §1333.

Thus, the Verified Complaint must be dismissed for lack of subject matter jurisdiction.

# POINT II

## THE ATTACHMENT SHOULD BE VACATED BECAUSE PLAINTIFF DOES NOT HAVE A VALID PRIMA FACIE ADMIRALTY CLAIM

Under <u>Aqua Stoli</u>, a plaintiff has the burden to show not only that that it has met the filing and service requirements of Rules B and E, but also that "<u>it has a prima facie admiralty claim</u>." <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 445 (2d Cir. 2006).

In a very recent case Judge Sweet vacated plaintiff's maritime attachment on the grounds, inter alia, that plaintiff had not established a prima facie admiralty claim, and hence had not met its burden to sustain the attachment. <u>OGI Oceangate Transportation Co. Ltd. v. R.P. Logistics Pvt. Ltd. *et al.*</u>, 2007 U.S. Dist. Lexis 46841 (S.D.N.Y. 2007). In that case, plaintiff asserted that a dispute arose during the course of a vessel's charter regarding defendant's failure to pay deadfrieght and demurrage, but the dispute was resolved by a tripartite agreement under which plaintiff was paid a certain sum by the charterer to resolve the dispute. The court held:

> <u>Any claim for breach of the charter party regarding dead freight, demurrage and detention at load and discharge ports appears to have been satisfied by the payment made to [plaintiff] OGI under the tripartite agreement</u>. OGI has accepted that payment, and does not dispute the validity of the agreement. Therefore, OGI does not have a valid prima facie claim for breach of the charter party.

OGI Oceangate, 2007 U.S. Dist. Lexis 46841 at *11-12. (emphasis added)

In the present case, Transfield admits that a valid settlement agreement was reached between the parties. Wanchoo Aff., Ex. A ¶15. Indeed, following the settlement Transfield's solicitors advised the arbitrators that "the matter has now been amicably settled and we should therefore be grateful if the Tribunal would close this file." Rodgers Decl., Ex. 3. Similarly, Fuchuen's solicitor advised the arbitrators that the claim had been settled. Rodgers Decl., Ex. 4. As Mr. Rodgers points out:

> As a matter of English law, the original cause of action has been extinguished by reason of that settlement and it is not possible to 'recommence' arbitration proceedings for the same cause of action under the same contract and between the same parties as the Plaintiff have tried to do on May 28, 2007."

Rodgers Decl., p.5.

Thus, Transfield has not established a valid prima facie admiralty claim against Fuchuen to support a maritime attachment.

## POINT III

### THE ATTACHMENT SHOULD BE VACATED AS DEFENDANT, FUCHUEN IS SUBJECT TO *IN PERSONAM* JURISDICTION IN ANOTHER JURISDICTION CONVENIENT TO THE PLAINTIFF

The district court may vacate a maritime attachment when the defendant is present in the district where the plaintiff is located. Aqua Stoli Shipping Ltd. v.

Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006); Gen. Tankers PTE.,

Ltd. v. Kundan Rice Mills, Ltd., 475 F. Supp. 2d 396, 398 (S.D.N.Y. 2007); OGI

Oceangate Trans. Co. Ltd. v. R.P. Logistics Pvt. Ltd. *et al.*, 2007 U.S. Dist. Lexis

46841 (S.D.N.Y. 2007).

In Aqua Stoli, 460 F.3d at 434, the Second Circuit prescribed three limited

circumstances under which a district court may vacate a maritime attachment,

including when: "1) the defendant is present in a convenient adjacent jurisdiction;

2) the defendant is present in the district where the plaintiff is located; or 3) the

plaintiff has already obtained sufficient security for a judgment." Id. at 436,

emphasis added. With regards to point 2), the court stated:

> we are persuaded that vacatur may be warranted when the defendant
> can show that it would be subject to in personam jurisdiction in
> another jurisdiction convenient to the plaintiff.

and, also that:

> A maritime attachment would likewise be properly vacated if the
> plaintiff and defendant are both present in the same district and would
> be subject to jurisdiction there, but the plaintiff goes to another district
> to attach the defendant's assets.

