EXHIBIT 1

<u>**IN THE MATTER OF THE ARBITRATION ACT 1996**</u>

**BETWEEN:**

**TRANSFIELD ER CAPE LIMITED**

<u>Owners</u>
(Transfield)

**And**

**FUCHUEN DIHAI SHIPPING CO LTD**

<u>Charterers</u>
(Fuchuen)

**"ALINA" (the "Vessel")**

---

**SUBMISSIONS IN RESPONSE TO AN APPLICATION
UNDER SECTION 30 OF THE ARBITRATION ACT**

---

1. Fuchuen accept your appointment as Sole Arbitrator subject only to their application under Section 30 of the 1996 Arbitration Act. It is common ground that you do have jurisdiction to determine your own jurisdiction.

2. It is also common ground that an Award under Section 31 is required.

3. It is also common ground that the question for you to determine is whether or not the disputes arising under the Charterparty dated 28.11.03 have been settled.

4. Prior to preparing these submissions, evidence has been taken from Mr. Kong Sau and Mr. Newmen Lock of Transfield. For the reasons set out in

2

these submissions, these persons are clear that no settlement agreement was concluded with Fuchuen. If Fuchuen continue to maintain that a settlement agreement was concluded, Transfield request an oral hearing at which the evidence of Transfield's and Fuchuen's representatives can be tested before the arbitrator. In this event, we will write to you again with further submissions regarding the arrangements for such a hearing.

5.    The documents relied on in these submissions are specifically identified below, by reference to the pagination of the copy documents attached to Fuchuen's submissions ("Fp.xxx") or by reference to the additional documents served with these submissions ("Tp.xxx").

6.    Prior to Transfield's letter of 23rd February 2005, there were discussions at a meeting attended by Mr. Sau Kong, Mr. Alfred Ming Zhang and Mr. Newmen Lock of Transfield (on the one hand) and two representatives of Fuchuen (on the other). Mr Lock and Mr. Sau believe that the two representatives of Fuchuen were Mr. Miao, Keneng, and Mr. Zu Yong Tao. The meeting took place in Hong Kong at the Shangri-la Hotel in Pacific Place, Central. Other than phone calls to arrange the meeting, there were no discussions prior to this meeting.

7.    At the meeting, there was a discussion as to whether the claim should proceed to arbitration; alternatively, whether Fuchuen wished to compromise and, if so, on what basis.

8.    Mr Sau Kong and Mr Newmen Lock are certain that no firm agreement was reached at the meeting. After the meeting, Transfield sent their email of 23rd February 2005 (Fp.23; cf. Tp.1/2). What is set out in the letter of 23rd February is a proposal by Transfield whereby Transfield were proposing that if they were to terminate the arbitration proceedings in

3

London, Fuchuen would in return, first, strengthen and improve their business relationship with Transfield and second, give Transfield the right of first refusal when Fuchuen needed to charter vessels in the future. The fact that this was a proposal, rather than an agreement, is confirmed by the final sentence which reads "Please reply to confirm". In other words this was an offer by Transfield to terminate the arbitration on the terms set out in point 2 of the message. In addition, Transfield were to offer solutions for long term cooperation as set out in point 3. Nothing had been agreed at this stage.

9.    Transfield did not receive any confirmation of this offer from Fuchuen, nor were there any further discussions. Transfield therefore sent the letter of 28th April 2005 (Fp.25; cf. T p. 3/4) which repeated their offer. Mr. Sau Kong and Newmen are quite clear that the letter of 28th April 2005 was not confirmation of an agreement which had already been concluded. It was a repeat of the offer made in the letter of 23rd February 2005.

10.   No response was received from Fuchuen. As between Transfield and Fuchuen, there were no developments between 28th April and 21st July 2005.

11.   It was during this period of inactivity – i.e., while Transfield's offer remained unanswered and unaccepted – that this firm sent the fax of 6th July 2005 to the Tribunal (Fp.29). Unfortunately, the contents of this message were incorrect. The matter had not been settled, because no agreement had been reached.

12.   On 21st July2005, Fuchuen wrote to Transfield in response to Transfield's letter of 28 April 2005 (Fp.27; Tp.5/6). However, this letter did not accept Transfield's offer. It agreed only to the termination of the arbitration.

