EXHIBIT 3

Transcript of Hearing on October 10, 2006.txt

6aanma1n                                                                  1

```
 1   UNITED STATES DISTRICT COURT
 2   SOUTHERN DISTRICT OF NEW YORK
     ------------------------------x
 3
     SECIL MARITIMA,
 4
                     Plaintiff,           New York, N.Y.
 5
                v.                        06 Civ. 6345 (AKH)
 6
     MALEV SHIPPING, et al.,
 7
                     Defendants.
 8
     ------------------------------x
 9
                                          October 10, 2006
                                          4:00 p.m.
10   Before:

11                  HON. ALVIN K. HELLERSTEIN,

12                                        District Judge
13                          APPEARANCES

14   TISDALE & LENNON
          Attorneys for Plaintiff
15   BY:  PATRICK F. LENNON

16   CHALOS O'CONNOR & DUFFY
          Attorneys for Defendants
17   BY:  OWEN F. DUFFY
          BRIAN THOMAS MCCARTHY
18
19
20
21
22
23
24
25
```

             SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

6aanma1n                                                                  2

```
 1        (In open court)
 2        THE COURT:  Mr. Lennon?
 3        MR. LENNON:  Good afternoon, your Honor.
 4        THE COURT:  And Mr. Duffy?
 5        MR. DUFFY:  Yes, your Honor.
 6        THE COURT:  Does your colleague have a name.
 7        MR. MCCARTHY:  Yes, your Honor, Brian McCarthy.  I am
 8   an associate with the firm.
 9        THE COURT:  You are entitled to have a listing.
10        This is the return of an order to show cause brought
11   by defendants requiring plaintiff to show cause why an
12   attachment was appropriately granted.
13        We are dealing with the supplemental rules in
14   admiralty for in rem attachments.  The defendant raises several
15   points.  The two important ones seem to be that the complaint
```
                         Page 1

```
                   Transcript of Hearing on October 10, 2006.txt
16      does not state an in personam claim against the defendants and
17      that there is more than enough security elsewhere, if any is
18      needed, and none is needed in this district.
19              Do I have that right, Mr. Lennon?
20              MR. LENNON:  That's how I interpret their motion
21      papers, your Honor.
22              THE COURT:  Do I have it right, Mr. Duffy?
23              MR. DUFFY:  Yes, your Honor.
24              THE COURT:  Mr. Lennon, all I have from you is a
25      letter of October 4.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300


        6aanma1n                                                        3
1               Am I missing something?
2               MR. LENNON:  Yes, you are, your Honor.  You are
3       missing -- and I can't explain why, but you are missing our
4       October 6, 2006, memorandum of law.
5               THE COURT:  I have that.  Sorry.
6               MR. LENNON:  You should also have two declarations.
7               THE COURT:  The statement of Mr. Nicholas Pontelas.
8               MR. LENNON:  I believe those are the defendants'
9       papers, your Honor.
10              THE COURT:  I have the defendants' papers.  I don't
11      have yours.
12              Will you look at these papers and see if they include
13      yours.  If not, we may need an extra copy of yours.
14              MR. LENNON:  Those are all Mr. Duffy's papers.
15              THE COURT:  With your indulgence, I will look at your
16      papers.
17              (Pause)
18              THE COURT:  Mr. Duffy?
19              MR. DUFFY:  Yes, your Honor.
20              THE COURT:  If you look at paragraph 17 of the
21      complaint, plaintiff alleges in the second part of the
22      allegation that defendant Malev is merely a shell corporation
23      through which Evalend conducts its business.
24              And in the next paragraph, that Evalend and Plumfield
25      are alter egos of Malev because they dominate and disregard
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300


        6aanma1n                                                        4
1       Malev's corporate form to the extent that Evalend and Plumfield
2       are actually carrying on Malev's business and operations as if
3       the same were its own.
4               Recognizing that I am not supposed to evaluate the
5       facts, but just look at the legal sufficiency of the
6       allegations, don't those legally sufficiently allege personal
7       liability against Plumfield and Evalend?
8               MR. DUFFY:  I would say no, your Honor.
9               The reasons are they are conclusory allegations.  I
10      think, whatever standard that one applies, whether it's the
11      reasonable grounds, probable cause, or even the state standard,
12      as in some of the cases that I cited in my brief, there has to
13      be some sort of factual support for conclusory allegations when
14      you are alleging alter ego.  I believe that those allegations
15      in and of themselves do not support a claim for alter ego.
16              THE COURT:  Mr. Lennon, on a defense of a motion to
17      vacate the attachment, shouldn't you be required to come
18      forward with the bases for these allegations?
19              MR. LENNON:  The short answer, your Honor, is no.
20      I am not required to.  I can understand why the Court
                                   Page 2
```