Aqua Stoli, 460 F.3d at 444-45 (emphasis added).

In OGI Oceangate, Judge Sweet applied the second "limited circumstances"

test, quoted above, to vacate a Rule B maritime attachment.    OGI Oceangate,

2007 U.S. Dist. Lexis 46841 (S.D.N.Y. 2007). In that case, both plaintiff and

defendants had been parties to prior litigation in Kolkata, India, when the defendants arrested a vessel alleged to be the property of the defendant. Id. Plaintiff later initiated an action in the United States against the defendants for breach of charter party agreement and for wrongful arrest. Id. Judge Sweet questioned the S.D.N.Y.'s convenience as a forum to the plaintiff than Kolkata or Hong Kong. Id. The court held that plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located, that is either Kolkata or Hong Kong. Id.

Similarly, in the present case, Transfield brings the Rule B proceedings in the Southern District of New York to attach Fuchuen's assets for an alleged breach of a settlement agreement which was negotiated by both parties in Hong Kong. Furthermore, Transfield and Fuchuen both maintain their offices in Hong Kong and conduct their respective businesses from Hong Kong. See ICRIS search report annexed as Exhibits G and H to the Wanchoo Affidavit. As Transfield and Fuchuen are both present in the same district, that is, Hong Kong Fuchuen is also "subject to in personam jurisdiction in another jurisdiction convenient to the plaintiff." Aqua Stoli, 460 F.3d at 444.

Thus, under the Aqua Stoli "limited circumstances" test vacatur of the attachment is warranted in the present case.

20

## POINT IV

### THE ATTACHMENT SHOULD BE VACATED BECAUSE PLAINTIFF HAS ABUSED SUPPLEMENTAL ADMIRALTY RULE B

Transfield has omitted highly relevant facts in its Rule B application which show that it has no valid basis to obtain an *ex parte* order of maritime attachment from this Court. Transfield has not disclosed to this Court that, according to the law applicable to the dispute between the parties, that is English Law, the original cause of action has been extinguished by the settlement and it is not possible to recommence arbitration proceedings for the same cause of action under the same contract and between the same parties. See Rodgers Decl. p.5. It is thus clear, that Transfield has no cause of action and hence no valid basis to bring the present Rule B action before this Court. Furthermore, Transfield is now alleging detention damages of $100,000 per day versus $80,000 per day demanded in the 2004 complaint thereby inflating its claim from $1,980,000 to $2,475,000, exclusive of interest, attorneys' fees and arbitration costs. Wanchoo Aff. ¶ 5. This is clearly an abuse of the Rule B maritime process which warrants an immediate dismissal of Plaintiff's maritime attachment. See, Contichem LPG v. Parsons Shipping Co. Ltd., 229 F.3d 426, 434-35 (2d Cir. 2000) (abuse of process will serve as the basis of vacatur of maritime attachments.)

21

In view of the above, it is clear that Transfield has no valid prima facie maritime claim against Fuchuen, and hence no proper basis for this maritime attachment. In the circumstances, the Court should dismiss the present Rule B Verified Complaint and vacate the attachment.

## CONCLUSION

**FOR ALL THE REASONS STATED HEREIN, DEFENDANT, FUCHUEN DIHAI SHIPPING CO. LTD. RESPECTFULLY SUBMITS THAT DEFENDANT'S MOTION TO DISMISS THE VERIFIED COMPLAINT AND VACATE THE ATTACHMENT SHOULD BE GRANTED.**

Dated: New York, New York
      July 2, 2007

                                Law Offices Of Rahul Wanchoo
                                Attorneys for Defendant
                                Fuchuen Dihai Shipping Co. Ltd.

                                By: _Rahul Wanchoo_____
                                   Rahul Wanchoo (RW-8725)

To:    Lennon, Murphy & Lennon, LLC
        Attorneys for Plaintiff
        420 Lexington Avenue
        Suite 300
        New York, NY 10170

        Chalos, O'Connor & Duffy, LLP
        Attorneys for Defendant,
        Zhejiang Fuchuen Co. Ltd.
        366 Main Street
        Port Washington, New York 110050