4

This was not acceptable to Transfield as Transfield were only prepared to terminate the arbitration if first Fuchuen agreed to strengthen and improve their business relationship with Transfield and second, if they agreed to give priority to Transfield when they wished to charter vessels in the future. Transfield were only prepared to give up their claim if they received a benefit in the form of further business and priority in chartering in the future.

13.     Mr. Sau Kong discussed Fuchuen's letter of 21st July 2005 with Mr Alfred Zhang and told him that the offer contained in Fuchuen's letter of 21st July was not acceptable, that as a result Transfield would continue the arbitration in respect of their claim and that Alfred should make this clear to Fuchuen.

14.     Transfield later sent their letter of 7th March 2006 (Fp.31; Tp.7/8). This letter makes Transfield's position clear. Transfield believed that the proposals that they had made in their letter of 28th April 2005 (and 23rd February 2005) were a constructive resolution of the problem. Fuchuen had not agreed to Transfield's proposals. They had purported to terminate the arbitration with their letter of 21st July 2005. This was not acceptable to Transfield as there was no agreement by Fuchuen that Transfield would be compensated by future business and priority when Fuchuen wished to charter vessels in return for their giving up their claim in arbitration. Transfield, therefore, expressed their disappointment that Fuchuen were not prepared to resolve this matter and confirmed that they would proceed with the arbitration.

15.     The result is that, although Transfield offered to enter into a settlement on terms of their letters of 23rd February and 28th April 2005, these offers were never accepted. Fuchuen purported to accept, but the terms of their

5

acceptance were inconsistent.  Fuchuen's letter of 21st July 2005 was, at most, a counter-offer.  That counter-offer was, in turn, never accepted by Transfield.  On the contrary, Transfield made it clear that the terms of the 21st July 2005 were not acceptable to them.

16.    Although both parties may have been willing to settle the disputes under the charterparty, there could only be a concluded agreement in respect of such settlement if they agreed on the terms.  They have never done so.

17.    This is reflected by the difficulty that Fuchuen have had in identifying the terms of the settlement agreement and the circumstances in which it was concluded.  If there were a settlement agreement, they ought to be able to set out a coherent case as to when and how it was concluded (i.e., identifying the offer and acceptance) and also as to its terms.  It is noticeable that their position on these issues has shifted, in the correspondence sent on their behalf by Rodgers & Co.

18.    In Rodgers & Co.'s fax of 17th March 2006 (Fp. 33), Rodgers & Co. clearly stated: "*There can be no dispute whatsoever therefore that the settlement agreement was reached between the parties and was recorded in the fax dated 28 April 2005*"

19.    However, in their subsequent correspondence, Rodgers & Co. have resiled from that position.  Their fax of 25th June 2007 (Tpp.9-10) is noticeably silent as to when, how and on what basis the settlement on which Fuchuen rely can have come into existence.

20.    This firm sought to explore this point with Rodgers & Co. by our email of 10th July 2007 (Tpp.11/12).  We asked them to "*let me have a copy of the any agreement if it is your Clients' position that the settlement was*

6

concluded in writing. If the settlement agreement was not concluded in writing, would you let me have full particulars of all terms of the agreement on which your Clients' rely. Although I have only quickly read through your application, it does seem to me that the terms of any agreement are absolutely crucial to the position."

21.    Rodgers & Co.'s response of the same date (Tp.13/14) reads: "*Our case is set to in my application earlier today together with supporting documents. With respect, the precise terms of the settlement agreement are academic in the context of this application, not least because you appear to accept all disputes under the charterparty were fully and finally settled.*" This is a manifestly unsatisfactory answer, as this firm pointed out in our further email of the same day T/pp.15/16); to which Rodgers & Co. have not responded.

22.    Transfield most certainly do not accept that all disputes under the charterparty were fully and finally settled. It is Fuchuen who assert this. They accordingly must prove that a settlement was concluded.

23.    It is incumbent on any litigant who wishes to assert a contract to provide all the conventional particulars of that contract – when and where was the contract concluded, between whom was it concluded and on what terms. In the present case, the burden of proof lies on Fuchuen to prove that a settlement agreement was concluded. Neither the documents to which Fuchuen have referred nor the evidence of Transfield's representatives support any such conclusion. If Fuchuen wish you to find that a settlement agreement was concluded, Fuchuen must prove this. If they cannot, then their assertions must be rejected.

7

24.    Transfield request a declaration in your award to the effect that no settlement was concluded and that, as a result, you have jurisdiction to deal with the claims arising under the charterparty.  Transfield also claim their costs of this reference.