Transcript of Hearing on October 10, 2006.txt
21  would certainly be interested in understanding the context of
22  the allegations. But the Second Circuit made clear in
23  Aquastolle, Judge Wood, Chief Judge Wood --
24          THE COURT: If you move that mic closer to you, it
25  will pick your voice up very well.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

6aanma1n                                                          5

1           MR. LENNON: Chief Judge Wood made clear in a recent
2   Tideline case, a decision she rendered this summer, and Judge
3   Castel just last week discussed all of the same issues that are
4   being raised here in terms of the sufficiency of alter ego
5   allegations in a maritime attachment context.
6           Aquastolle did not itself deal with an alter ego
7   claim, but the Tideline case and the Judge Castel's case did.
8   Those cases basically held, following Aquastolle, that when a
9   maritime attachment issued on the basis of alter ego
10  allegations is challenged, the question isn't whether we are
11  going to ultimately prove at the time of trial whether or not
12  these companies are alter egos, have we pled it, have we
13  asserted legally sufficient maritime claim against the
14  defendant in the case.
15          What we said here, and I think it is a quite plain
16  from the pleadings themselves, are that the defendants
17  contracted with our client. Malev is a mere shell corporation,
18  run by Evalend and Plumfield as alter egos in the sense that
19  they disregarded its corporate form, dominated and controlled.
20          The general maritime law well recognizes alter ego in
21  admiralty cases or the doctrine of alter ego and piercing the
22  corporate veil. There's a case called Hellbrun Oil --
23          THE COURT: Isn't there some due process requirement
24  that there be some substance to the allegations? That's
25  certainly the case for state law attachments.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

6aanma1n                                                          6

1           MR. LENNON: Number one, it is not a state law
2   attachment.
3           THE COURT: I understand.
4           MR. LENNON: Obviously it's a federal admiralty
5   attachment.
6           THE COURT: But the Supreme Court in Fuentes v.
7   Chevron was very much concerned about the due process issue
8   where attachments were issued without in that case a hearing,
9   but I would extend it to some showing.
10          MR. LENNON: There are two issues at play here, Judge.
11  One is the question of whether or not we sufficiently pled a
12  maritime alter ego claim. I would dare to say that there
13  really isn't any question --
14          THE COURT: I think you have.
15          MR. LENNON: -- that we have.
16          In the context of a motion to vacate such as the one
17  that is brought on by the defendant, the court can consider
18  issues and should consider issues going beyond the mere
19  allegations in the complaint.
20          We have submitted a declaration of my colleague, Nancy
21  Peterson, that details the evidence and the basis for these
22  allegations.
23          I think in that context, then, if the court does have
24  due process concerns whether or not there is a scintilla, if
25  you will, of evidence to support the allegations, we would
                              Page 3

Transcript of Hearing on October 10, 2006.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6aanma1n                                                                7

```
 1  carry that burden as well. Due process concerns I don't think
 2  really have any place if we've come forward with good-faith
 3  evidence and allegations to support them.
 4          THE COURT: I have your colleague's affidavit,
 5  Ms. Peterson's affidavit.
 6          What would you suggest I look at?
 7          MR. LENNON: Your Honor, if you look at paragraphs 46
 8  through 62.
 9          THE COURT: I will summarize.
10          Ms. Peterson swears that Malev was only a paper
11  company used by Evalend to charter the ship EQUINOX. It has no
12  discernible assets; that the EQUINOX is no longer doing
13  business; that was its only activity; and that it received
14  payments through another alter ego, Plumfield; that in the
15  arbitration that Evalend and Malev were intertwined and
16  together succeeded in stretching a simple case for London
17  arbitrators into a five-year travail. They have overlapping
18  directors, overlapping officers.
19          That is it.
20          So Mr. Lennon, Mr. Duffy, would say that that shows a
21  great deal of substance. Mr. Duffy, the ball is in your court.
22          MR. DUFFY: Yes, your Honor. I don't think it shows a
23  great deal of substance. I think you have to remember in this
24  case what the facts are. My client Evalend is a professional
25  ship manager. This is their business. This is what they do.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6aanma1n                                                                8