Served this 16th day of July 2007 by Winter Scott, Solicitors for Transfield.

8

<u>IN THE MATTER OF THE ARBITRATION</u>
<u>ACT 1996</u>

BETWEEN:

TRANSFIELD ER CAPE LIMITED
<u>Owners</u>
(Transfield)

And

FUCHUEN DIHAI SHIPPING CO LTD
<u>Charterers</u>
(Fuchuen)

"ALINA" (the "Vessel")

---

SUBMISSIONS IN RESPONSE TO AN
APPLICATION UNDER SECTION 30 OF
THE ARBITRATION ACT

---

Winter Scott
St Olaves House
Ironmonger Lane
London EC3V 3EY

Ref: GDW/GL/kr/82/143

[Translation]

(On the letterhead of Transfield ER Cape Limited)

To:    Fuchuen Co., Ltd. and Fuchuen Dihai Shipping Co., Ltd.

Reference is made to the "detention" arising from a claim in [illegible] relating to the charter of MV "ALINA" dated 28th November 2003. Following friendly discussion between Mr. Miao, Mr. Xu and Mr. Sau of both companies, both parties have reached a consensus and agreed the following:

1.    To indicate our sincerity, Transfield ER would forthwith terminate the arbitral procedure and withdraw their application to London Arbitration Tribunal for arbitration.

2.    Fuchuen Dihai Company agrees to continue to maintain the business relations between both parties as usual, and on the principles of equality and priority, it would give Transfield ER the final right of first refusal on chartering in any subsequent negotiations on spot and long-term marine carriage contracts.

3.    Transfield ER will provide various feasible plans for long-term cooperation between both parties, and make greater efforts to create a win-win situation.

We would be grateful if you could let us have a reply to, and confirm, the above.

Regards,

Transfield ER

23rd February 2005

1

24

9. APR. 2005  10:58    ZHEJIANG HUOCUI N 100  7890  1777
23. FEB. 2005  13:56



**Transfield ER Cape Ltd**
c/o Room 2403, 24/F, Sun Hung Kai Centre,
30 Harbour Road, Wanchai, Hong Kong.
Tel: (852) 8231-5893  Fax: (852) 8897-2652.

致：宜宾有限公司 并宜宾帝梅服务有限公司

    有关《ALINA》第 2005 年 11 月 28 日起就在 北仑 码头泊靠所发生
"DETENTION" 一事，经我司 研究，我总 和港总 的友好协商，取得一致
意见，双方同意如下：

1. 为照顾诸端，昌运东宫公司立即就此件表图示，收回向伦敦供船追定
   的价款申请。

2. 宜宾帝梅公司 同意一如既往，继续保持双方的业务关系，按照同样
   优先原则，如以后的那贸及长期船 结合同给诸市，余予昌运东宫
   相想最巨及优先取合致。

3. 昌运东宫将寻提双方长期合作的各种可行性方案，为促进双方的发
   展局面作出适多努力。

以上意见请即回复确认。

谢谢！

                              昌运东宫
                              2005年2月23日

2

2

[Translation]

(On the letterhead of Transfield ER Cape Limited)

To:    Fuchuen Co., Ltd. and Fuchuen Dihai Shipping Co., Ltd.

Reference is made to the "detention" arising from a claim in [illegible] relating to the charter of MV "ALINA" dated 28th November 2003.  Following friendly discussion between Mr. Miao, Mr. Xu and Mr. Sau of both companies, both parties have reached a consensus and agreed the following

On the principles of reaching consensus, accommodating differences and long-term cooperation, Transfield ER will immediately terminate the arbitral procedure and withdraw their arbitration application submitted to London Arbitration Tribunal.

Fuchuen Dihai Company will continue to maintain and strengthen the business relations between both parties as usual, and on the principles of equality and priority, it would give priority and final opportunity to consider the chartering quotation provided by Transfield ER in any subsequent negotiations on spot and long-term marine carriage contracts.

Transfield ER and Fuchuen Dihai will continue to seek various feasible plans for long-term cooperation between both parties, and make greater efforts to create a win-win situation.