```
 1  They were incorporated in 1972. They've never owned ships.
 2  They manage ships for other people, much like a port agent in
 3  the Port of New York doesn't own ships, but he acts as an agent
 4  for people whose ships come in. We have been doing this since
 5  1972. I think we had six ships in 1994 when Malev was around.
 6  We have 13 now. We have a contract.
 7          THE COURT: We is Evalend?
 8          MR. DUFFY: Evalend. We had a contract with Malev.
 9          THE COURT: I understand that Malev is the only party
10  to the contract, but the difference between the normal case as
11  a general agent and this case is that the general agent put up
12  a principal that has no substance, according to the
13  allegations. And the allegations are supported by the Peterson
14  affidavit.
15          MR. DUFFY: That's not true --
16          THE COURT: I think there's enough.
17          MR. DUFFY: -- that the principal put up a company
18  with no substance.
19          THE COURT: That the agent put up a company with no
20  substance, Malev, having no substance except one ship, EQUINOX.
21          MR. DUFFY: No.
22          Your Honor, I think if you look at some of these
23  cases, the plaintiff here, Secil, freely entered into a
24  contract with Malev. If Secil had any concern about Malev,
25  they could have asked for guarantees on the part of anybody
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6aanma1n                                                                9

```
 1  else.
```

Page 4

Transcript of Hearing on October 10, 2006.txt
This is fairly common in the shipping business. Secil didn't do that. They didn't rely on Malev on Evalend. Evalend was an agent for a disclosed principal. They knew who they were dealing with, and they dealt with them.

They had a bad falling out. Things didn't go well. They got most of the principal of their claim, the only reason they're still sniffing around for money is because they didn't get enough security in the first instance, and they're trying to get the interest now, which is three times the amount of the claim after these couple of years.

THE COURT: Does Mr. Lennon's view of the Tideline decision by Judge Wood, Rout Holding, the decision by Judge Castel, and D.S. Bulk, the decision by Judge Stein, are those decisions that fairly support his point of view?

MR. DUFFY: Your Honor, to be quite honest, I disagree with -- not necessarily disagree with the outcome in Tideline. I disagree with the analysis for two reasons.

One, I find --

THE COURT: Judge Wood's or Mr. Lennon's?

MR. DUFFY: Judge Wood's in Tideline. I find the authority conflicting in there. I would disagree with Judge Wood and say that Aquastolle did not change the landscape for a straight claim that is not coming under the heading of an equitable claim. In this case we are challenging the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6aanma1n                                                                10

sufficiency of the complaint right out at the start. That is a technical requirement of Rule (b), to make, as I think Judge Castel commented, said plaintiff has to assert a valid maritime claim.

THE COURT: Don't you think this is? What's legally deficient about it?

MR. DUFFY: It's conclusory allegations with no factual support to it, your Honor.

THE COURT: I don't think you need a detailed brief to have a legally sufficient cause of action.

The bottom line is this: I think there is a legally sufficient claim that is stated. I think there is sufficiently substantial support set out in the papers, and I, therefore, deny the motion to vacate the attachment.

However, what is really needed are depositions. And I would like to see the two of you get involved with depositions immediately.

That raises, Mr. Duffy, the question of your appearance. You only have a special appearance. In challenging this attachment, I'm not sure that you can't do it consistent with only a special appearance.

MR. DUFFY: If I may, your Honor, I would like to add this is one of the deep concerns of people in the situation of Malev. They have no other jurisdictional connection here with New York. This case has no jurisdictional connection with New

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6aanma1n                                                                11

York. Their funds were attached in connection with other business that they're doing, and now they are being forced to come in here and defend themselves on allegations of alter ego on flimsy conclusory allegations.