Regards,


Transfield ER

28th April 2005


3

G:\Litigation\S\S110\048-002E.doc

26

28. APR. 2005 12:20

**Transfield ER**
昌運東富

**Transfield ER Cape Ltd**

致：富春有限公司 并富春容裕船务有限公司

有关 "ALINA" 船 2003年11月28日租约在北仑 船滞期提所受告 "DETENTION" 一案，经贵司 慎思，我公司 双方对协商。双方双析一致意见，同意如下：

昌运东富公司本着求同存异，长远合作的原则，现行终止 此索赔程序，我司 向 检款 续缴的单 审请。

富春容裕公司 愿一如既往，和昌运东富继续保持和加强双方的业务来往，顺便网络优先原则，在以后的 租期及 长期 联合同 招标中，优先取合昌运东富的租 报价并给予最后机会。

昌运东富和富春容裕继续寻求双方长期合作的各种可行性方案，为创造双赢的发展局面共同努力。

此致

昌运东富
2005年4月28日

4

[Translation]

(On the letterhead of Fuchuen Dihai Shipping Co., Ltd.)

To:    Transfield ER Cape Limited

Re: Termination of arbitration in London relating to
the charter of MV "ALINA" dated 28th November 2003

We acknowledge receipt of your letter dated 28th April 2005 confirming the termination of the arbitral procedure relating to MV ""ALINA".   For the purpose of the friendly cooperation between both parties, we agree to your immediate termination of the application for arbitration irrespective of the fact that we have incurred a huge sum of legal costs in this case.

Fuchuen Dihai Company would continue to maintain and strengthen business relations with Transfield ER as usual.

(Chop affixed)
Fuchuen Dihai Shipping Co., Ltd.

21st July 2005

G:\Litigation\S\S110\048-002E.doc                            5

28

 富春帆海船务有限公司
FUCHUEN DIHAI SHIPPING CO., LTD.

致: 盛运东富

关于 "ALINA" 轮 2003 年 11 月 28 日租约终止伦敦仲裁的事宜

贵司 2005 年 4 月 28 日发给我司的有关终止"ALINA"轮上法律程序的确认已收悉。尽管我司已为此案支付了昂贵的法律费用,但为了双方的友好合作,我司同意贵司提出的立即终止仲裁程序的申请。

富春帆海公司将一如既往,和盛运东富继续保持和加强双方的业务来往。



富春帆海船务有限公司
2005年7月21日

香港金钟道88号统一中心35字楼
35/F, UNITED CENTRE, 95 QUEENSWAY, HONG KONG

TEL: 852-34091885  FAX: 852-34081777
E-MAIL: SHIPPING@FUCHUEN.COM

6

6

[Translation]

To:    Fuchuen Co., Ltd. and Fuchuen Dihai Shipping Co., Ltd.

Further to our letter dated 28th April 2005 and your reply letter dated 21st July of the same year sent by facsimile, we are of the view that both parties are still unable to reach any agreement and consensus on the arbitration and dispute relating to MV "ALINA".

Although we are of the view that the proposals set out in our letter dated 28th April 2005 were feasible, reasonable to both parties and very constructive, you failed to accept all of our proposals in your reply letter dated 21st July 2005. As you only mentioned that you accepted the termination of the arbitration without mentioning your acceptance of the other conditions, we are of the view that you did not agree to all of our conditions set out in our letter dated 28th April 2005.

Despite our various communications with the staff of your company last year and this year, and the fact that we have repeatedly stated our stance, you paid no attention to the same and we express deep regret about this. Thus, we have decided to recommence the arbitral procedure between both parties relating to MV "ALINA" from the date hereof.

(Chop affixed)

Transfield ER

7th March 2006

[Handwritten words:

To: Fuchuen

Attn: Mr. Miao]

7

G:\Litigation\S\S110\048-002E.doc

32

致：香港富春有限公司并富春帝海船务有限公司

按我司 2005 年 4 月 28 日所发函及贵司同年 7 月 21 日所发传真，我司认为双方一直未能就 "ALINA" 轮有关待款争议达成任何协议及共识。

且按我司一直认为我司 05 年 4 月 28 日函中所提建议对双方都是可行、合理及极具建设性的，借贵司在 05 年 7 月 21 日所提函中并未对我司提议全面接受，只是退回可议接受卖止停缴，并未提及其它附带条件的抛开结果。因此我司认为你方并不接受我司 05 年 4 月 28 日函中的所有条件。

尽管我司过去半及今年这段时间中与你司有关人员多方联系，并多次阐明了我司立场，怎样方一直置之不理，我司对此深表遗憾，因此我司决定由即日开始重新启动与贵司的"ALINA"轮的仲裁程序。