THE COURT: Malev is a charter party. You can't worry about Malev. If anyone is liable, they're liable on the

Page 5

Transcript of Hearing on October 10, 2006.txt

```
 7    contract.  They signed the charter party.  You are not worried
 8    about Malev.  Your worry is about Evalend and Plumfield.
 9              MR. DUFFY:  Yes.  Their business is frozen, and in the
10    course of their business they transfer money all around the
11    world because they're working for a couple of different ship
12    owners.  That's the only connection with New York, and now they
13    have to come in here and defend themselves against alter ego
14    allegations with no basis to them?
15              THE COURT:  I think there's sufficiently alleged here
16    and sufficiently supported to sustain the attachment.  I so
17    rule.
18              However, if you would like to challenge the proofs
19    that Mr. Lennon has gathered to this extent, by depositions, or
20    if Mr. Lennon would like to further document his case by
21    depositions, I'm agreeable to that.  I would encourage that in
22    fact.  That's what will get us the true facts.
23              Maybe that's the way to do it.  At the present time I
24    am a sustaining the attachment.
25              MR. DUFFY:  By depositions, your Honor?
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

6aanma1n                                                              12

```
 1              THE COURT:  The next issue has to do with adequacy of
 2    security.
 3              MR. DUFFY:  The issue also I would raise is, I mean
 4    that my clients have to come here to the United States.
 5              THE COURT:  Right.
 6              MR. DUFFY:  I don't believe they should.
 7              THE COURT:  Where would you like to have them deposed?
 8              MR. DUFFY:  Their office.
 9              THE COURT:  Where is their office?
10              MR. DUFFY:  Greece.
11              THE COURT:  I am not sure you can take a deposition in
12    Greece.
13              MR. DUFFY:  I am not positive that you can.
14              THE COURT:  How about London?
15              MR. DUFFY:  I would have to look into that, your
16    Honor.
17              THE COURT:  I'll order depositions in London.  That's
18    where the arbitration is going on.  This will clearly help the
19    arbitration as well.
20              Talk about the adequacy of security.  Make a showing,
21    Mr. Lennon, about the adequacy of the security.  Why do you
22    need the attachment?
23              MR. LENNON:  Your Honor, the point that was raised
24    about adequacy of security really goes to the question about a
25    bank guarantee that was issued in South Africa.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

6aanma1n                                                              13

```
 1              THE COURT:  Which is conditional?
 2              MR. LENNON:  It was not only conditional, but it was
 3    also provided to us by a party that is not a defendant in this
 4    case here in New York.
 5              THE COURT:  If it's absolute, and there is substance
 6    behind it, why do you care?  The question is that it's not
 7    absolute.  It's conditioned on what?
 8              MR. LENNON:  It's conditional on our being able to
 9    establish that that entity, Whole Proffer Shipping we need to
10    show that Proffer Shipping is --
11              THE COURT:  It is not adequate security.
```
Page 6

Transcript of Hearing on October 10, 2006.txt

```
12            MR. LENNON:  -- a related company to Malev.
13            THE COURT:  You would have to go into another trial to
14    prove this trial.
15            MR. LENNON:  Correct.
16            THE COURT:  No.  Not adequate security.  I take your
17    position.
18            MR. LENNON:  Thank you, your Honor.
19            MR. DUFFY:  Your Honor, if I could just address that
20    point.
21            THE COURT:  Yes.
22            MR. DUFFY:  That makes no sense to me because they are
23    alleging in a foreign jurisdiction that Proffer is the alter
24    ego of Malev and that's the way they're going after that
25    security.  They're saying that's conditional on us proving the
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

                                                                    14
    6aanma1n
```
 1    alter ego.
 2            Whatever security they have here against us, it is
 3    also conditional against them proving alter ego.  In this case,
 4    if they came in and said, well, we have two defendants now,
 5    your Honor, we want to be fully secured from Plumfield and
 6    Evalend, I don't think you would give them double security on
 7    both of them.
 8            They have the security in South Africa.  The bottom
 9    line is they know it is not fair to have double security
10    because they offered to return that in order to sustain this
11    one when I brought it up.  I don't think they should be allowed
12    to have double security in two jurisdictions and pursue alter
13    egos on different theories.
14            THE COURT:  It's plain to me that the Proffer
15    guarantee is not adequate security.  Whether or not security in
16    this case would be too much in relationship to the South
17    African guarantee I'll leave to South Africa, but in terms of
18    my court, the South African guarantee is not adequate.  I so
19    rule.
20            So the motion brought by the defendants to vacate the
21    attachment is denied.
22            Gentlemen, where do we go from here?
23            MR. LENNON:  Your Honor, based on your ruling that
24    depositions go forward immediately, I guess we need to
25    confer --
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