特此知会。

2005 年 3 月 7 日

8

MR 11 04 FAX  +65 62254022        RODGERS N CO SOLICITORS                    ☎ 001/003

5 Shenton Way #19-01
UIC Building
Singapore 068808
Phone: +65 6225 4020
Fax:    +65 6225 4022
E-mail: prodgers@rodgersco.com

**Rodgers & Co Solicitors (Asia) Pte Ltd**

# Fax

| **To:** | Patrick O'Donovan | **From:** | Paul Rodgers |
|---|---|---|---|
| **Fax:** | +44 20 8977 3052 | **Pages:** | 2 + 4 |
| | | | |
| **Cc:** | Skuld (Far East) Ltd | | |
| **Attn:** | Nicola Mason | **Date:** | 25 June 2007 |
| **Fax:** | +852 (2836) 3219 | **Our Ref:** | PRR/ay/1043 |

Dear Sir,

Re: Alina - c/p dd 28th November 2003

We have been instructed by Fuchuen Dihai Shipping Co. Ltd. who were the charterers under the above captioned fixture. We understand that Skuld (Far East) Ltd., acting on behalf of their member Transfield ER Cape Limited (owner under the above captioned fixture) have purported to appoint you as arbitrator in respect of all disputes arising under or in relation to the charterparty. We have been passed a copy of Skuld's e-mail dated 28th May to Fuchuen Dihai Shipping Co. Ltd.

We and our clients are at a loss to understand what the purported appointment relates to. It is correct that various disputes arose between charterers and owners in relation to the charterparty. In 2004 Winter Scott, acting on behalf of owners, appointed B.D.I. McKenzie as owners' arbitrator in respect of all claims, disputes and counterclaims arising out of or in connection with the charterparty. Ince & Co (who were then acting for charterers) in turn appointed M.J. Baker-Harber. We attach copies of the two letters of appointment.

The disputes were subsequently settled by the parties as confirmed by Winter Scott's fax to Mr. McKenzie of 6th July 2005 (erroneously dated 2006) which was copied to both Ince & Co. and Mr. Baker-Harber and Ince & Co's fax 8 July 2005. We enclose a copy of that fax.

In the circumstances we and our clients believe that there is no subsisting agreement to arbitrate between owners and charterers and/or that any and all disputes arising out of or connected with the charterparty have already been resolved. It follows that if (which is denied) there is any subsisting arbitration agreement there are nonetheless no outstanding disputes to be referred to arbitration. For the avoidance of doubt we should point out that the settlement between the parties was recorded in an exchange of correspondence. There is no formal settlement agreement and it follows that there can be no question of disputes relating to the settlement agreement being referred to arbitration.

We invite Skuld (who are reading this in copy) to confirm that they withdraw and abandon the alleged arbitration which they have purported to commence. If they fail to do so we reserve all of our clients' rights in relation to the purported reference and in relation to your (alleged) jurisdiction. So far as we and

In association with B.J. Macfarlane & Co. London



Rodgers & Co Solicitors (Asia) Pte Ltd                                    June 25, 2007

our clients can see there can be no basis upon which you can have any substantive jurisdiction over our clients. For the avoidance of doubt our clients reserve the right to make such application as may be appropriate pursuant to s.30 and/or s.33 of the 1996 Act  and/or to take no part in the arbitration and either make an appropriate application under s.72 or simply challenge any award you may make.

If Skuld refuse to withdraw/abandon the alleged arbitration which they have purported to commence we invite them to clarify by return the precise basis upon which they claim to be entitled to commence and prosecute any arbitration against charterers.

Kind regards

Paul Rodgers
Solicitor

● Page 2

1 ⑥

**Louise Norris**

From:   Louise Norris on behalf of Glenn Winter
Sent:   10 July 2007 13:04
To:     'Paul Rodgers'
Cc:     'Patrick O'Donovan'
Subject: ALINA - C/P dd 28 November 2003 - your Ref GDW/ln/82/52

Dear Mr. Rodgers,

Many thanks for your email.

I confirm that Winter Scott has now been reinstructed by Skuld.

Fortunately, I am on holiday as from tomorrow afternoon, but I will brief one of my colleagues to
deal with this matter (in which regard I have noted the urgency).