                                                                    15
    6aanma1n
```
 1            THE COURT:  I am not necessarily doing that.  What do
 2    you need now?  What do you need now to perfect your attachment.
 3            MR. LENNON:  Well, basically, your Honor, this
 4    proceeding here is actually to enforce an arbitration award
 5    that we have obtained in London.
 6            THE COURT:  Which I haven't ruled on yet.
 7            MR. LENNON:  You haven't ruled on it yet.
 8            THE COURT:  Have the papers been completed?
 9            MR. LENNON:  We need to submit to your Honor a
10    petition to confirm that award into a judgment here.
11            THE COURT:  That's what you ought to do posthaste.
12    So when are you going to do that?
13            MR. LENNON:  I can do that within two weeks, your
14    Honor.
15            THE COURT:  How much time to oppose?
16            MR. DUFFY:  Well, your Honor, if we are opposing it --
```
                                Page 7

Transcript of Hearing on October 10, 2006.txt

```
17          I mean, the only reason I would be opposing it is because my
18     clients, Evalend and Plumfield, are not parties to the
19     arbitration.  The arbitration award isn't enforceable against
20     them, and that's the same question we have here today.
21              THE COURT:  That's a point that we will have to deal
22     with.
23              MR. LENNON:  I guess, your Honor, what I would
24     suggest, then, is there would be no opposition to the petition
25     to actually convert the --
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6aanma1n                                                             16

```
 1              THE COURT:  I'll look at it.  If Plumfield and Evalend
 2     are not parties to the arbitration, you will have to make a
 3     showing that they are justly bound by the arbitration award.
 4     There are grounds to do that.  But then that would turn the
 5     ball back to Mr. Duffy's court, and he's going to have to come
 6     back and object to that, which will require an appearance.
 7              You are not going to get ready in two weeks.  Why
 8     don't you take an extra week.  Three weeks.  Put in your papers
 9     on justification for holding Evalend and Plumfield.  There is a
10     lot of cases that deal with third parties being held for
11     arbitration awards, and the law is difficult and technical and
12     I would like a full briefing on the issue.  Then Mr. Duffy will
13     have time after that.  I'll give him another two weeks to deal
14     with that issue.  I will give you one week to reply.
15              So this is how the schedule will go.
16              Mr. Lennon will have all his motion papers complete by
17     October 31.  Mr. Duffy then will have until November 14.
18     Mr. Lennon will have until November 21, by which time the
19     motion will be complete.
20              There is no allowance for motions to vacate the
21     arbitration award in the schedule.  If Mr. Duffy wants to do
22     that, that motion will be due October 31 as well.  So you are
23     running on an identical track.  But I don't want a cross-motion
24     coming in at a later date from the original motions.  All
25     motions by October 31.  All oppositions by November 14.  All
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6aanma1n                                                             17

```
 1     replies by November 21, by which time briefing is complete.  I
 2     will not entertain motions for adjournments.  That will be the
 3     schedule.
 4              MR. DUFFY:  Your Honor, if I just may be clear on
 5     this.  As I understand it, he's going to move to confirm the
 6     arbitration award against the three parties that are defendants
 7     here, and my understanding of the law is he has to prove that
 8     we are either a party to the contract or the alter ego of
 9     the --
10              THE COURT:  I don't know what the law is, but whatever
11     the law is he's going to have to prove his entitlements to
12     judgments against Evalend and Plumfield.
13              MR. LENNON:  Your Honor, if I may be heard.
14              THE COURT:  We are not arguing that point now.  That's
15     what your burden is.
16              MR. LENNON:  I am not disagreeing with that.  I am not
17     disagreeing with the approach on the petition and opposition.
18     I guess what I'm slightly confused by, or maybe I have the same
19     concern that Mr. Duffy has, is if it's my burden to prove the
20     alter ego, and of course it is, and we haven't actually had any
21     discovery on the issue before the motion papers are filed, I am
```