However, I should be very grateful if you could clarify one point as soon as possible. As we
understand the position, your Clients are asserting that there was a settlement agreement
pursuant to which all disputes under the Charterparty were fully and finally settled.  I recall that
this is also my recollection from instructions received in July 2006, but should be grateful if you
would let me have a copy of any settlement agreement if it is your Clients' position that the
settlement was concluded in writing. If the settlement agreement was not concluded in writing,
would you let me have full particulars of all terms of the agreement on which your Clients' rely.
Although I have only quickly read through your application, it does seem to me that the terms of
any agreement are absolutely crucial to the position.

I note that you are picking up your emails and would therefore appreciate it if you would
respond later today so I can brief someone properly before I leave the office (tomorrow
lunchtime).

Best regards,

Glenn Winter
Winter Scott

**Winter Scott**
St Olave's House, Ironmonger Lane, London EC2V 8EY
Telephone: +44 (0)20 7367 8989  Fax: +44 (0)20 7726 2371
DX: 42602 Cheapside
CONFIDENTIALITY NOTICE: This e-mail is intended only for the addressee. It may contain privileged and/or
confidential information. If you are not the intended recipient please inform us immediately on the telephone
number above and do not disclose the contents or take copies.

From: Paul Rodgers [mailto:prodgers@rodgersco.com]
Sent: 10 July 2007 12:01
To: Glenn Winter
Subject: ALINA - C/P dd 28 November 2003 - your Ref GDW/ln/82/52

DICTATED BUT NOT SEEN

Dear Mr Winter

10/07/2007

We are unclear whether you are still instructed in the above matter but in case you are, and to save time, we are attaching a copy of our urgent application to Mr O'Donovan which has already been sent to Skuld (Far East) Ltd (Mrs Nicola Mason). If you are no longer instructed would you please advise.

Kind Regards
Paul Rodgers

**RODGERS & CO SOLICITORS (ASIA) PTE LTD**
**5 Shenton Way #19-01, UIC Building**
**Singapore 068808**

Tel:  +65 6225 4020
Fax: +65 6225 4022
************

Disclaimer
Any opinions expressed in this email are those of the individual and not necessarily of Rodgers & Co Solicitors (Asia) Pte Ltd email and any files transmitted with it, including replies and forwarded copies (which may contain alterations) subsequently transmitted from Rodgers & Co Solicitors (Asia) Pte Ltd., are confidential and solely for the use of the intended recipient. It may contain material protected by legal privilege. If you are not the intended recipient or the person responsible for delivering to the intended recipient, be advised that you have received this email in error and that any disclosure or copying of all reliance upon the information contained in this message is strictly prohibited.

If you have received this email in error please notify Rodgers & Co Solicitors (Asia) Pte Ltd. by telephone on +65 6225 4020. Please then delete this email and destroy any copies of it.

12

**Glenn Winter**

| | |
|---|---|
| **From:** | Paul Rodgers [prodgers@rodgersco.com] |
| **Sent:** | 10 July 2007 13:30 |
| **To:** | Glenn Winter |
| **Cc:** | Patrick O'Donovan |
| **Subject:** | RE: ALINA - C/P dd 28 November 2003 - your Ref GDW/ln/82/52 |
| **Importance:** | High |

DICTATED BUT NOT SEEN

Dear Mr Winter

Thank you for your email earlier. There is no written settlement agreement per se. Our case is set out in my application earlier today together with supporting documents. With respect, the precise terms of the settlement agreement are academic in the context of this application, not least because you appear to accept all disputes under the charterparty were fully and finally settled.

Would you please confirm within today your availability for a hearing this week so that I can make appropriate flight arrangements, as I would rather avoid having to fly into Singapore tonight only to return a few days later. You are of course aware of this case having notified the original Tribunal and believe you should be in a position to respond quickly.

Kind Regards
Paul Rodgers

**RODGERS & CO SOLICITORS (ASIA) PTE LTD**
**5 Shenton Way #19-01, UIC Building**
**Singapore 068808**

Tel:  +65 6225 4020                          13
Fax: +65 6225 4022
***********

Disclaimer
Any opinions expressed in this email are those of the individual and not necessarily of Rodgers & Co Solicitors (Asia) Pte Ltd email and any files transmitted with it, including replies and forwarded copies (which may contain alterations) subsequently transmitted from Rodgers & Co Solicitors (Asia) Pte Ltd., are confidential and solely for the use of the intended recipient. It may contain material protected by legal privilege. If you are not the intended recipient or the person responsible for delivering to the intended recipient, be advised that you have received this email in error and that any disclosure or copying of all reliance upon the information contained in this message is strictly prohibited.