Page 8

Transcript of Hearing on October 10, 2006.txt
```
22  not quite sure where that gets us because I think he would be
23  saying the same things he's saying now then.
24          THE COURT: One thing you can do is ask for discovery.
25  I will relax the schedule to -- I'll give you discovery.
             SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

6aanma1n                                                          18
```
 1         If Mr. Duffy does not want to bring his clients to
 2  London, you may have to take your discovery in Greece.
 3         MR. LENNON: That I understand, your Honor. I guess I
 4  would add to that, that, you know, if it turns out that this
 5  has all been a huge mistake on our part, which of course I
 6  would seriously doubt, I think the benefit of discovery will
 7  let us know that, and it may not be necessary.
 8         THE COURT: I agree with you. And I think Mr. Duffy
 9  should agree as well. Besides, London is a very nice place to
10  visit.
11         MR. LENNON: How should we proceed, then, in terms of
12  a schedule?
13         THE COURT: Do you want to make a motion for
14  depositions?
15         MR. LENNON: I think in order to prove it in terms of
16  the sense of carrying at trial an evidentiary burden, I don't
17  have enough at the moment.
18         THE COURT: Why don't you make a motion to obtain
19  permission for depositions in Greece. You would have to look
20  and see under Greek law and Greek procedure whether you can
21  take an American-style deposition there or you are relegated to
22  a procedural posture that is required by Greek law. You will
23  also have to consider that your opponents may delay you in an
24  extraordinary fashion.
25         MR. LENNON: I believe they probably could if they
             SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

6aanma1n                                                          19
```
 1  were so inclined, your Honor, although I have taken depositions
 2  in Greece before, American-style depositions, by agreement of
 3  the parties. I guess the question is whether they would agree
 4  or not. I suppose I can confer with Mr. Duffy on that in the
 5  coming days.
 6         THE COURT: All right. Look, this schedule doesn't
 7  make sense. So I think what you need to do is this. Within
 8  two weeks, write a joint letter to me and state your respective
 9  positions on the issue of depositions. Actually, I think we
10  should have a conference. I will see you on October 27, and
11  you will express your positions to me at that time and I'll
12  figure out what to do next. 9:30, October 27.
13         Mr. Duffy, if by this point you have not converted
14  your special appearance into a general appearance, I will
15  suggest to Mr. Lennon that he agree that further appearance for
16  the conference will not change the quality of your appearance.
17  Agreed?
18         MR. LENNON: We agree to that now, your Honor.
19         THE COURT: So I would like to see both of you on
20  October 27. Let's have a proper discussion.
21         Have you attached anything to date, actually attached?
22         MR. LENNON: Yes, your Honor. We have full security.
23         THE COURT: You have full security now?
24         MR. LENNON: Yes.
25         THE COURT: So you are in the driver's seat.
             SOUTHERN DISTRICT REPORTERS, P.C.
                          Page 9
```

Transcript of Hearing on October 10, 2006.txt
(212) 805-0300

6aanma1n                                                           20

1  Mr. Duffy has to come to you. Is it cash?
2          MR. LENNON: Yes. Cash, your Honor.
3          THE COURT: You might as well, Mr. Duffy. You've got
4  to deal with the issues. You can't delay it anymore.
5          I will see you October 27. If you cut through this
6  with an agreement, which I think would be the best thing, write
7  to me, give me your joint proposal for an agreement, and you
8  wouldn't have to come see me and waste your time. I think what
9  I would be looking to see are depositions in London at a fairly
10 early date followed by a motion schedule.
11
12         MR. LENNON:  Understood, your Honor. Thank you.
13         THE COURT:   OK. Thanks very much.
14         MR. DUFFY:   Thank you, your Honor.
15         MR. LENNON:  Thank you.
16         (Adjourned)
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300