If you have received this email in error please notify Rodgers & Co Solicitors (Asia) Pte Ltd. by telephone on +65 6225 4020. Please then delete this email and destroy any copies of it.

---

**From:** Louise Norris [mailto:lnorris@winterscott.co.uk] **On Behalf Of** Glenn Winter
**Sent:** Tuesday, July 10, 2007 8:04 PM
**To:** Paul Rodgers
**Cc:** Patrick O'Donovan
**Subject:** ALINA - C/P dd 28 November 2003 - your Ref GDW/ln/82/52

10/07/2007

Dear Mr. Rodgers,

Many thanks for your email.

I confirm that Winter Scott has now been reinstructed by Skuld.

Fortunately, I am on holiday as from tomorrow afternoon, but I will brief one of my colleagues to deal with this matter (in which regard I have noted the urgency).

However, I should be very grateful if you could clarify one point as soon as possible. As we understand the position, your Clients are asserting that there was a settlement agreement pursuant to which all disputes under the Charterparty were fully and finally settled. I recall that this is also my recollection from instructions received in July 2006, but should be grateful if you would let me have a copy of any settlement agreement if it is your Clients' position that the settlement was concluded in writing. If the settlement agreement was not concluded in writing, would you let me have full particulars of all terms of the agreement on which your Clients' rely. Although I have only quickly read through your application, it does seem to me that the terms of any agreement are absolutely crucial to the position.

I note that you are picking up your emails and would therefore appreciate it if you would respond later today so I can brief someone properly before I leave the office (tomorrow lunchtime).

Best regards,

Glenn Winter
Winter Scott

---

**Winter Scott**
St Olave's House, Ironmonger Lane, London EC2V 8EY
Telephone: +44 (0)20 7367 8989  Fax: +44 (0)20 7726 2371
DX: 42602 Cheapside
CONFIDENTIALITY NOTICE: This e-mail is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us immediately on the telephone number above and do not disclose the contents or take copies.

---

14

**Louise Norris**

From:        Louise Norris on behalf of Glenn Winter
Sent:        10 July 2007 17:30
To:          'Paul Rodgers'
Cc:          'Patrick O'Donovan'
Subject:     Alina


10th July 2007

Our Ref: GDW/In/82/143


To:    Paul Rodgers – Rodgers & Co.
       (prodgers@rodgersco.com)

cc.    Patrick O'Donovan
       (patrickodonovan@hotmail.com)

Re: Alina

Dear Mr. Rodgers,

Thank you for your email earlier today.

We note that there is no written settlement agreement.

It cannot be right that the precise terms of the settlement agreement are "academic" in the context of this application, bearing in mind that you are relying on the agreement. In this regard, although the writer is not fully up to speed, we understand that it is our Clients' position that, if there was a settlement agreement (which we note has been the subject of inconsistent comments in the correspondence to which you refer), your Clients have breached a condition of the settlement agreement and are therefore no longer entitled to rely on it. These are obviously all pertinent points which will have be considered in any application.

We would therefore again ask you urgently to set out the precise terms of any settlement agreement, if your Clients are relying on any settlement agreement. That is a reasonable request.

As you will appreciate, I am trying to deal with a number of matters before I go on holiday, but I do understand the urgency in this case. Therefore, I would like to at least review the position, discuss the position with Skuld tomorrow morning and brief one of my colleagues (probably Graeme Lloyd) before I leave the office. However, for those purposes, I do need your prompt particulars of the settlement agreement which you say prevents us from pursuing the arbitration.

In any event, I cannot see that we will be sufficiently up to speed to have a hearing this week, but Monday might be a possibility, if you can provide the details which we have requested tonight.

We would, however, add that our present view is that their would be no need for an oral hearing as we can obviously respond to your application in writing once we have the outstanding particulars. This

would appear to be a much more sensible way of proceeding than having an oral hearing (particularly if that requires you to return to London).

Best regards,

Glenn Winter
Winter Scott

---

Winter Scott

St Olave's House, Ironmonger Lane, London EC2V 8EY
Telephone: +44 (0)20 7367 8989  Fax: +44 (0)20 7726 2371

CONFIDENTIALITY NOTICE: This e-mail is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us immediately on the telephone number above and do not disclose the contents or take copies.

**16**