EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
ALLIED MARINE SERVICES LTD.,

               Plaintiff,

       -against-                                       06 Civ. 3641 (LAK)

LMJ INTERNATIONAL LTD.,

               Defendant.
------------------------------------------x

## ORDER

LEWIS A. KAPLAN, *District Judge.*

       This is an action in admiralty to enforce an award issued in a London arbitration relating to a maritime shipping dispute. Defendant moves to vacate the order of maritime attachment and dismiss the complaint. Defendant also seeks countersecurity for claims it has asserted against plaintiff in court in India.

       Defendant's motions are denied for reasons substantially set forth on the record in open court. What remains is to set forth the reasons for denial of defendant's claim regarding the attachment of funds during an electronic transfer and to rule on the request for countersecurity.

*EFTs*

       Funds being transferred electronically from one bank to another during an electronic funds transfer ("EFT") pass through intermediary banks if "the originating bank and the destination bank are not members of the same wire transfer system." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 n.1 (2d Cir. 2006). In *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002), the Second Circuit held that EFTs in the possession of such "intermediary" banks can be attached pursuant to a maritime attachment order.[1]

---

    1

        Although a recent Second Circuit decision questioned the correctness of *Winter Storm*'s holding that "EFTs are property of the beneficiary or sender of an EFT," rather than the property of neither while present in an intermediary bank, *Aqua Stoli*, 460 F.3d at 445 n.6,

2

Defendant contends that plaintiff's two attachments of EFT funds were improper because the funds were attached while at "the correspondent banks for the [third-party] beneficiaries' respective banks," after having been processed through defendant's banks and "defendant's banks' correspondent banks." Def. Reply 2-3. Defendant argues the funds thus were "not in the care, custody, possession or control of the defendant" at the time of attachment. *Id.* at 3.

Neither *Winter Storm* nor subsequent cases have distinguished among "intermediary" banks as defendant tries to do. *See, e.g., Aqua Stoli*, 460 F.3d at 436 n.1 ("*Winter Storm* permitted the attachment of funds while those funds are in an intermediary bank temporarily as a credit before being passed through to the beneficiary of the transaction or another intermediary bank."). Thus, the Court is not persuaded that defendant's distinction is material.

*Countersecurity*

Supplemental Admiralty Rule E(7) authorizes a court to order countersecurity "[w]hen a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action . . . ."

Although defendant has asserted claims against plaintiff in an Indian court relating to the same underlying dispute, it has not "assert[ed] a counterclaim" in this action. The Court therefore cannot order countersecurity. Accordingly, defendant's request for countersecurity is denied.

SO ORDERED.

Dated:    December 8, 2006

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

*Winter Storm* remains binding in this Circuit.

```
6C7ZALLM                                                              1
6c7zallm                     Motion
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALLIED MARINE SERVER, LTD,

                Plaintiff,

        v.                              06 CV 3641 (LAK)

LMJ INTERNATIONAL LTD,

                Defendant.
------------------------------x
                                        December 7, 2006
                                        3:00 p.m.
Before:

                HON. LEWIS A. KAPLAN,

                                        District Judge

                        APPEARANCES

PATRICK F. LENNON
     Attorney for Plaintiff

ROBIT SABHARWAL
STUART MACK
     Attorneys for Defendant
```

```
               SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                                      2
6c7zallm                     Motion
         (Case called)
         THE DEPUTY CLERK:  Movant, are you ready?
         MR. SABHARWAL:  Yes.
         THE DEPUTY CLERK:  Respondent, are you ready?
         MR. LENNON:  Yes, we are.
         THE COURT:  Mr. Sabharwal.
         MR. SABHARWAL:  Good afternoon, your Honor.
         THE COURT:  If you wouldn't mind, please use the
lectern.
         MR. SABHARWAL:  Oh.  Good afternoon, your Honor.  My
name is Robit Sabharwal, representing the defendant LMJ in this
matter, who is also the movant on the current motion to dismiss
and to vacate the order of attachment.
```

Page 1

6C7ZALLM

```
14              Would you like me to continue, Judge?
15              THE COURT:  Pardon me?
16              MR. SABHARWAL:  Would you like me to keep speaking?
17              THE COURT:  Well, yeah, that was the plan.  I mean,
18   I'm affording you the opportunity to argue the motion.
19              MR. SABHARWAL:  Oh, okay.  Well, your Honor, since we
20   filed the motion there was the case of Aqua Stoli decided by
21   the Second Circuit, and it obviously changed the law and
22   changes how we presented the motion today.
23              But given that that's, that's the state of the law and
24   given that that appears to be the last word on it thus far, I
25   thought we would focus on the language of Aqua Stoli.  And the
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

6c7zallm                Motion
```
 1   first thing, your Honor, in Aqua Stoli it says that the
 2   requirement for a plaintiff, such as AMS in this case, is it
 3   must have a valid prime facie admiralty claim against the
 4   defendant.  And we submit, your Honor, that what has been
 5   presented is not a valid prime facie Maritime claim because it
 6   is based on an award issued in London which was obtained by the
 7   plaintiff, in direct violation of a court injunction.
 8              THE COURT:  So your argument goes down to the question
 9   of whether it's a Maritime claim, but whether it's valid.
10              MR. SABHARWAL:  Whether it's a valid claim at all.
11              THE COURT:  But if it were a valid claim, it would be
12   a Maritime claim, do you agree?
13              MR. SABHARWAL:  Yes, your Honor.
14              THE COURT:  Okay.
15              MR. SABHARWAL:  And our contention is it was a direct
16   violation of an injunction issued by a court that had
17   jurisdiction over this plaintiff.  The plaintiff appeared in
18   that matter and actually submitted documents, papers in
19   opposition to the injunction, and then decided that they didn't
20   like the injunction and walked away from it.  We believe that
21   that is --
22              THE COURT:  What language in the injunction was
23   violated?
24              MR. SABHARWAL:  Well, your Honor, I believe that the
25   injunction specified that the plaintiff was not going to
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

6c7zallm                Motion
```
 1   proceed any further with arbitration that it was planning to
 2   undertake.
 3              THE COURT:  Well, but I don't know that it did say
 4   that.  It's exhibit D to the declaration of Mr. Patni, is that
 5   right?
 6              MR. SABHARWAL:  Exhibit D is the order.  Yes, your
 7   Honor.
 8              THE COURT:  And it doesn't even -- it doesn't say
 9   anything at all about proceeding with an arbitration as far as
10   I can see.
11              MR. SABHARWAL:  Well, your Honor, I think the first of
12   three letters that were written by the plaintiff saying that
13   they wished to proceed with arbitration, and the Court order
14   said that they -- it says on page -- on the second page, the
15   last paragraph it quotes, injunction restraining the defendant
16   number three, which is AMS, which was AMS, whether by itself or
17   by its servant or agents or assigns or otherwise, however --
18   howsoever from giving any effect of further effect to the
```

Page 2

```
                          6C7ZALLM
19     letters dated November 22 '03, December 8, '03 and December 11
20     '03 -- hereto respectively in any manner whatsoever. And those
21     are the three letters, your Honor, that said that they were
22     wishing to proceed to arbitration.
23              THE COURT:  well, but by proceeding with the
24     arbitration, they weren't giving effect to the letters.  They
25     were just proceeding with the arbitration, right?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                   5
       6c7zallm                 Motion
1               MR. SABHARWAL:  Well, I think -- your Honor, even if
2      there was a doubt on that at that point, we do have the new
3      submission I did send out to your Honor on Monday.
4               THE COURT:  And what is that?
5               MR. SABHARWAL:  And that was further order of the same
6      court specifically enjoining AMS, the plaintiff herein, from
7      proceeding with trying to enforce the arbitration award.
8               THE COURT:  Well, but your position here was that the
9      arbitration award is invalid because it was obtained in
10     violation of the injunction, which is exhibit D to
11     Mr. Patni's --
12              MR. SABHARWAL:  Right.
13              THE COURT:  -- declaration.
14              MR. SABHARWAL:  Yes, your Honor.
15              THE COURT:  Now, certainly the validity of the award
16     can't be affected one way or the other by an order issued in
17     Calcutta after the award was rendered.
18              MR. SABHARWAL:  But what I would suggest, your Honor,
19     is that the new -- your decision now clarifies what this order
20     meant.  I think everybody understood it to mean what I'm saying
21     is -- there were letters exchanged subsequently where the
22     arbitrator was informed of the order, the injunction, and
23     nobody is really challenged that, that --
24              THE COURT:  Look, it may well be that if there was
25     jurisdiction over Allied in Calcutta, and they violated the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                   6
       6c7zallm                 Motion
1      order, you may have remedies available to you in Calcutta
2      against them.  They may be in contempt of court.  I don't know
3      enough about Indian law to know.  But I don't see how it makes
4      an award entered by an arbitrator in London invalid.
5               MR. SABHARWAL:  Well, your Honor, when AMS --
6               THE COURT:  Certainly if I issue an injunction against
7      someone not to disburse money out of a bank account, and the
8      person goes and takes money out of the bank account and buys a
9      new car, I don't see how that renders the purchase of the car
10     invalid.
11              MR. SABHARWAL:  well, the person who sells the car,
12     your Honor, if he's on notice of your injunction --
13              THE COURT:  Excuse me, excuse me.  I didn't hear you.
14              MR. SABHARWAL:  In your example, Judge, if the person
15     who sells the car is on notice of your injunction and accepts
16     the money, he's accepting it in violation of your injunction.
17              THE COURT:  Possibly.  But does that mean that the car
18     still belongs to him?  I doubt it.
19              MR. SABHARWAL:  Well, I would submit, your Honor, that
20     the car was not sold in good faith and that --
21              THE COURT:  That may be.
22              MR. SABHARWAL:  And I think the other thing is, Judge,
23     that your Honor has sound discretion to look at the
                                Page 3
```

```
                              6C7ZALLM
24      circumstances and see if the plaintiff did not act in a proper
25      practice and did not act in good faith, that you have the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                        7
```
        6c7zallm                Motion
 1      discretion to say that this is not a valid claim.  And I have a
 2      citation for you, your Honor, that the case of Sea Transport
 3      Contractors, which specifically looks at improper practice by
 4      the plaintiff.  The citation is 411 F. Supp., 2d, 386.  And it
 5      says:  The district court has the authority to vacate a matter
 6      of attachment upon a showing of any improper practice or
 7      manifest want of equity on the part of the plaintiff.  And
 8      that's what I submit happened here, your Honor, that AMS said
 9      we don't like the injunction, we don't like the Court we're in,
10      and now let's just walk away and let's go to London and get an
11      award.
12              THE COURT:  What's the effect of Aqua Stoli on that?
13              MR. SABHARWAL:  I don't think Aqua Stoli would affect
14      that part of it, but this is language from Aqua Stoli directly
15      would say that they must show a valid prime facie admiralty
16      claim.  And our submission is, your Honor --
17              THE COURT:  Yeah, but you haven't said anything to me
18      that suggests that alleged bad faith on the part of the
19      applicant for the writ goes to the validity of the Maritime
20      claim.
21              MR. SABHARWAL:  Well, it goes to their ability to
22      make -- to ask for an attachment.  And I think it blends with
23      the thought that do they have a good claim upon which an
24      attachment can be based.
25              THE COURT:  I just don't get it.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                        8
```
        6c7zallm                Motion
 1              MR. SABHARWAL:  Well, your Honor, if you just focus on
 2      whether it's a valid claim or not.
 3              THE COURT:  Well, I was trying to do that, actually.
 4              MR. SABHARWAL:  And I submit that it's not a valid
 5      claim because it was in violation of the injunction of
 6      Calcutta.
 7              THE COURT:  It may be that you're right in saying that
 8      they're in contempt of the Indian injunction.  I don't know.
 9      But I don't see how whether they're in contempt of the Indian
10      injunction has anything to do with the validity of the claim
11      that they arbitrated in London.
12              MR. SABHARWAL:  Well, the award, your Honor, was
13      issued without the defendant, LMJ, the defendant in this case
14      being present.
15              THE COURT:  That's because you decided not to show up.
16              MR. SABHARWAL:  Well, they couldn't show up because
17      there was a court injunction against them.
18              THE COURT:  There was no court injunction against you.
19              MR. SABHARWAL:  Well, it said no further effect to the
20      three letters, which would mean no further effect to --
21              THE COURT:  It says -- it says that the defendant in
22      the Indian action, Allied Marine, shall give no further effect.
23              Now, there's no injunction against you.  Once you knew
24      they were proceeding with the arbitration, you had every right
25      to go and defend.  You wouldn't have been in contempt of any
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                        9

```
                          6C7ZALLM
     6c7zallm                  Motion
 1   injunction. You did exactly what you accused them of doing
 2   with respect to the Indian proceeding; that is, you decided
 3   you'd rather not be in the London forum, and you didn't show
 4   up.
 5           MR. SABHARWAL:  Well, your Honor, one -- it matters
 6   what happened first.  I mean, the first thing was the
 7   injunction upon which our client relied upon, which LMJ relied
 8   to say there should be no further proceeding.
 9           THE COURT:  Well, it may well be that your client made
10   a mistake.
11           MR. SABHARWAL:  I'm sorry.  You mean in terms of
12   understanding the injunction?
13           THE COURT:  Well, they may have been mistaken in terms
14   of understanding the injunction, but even if they understood
15   the injunction correctly, they may have been poorly advised on
16   the question of whether an arbitration award, rendered in an
17   arbitration where the claimant proceeded with the arbitration
18   in defiance of the Indian injunction would be valid and
19   enforceable.
20           MR. SABHARWAL:  Yeah.  Your Honor, I don't know if
21   this is the right time to bring it up, but the fact is that
22   there was -- there was no basis for that arbitration.  There
23   was no arbitration agreement, and there was a prima facie
24   finding by the Indian court that there weren't sufficient
25   grounds to proceed to arbitration.  Now that would be another
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              10
     6c7zallm                  Motion
 1   issue with regard to the validity --
 2           THE COURT:  Well, the arbitrator found otherwise.
 3           MR. SABHARWAL:  Right.  But I believe that's an issue
 4   for the courts, Judge.
 5           THE COURT:  There was considerable evidence that your
 6   client didn't put all the evidence before the Indian Judge.
 7           MR. SABHARWAL:  Well, you know, your Honor, what I
 8   mean is the decision of whether there is an agreement to
 9   arbitrate is a decision that's not to be made by the
10   arbitrator.  It's to be made by the courts.  There's the
11   Supreme Court case of AT&T in the United States which says
12   that's a decision for the courts to make.  Now, if the
13   arbitrator makes that decision --
14           THE COURT:  In cases under the Federal Arbitration
15   Act, which this isn't.
16           MR. SABHARWAL:  Yes, your Honor.  But by analogy, we
17   are allowing an award to be enforced here which doesn't follow
18   the dictates of --
19           THE COURT:  Look, it may well be -- it may well be
20   that it is open to you in defending the petition to confirm the
21   award to show that there was no arbitration agreement.  That's
22   possible.  But it seems to me that it does not go to the
23   validity of the award for the purpose of granting an order of
24   Maritime attachment right at the outset of the litigation.
25           MR. SABHARWAL:  Okay.  Your Honor, can I move to the
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              11
     6c7zallm                  Motion
 1   next defense that we have --
 2           THE COURT:  Feel free.
 3           MR. SABHARWAL:  -- on this point, which is -- on the
 4   attachment, which is that unlike all the cases that have been
                              Page 5
```

```
                              6C7ZALLM
 5     cited, our attachment here relates to funds that were with a
 6     bank three steps removed from the defendant. What we have, if
 7     I may --
 8              THE COURT: Two steps, as I understand it, right?
 9              MR. SABHARWAL: Well, your Honor, if I could mention
10     the names of the banks. We have the -- we have LMJ's Bank in
11     Calcutta, Bank of Baroda, which is the originator's bank, we
12     call that the originator's bank. From there, the money came to
13     Bank of Baroda in New York, which was the originators bank's
14     correspondent bank.
15              THE COURT: From there it went to the correspondent
16     bank for the payee.
17              MR. SABHARWAL: Yes. It went to Bank of New York,
18     which was the correspondent bank for the payee's bank.
19              THE COURT: And that's where it was attached.
20              MR. SABHARWAL: And that's where it was attached. So,
21     in other words, it wasn't with LMJ, it wasn't with LMJ's bank.
22     It wasn't with LMJ's bank's correspondent bank. It had now
23     reached the beneficiary's correspondent bank. And the same is
24     true with the smaller -- your Honor, if you like, could I give
25     you the --
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                       12
     6c7zallm                   Motion
 1              THE COURT: Excuse me?
 2              MR. SABHARWAL: The same is true for the second
 3     attachment.
 4              THE COURT: Right. I understand that to be so.
 5              MR. SABHARWAL: Right. And what I would suggest, your
 6     Honor, is there is no way in any of the cases a situation where
 7     the beneficiary's bank, the beneficiary's bank's correspondent
 8     bank had received the funds, and those funds have been attached
 9     on the basis of an attachment order issued against the
10     originator.
11              THE COURT: Well, I understand your point.
12              MR. SABHARWAL: Pardon me?
13              THE COURT: I understand your point.
14              MR. SABHARWAL: Yes, sir. That's what we're saying,
15     that this case is unique in itself. And in Aqua Stoli, if you
16     go to footnote six in Aqua Stoli and we look at the meaning of
17     that, Judge Rakoff, just about two weeks ago issued an opinion
18     in the case of Seamart Shipping in which he said that that
19     Winter Storm was seriously eroded by Aqua Stoli, and it must
20     be, Winter Storm must be read as narrowly as possible from now
21     on. And what we submit, your Honor, is that in the narrow
22     reading of Winter Storm, this particular EFT -- these two
23     particular EFTs that were attached were too far removed from
24     the originator to be attached effectively.
25              THE COURT: Go ahead.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                                       13
     6c7zallm                   Motion
 1              MR. SABHARWAL: Yes, sir. And then just to wrap up,
 2     your Honor, on the general principles, your Honor, of public
 3     policy and comity --
 4              THE COURT: You understand -- excuse me. You
 5     understand, of course, that the passage you quote from Winter
 6     Storm is directly to a whole different point.
 7              MR. SABHARWAL: I'm sorry, Judge?
 8              THE COURT: It's directed not to this EFT point.
 9              MR. SABHARWAL: I was quoting not from Winter Storm.
                                 Page 6
```

```
                                6C7ZALLM
 10    I was referring to Judge Rakoff's decision in Seamart Shipping.
 11            THE COURT:  Well, yeah, I understand that.  But Winter
 12    Storm was eroded on a different point.
 13            MR. SABHARWAL:  It was eroded on the EFT point.
 14            THE COURT:  Well --
 15            MR. SABHARWAL:  In footnote six they talk specifically
 16    about the Aqua Stoli case, and they talk about the correctness
 17    of the decision of Winter Storm, seems open the question --
 18    reliance on deck to hold EFT, the property of the beneficiary
 19    or sender of that, any evidence --
 20            THE COURT REPORTER:  I'm sorry, counsel, you're going
 21    to have to slow down, please.
 22            MR. SABHARWAL:  I'm sorry -- I'm just reading from the
 23    footnote.  I'm sure the Judge has it in front of him.
 24            THE COURT:  I do.  You may continue.
 25            MR. SABHARWAL:  Yes, your Honor.  So just to retrace
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

                                                                        14
```
       6c7zallm                       Motion
  1    then, that it was about EFTs in particular that Aqua Stoli was,
  2    the Aqua Stoli court was concerned.  And Judge Rakoff points
  3    out exactly what in fact what we submitted to your Honor in
  4    that letter of August 28 that Winter Storm has been eroded and
  5    has been overruled or seriously --
  6            THE COURT:  Suppose you are right that the funds at
  7    the time they were attached were not yours.  How do you have
  8    standing to raise the argument?
  9            MR. SABHARWAL:  Because, your Honor, those funds, if
 10    they were not ours, we still owe them to the payee.
 11            THE COURT:  Well, if the funds were not yours, whose
 12    were they?
 13            MR. SABHARWAL:  They belong to the payee.
 14            THE COURT:  So shouldn't the payee be in here trying
 15    to recover the funds?
 16            MR. SABHARWAL:  Well, your Honor, I think that we are
 17    still exposed on the funds so we still have an obligation to
 18    the payee, which hasn't been fulfilled.  So we are here to ask
 19    that the funds be replaced.
 20            THE COURT:  Well possibly not, actually.  If they
 21    belong to the payee, isn't the payee's remedy to go after the
 22    funds or the plaintiff?
 23            MR. SABHARWAL:  We are pursuing them, your Honor, with
 24    the hope that if they are released and the payee would receive
 25    them so that that would relieve our obligation to the payee.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

                                                                        15
```
       6c7zallm                       Motion
  1            THE COURT:  I understand your point.
  2            But you also have an argument that you've already
  3    satisfied your obligation because the funds became the funds of
  4    the payee when they hit the payee's correspondent bank and,
  5    therefore, your obligation is discharged.  And if somebody
  6    stole the money or otherwise took it out of the correspondent
  7    bank, why then there are remedy's against whoever got the
  8    money.
  9            MR. SABHARWAL:  Well, your Honor, if your Honor so
 10    directs, I would certainly have the payee join in the action.
 11            THE COURT:  Well, I'm not directing anything.  I mean,
 12    you got to decide what's in your client's interests.
 13            But you see the problem that I have with your
 14    argument.  If they're your funds, then I see your standing and
```

```
                              6C7ZALLM
15    I see the issue.  If they're not your funds, then I'm not sure
16    what right you have to complain about it.
17               MR. SABHARWAL:  Just a minute.
18               Yeah, your Honor, my co-counsel points out that if
19    they're not our funds, then the attachment would be improper
20    anyway.  The funds must be then released.
21               THE COURT:  Maybe so, but why aren't you in here
22    moving to vacate an attachment in another lawsuit that you
23    never heard of before?
24               MR. SABHARWAL:  I'm sorry, I didn't --
25               THE COURT:  There may be other attachments around here
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

                                                                    16

```
      6c7zallm                   Motion
 1    of property that isn't yours.
 2               MR. SABHARWAL:  But this one effects us directly
 3    because we --
 4               THE COURT:  Well, it may or may not.  All depends who
 5    owns the property.
 6               MR. SABHARWAL:  But I think if your Honor was to find
 7    that these funds belonged to the payee, the payee would
 8    certainly join in this action and make a claim for the funds.
 9               THE COURT:  I can't properly make that determination
10    in their absence, can I?
11               MR. SABHARWAL:  Well, I think based on what you see,
12    your Honor, with the documents in front of you, you see that
13    what -- the chain of events and you see that the funds have
14    left the banks -- have left the beneficiaries -- I'm sorry,
15    have left the sender's control, the originator's control,
16    they've left the control of the originator's bank.  They've
17    left the control of the originator's bank's correspondent bank,
18    and now they are in the control of the beneficiary's
19    correspondent bank.  At that point if your Honor finds that
20    these funds are -- no longer belong to the defendant should not
21    be attached, I think the normal -- the result of that would be
22    automatically the order of attachment should be lifted against
23    them.  Finally --
24               THE COURT:  You're in a bit of dilemma.  If they're
25    your funds, then there is no problem with the attachment, and
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

                                                                    17

```
      6c7zallm                   Motion
 1    if they're not your funds, I'm not sure you have any right to
 2    complain about it.  But --
 3               MR. SABHARWAL:  We would rather end up not being our
 4    funds, your Honor, because the funds then would still be there
 5    and we'd have the payee come in and make a claim.
 6               THE COURT:  Well, okay.  I need to have you wrap it
 7    up.
 8               MR. SABHARWAL:  Just the last point then, Judge, was
 9    about the fact that there is a matter pending in another
10    country and that matter is -- it has been brought before the
11    court, and that in that matter the Court has found that there
12    was at least prime facie evidence to show there was no
13    arbitration.  And in the interest of international comity, I
14    would request this Court to please consider that that court
15    also had had a look at the matter and, and perhaps that's the
16    court where the matter should be sent back to.
17               And just the last point, Judge.  I mean there has been
18    allegations about the Indian courts not being up to the task,
19    et cetera.  But the case that was cited was from 1995 from the
```

```
                        6C7ZALLM
20      Third Circuit, but there have been two New York cases since
21      then which have totally rejected that reasoning, and said
22      Indian courts are certainly capable of handling these kinds of
23      matters.
24               THE COURT:  Thank you.
25               MR. SABHARWAL:  Thank you.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                    18
```
        6c7zallm                Motion
 1               THE COURT:  Mr. Lennon, briefly.  I think the key
 2      point you ought to focus on is the electronics funds --
 3      electronic funds transfer clause.
 4               MR. LENNON:  Thank you, your Honor.
 5               On the EFT point, there was comment made about Judge
 6      Rakoff's decision in the Seamart case several weeks ago.  And
 7      the suggestion was made that that somehow eroded Winter Storm
 8      or Aqua Stoli.  Frankly, I think the starting point really is
 9      to look at what the most recent pronouncement of the Second
10      Circuit has made is, and it made it in Aqua Stoli.  I don't
11      have the pinpoint cite for you.  But if you look at the first
12      part of that decision, the Circuit clearly said EFTs going to
13      or from a defendant are attachable property in this Circuit.
14               So despite footnote six, which I would submit to your
15      Honor is rank dicta, just concern expressed by Judge Walker and
16      his colleagues, they clearly held that Winter Storm was still
17      good law.  And they stated, quite clearly, that funds transfers
18      to or from a defendant are attachable.
19               Moving on to Judge Rakoff's decision in Seamart,
20      actually that decision, if it was to be given any validity,
21      would actually support our position in this case.  Because
22      really what Judge Rakoff said in that case was that Winter
23      Storm left open the question of whether funds transfer going to
24      a defendant by EFT are attachable property.  He quite clearly
25      in that case discussed and explained that his interpretation of
                   SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                    19
```
        6c7zallm                Motion
 1      Winter Storm and Aqua Stoli was that funds transfers that start
 2      or originate with a defendant are attachable property.  So his
 3      reading, which I would suggest is overly narrow, was that only
 4      funds transfers originating from a defendant, such as the case
 5      here, are attachable under the Winter Storm precedent.
 6               So I don't think that in the context of this
 7      particular case Aqua Stoli or Seamart changed anything.  The
 8      law in this circuit is still EFTs are attachable, particularly
 9      in the circumstances of this case.
10               THE COURT:  Well, doesn't the footnote one in Aqua
11      Stoli, which is I think what you're referring on -- referring
12      to, perhaps suggest that the funds are attachable while they're
13      in an intermediary bank as a credit before they hit an
14      intermediary bank that is the correspondent of the payee?
15               MR. LENNON:  No.  Well, I can only say, your Honor,
16      that I'm not aware of any case law -- and I've been involved in
17      most of these cases -- they make a distinction, or makes a
18      distinction between a correspondent bank being the
19      correspondent of the originator's bank versus the correspondent
20      of the beneficiary's bank.
21               Fundamentally, under the UCC, title to a funds
22      transfer ultimately would not transfer to the beneficiary until
23      the funds are in the beneficiary's bank account, wherever that
24      may be.  Quite clearly, however, the beneficiary does not have
                              Page 9
```

6C7ZALLM
25    an account with either one of the correspondent banks.  So,
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

6c7zallm                Motion
1    frankly, I'm not quite sure it's appropriate to use the
2    terminology originator's correspondent bank or beneficiary's
3    correspondent bank.  That terminology doesn't really apply.
4            THE COURT:  That's an interesting point.
5            Okay.  Anything further?
6            MR. LENNON:  Not unless your Honor wants me to address
7    the Maritime claim aspects.
8            THE COURT:  I don't see the need for that.
9            MR. LENNON:  Then I have nothing further, your Honor.
10           THE COURT:  Okay.
11           I'm prepared to rule on this motion now, although
12   there may be aspects of it that I'm going to write something
13   on.
14           The plaintiff and the defendant had a Maritime
15   contract, the details of which are, for present purposes, not
16   material.  The plaintiff asserts that it contained an
17   arbitration clause.  The defendant disputes that.
18           A dispute arose between the parties.  The plaintiff
19   demanded arbitration in London, pursuant to the alleged
20   arbitration clause.
21           The defendant filed an action in an Indian court in
22   Calcutta, and obtained an interloccutory injunction, the terms
23   of which are somewhat delphic.  The credal paragraph reads,
24   quote, injunction restraining the defendant number three,
25   whether by itself or by its servants or agents or assigns or
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

6c7zallm                Motion
1    otherwise, howsoever from giving any effect or further effect
2    to the letters dated November 22, 2003, December 28, 2003 and
3    December 11, 2003, being annexures G, H and I hereto
4    respectively, in any manner whatsoever, close quote.
5            The copy of the order that's been provided to me does
6    not contain the annexures.  The defendant suggests that they
7    were documents by the plaintiff demanding or otherwise
8    indicating a desire to proceed with arbitration.  I'll assume,
9    for the sake of argument, that that's so.
10           The defendant asserts that the injunction barred the
11   plaintiff from proceeding with the London arbitration.  I'm
12   really not sure that that is so, given the language of the
13   order in front of me, but I'll assume it to be so for the
14   purposes of discussion.
15           The defendant failed to appear in the arbitration in
16   London.  Indeed, the defendant failed to appoint an arbitrator
17   as it was entitled to do.  The arbitrator appointed by the
18   plaintiff in this action proceeded, and an award was entered in
19   favor of the plaintiff and against the defendant.
20           The plaintiff filed this action seeking a judgment
21   confirming the arbitration award against the defendant and it
22   obtained a writ of Maritime attachment.  It succeeded in
23   attaching funds in an intermediary bank that had been sent by
24   the defendant to some third party.  The attachment was
25   effective before the funds sent by the defendant were credited
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

6c7zallm                Motion
Page 10

```
                          6C7ZALLM
 1    to the account of the third party in the destination bank.
 2              The defendant here seeks to vacate the order of
 3    Maritime attachment and to dismiss the complaint.
 4              There's also a prayer for an order requiring the
 5    plaintiff to post counter security in light of large claims
 6    asserted against the plaintiff by the defendant in the action
 7    pending in Calcutta.
 8              The defendant makes a number of arguments with respect
 9    to the request to vacate the writ of Maritime attachment.  The
10    first argument, which was based heavily on the District Court
11    decision in the Aqua Stoli case, is that the defendant is a
12    solid and reputable company in India, and that the order of
13    attachment should be vacated because it's unnecessary.
14              The principal decision that the defendant relied upon
15    was reversed by the Court of Appeals on July 31st, 2006 in Aqua
16    Stoli Shipping versus Gardener Smith, 460 Fed. 3d, 434.  The
17    Court of Appeals there said, "That in order to obtain an order
18    of Maritime attachment, in addition to meeting the filing and
19    service requirements of Rules B and E, which were not here
20    controversial, the plaintiff has to show; first, that it has a
21    valid prime facie admiralty claim against the defendant;
22    second, that the defendant cannot be found within the district;
23    third, that the defendant's property may be found within the
24    district; and fourth, that there is no statutory or Maritime
25    law bar to the attachment.  An order of attachment may be
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

23

```
      6c7zallm                Motion
 1    vacated if the defendant sustains the burden of showing, at a
 2    Rule E hearing" -- which this is -- "first, that the defendant
 3    is subject to suit in a convenient adjacent jurisdiction;
 4    second, that the plaintiff could obtain in personam
 5    jurisdiction over the defendant in the district where the
 6    plaintiff is located; or third, that the plaintiff has already
 7    obtained sufficient security for the potential judgment by
 8    attachment or otherwise."
 9              Thus, Aqua Stoli made clear that the question of need
10    for the attachment relied upon in the District Court in the
11    decision cited by the defendant is not an appropriate
12    consideration, at least in ordinary circumstances.
13              In this case the defendant, whether expressly or
14    otherwise, concedes that the plaintiff has a Maritime claim
15    against the defendant.  It concedes that the defendant cannot
16    be found within the district.  It concedes that the defendant's
17    property has been found within the district, and there is no
18    suggestion that there is a statutory or Maritime law bar to the
19    attachment.  The only argument advanced for the proposition
20    that the requirements for the issuance of the order in the
21    first place were not satisfied is the contention by the
22    defendant that the Maritime claim sued upon by the plaintiff is
23    not a valid claim because the arbitration that was commenced
24    was commenced in alleged defiance of the Calcutta injunction.
25              It seems to me that the question of the alleged
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

24

```
      6c7zallm                Motion
 1    disobedience of the injunction is entirely separable from the
 2    question of whether the suit would more, to be more precise,
 3    the arbitration commenced by the plaintiff was brought on a
 4    valid prime facie admiralty claim.  It may well be that there
 5    was some violation of the Indian injunction.  It may well be
```

Page 11

```
                                6C7ZALLM
      6    that the Indian court had jurisdiction over the plaintiff.  I
      7    have no occasion to express any view on either one of those
      8    issues.  The fact of the matter is that the pleadings that were
      9    put before me set out a valid prime facie admiralty claim
     10    against the defendant.  Nothing that the defendant has said
     11    today or in its papers suggests otherwise.
     12             So I come to the question of whether the attachment
     13    should be vacated.  That aspect of the defendant's argument, to
     14    whatever extent it ever had any merit, has been completely
     15    undercut by the Second Circuit's opinion in Aqua Stoli.
     16    There's not even a suggestion that the defendant is subject to
     17    suit in a convenient adjacent jurisdiction.  Adjacency refers
     18    to a jurisdiction adjacent to this district.  The last time I
     19    looked, Calcutta was not that close.
     20             There's been no showing -- and it is the defendant's
     21    burden to make such a showing -- that the plaintiff could
     22    obtain in personum jurisdiction over the defendant in the
     23    district where the plaintiff is located.  Indeed, it is not
     24    even clear that the plaintiff is located in a district within
     25    the meaning of Aqua Stoli, in as much as I believe it is a
                          SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
```

25

```
     6c7zallm                        Motion
      1    foreign entity.  And certainly, there's no suggestion that the
      2    plaintiff has otherwise obtained sufficient security.  So there
      3    is no basis for vacating the attachment.
      4             The next argument is that the service of the
      5    attachment order was improper.  I reject that argument.  The
      6    order, by its terms, provided that it was to be "Deemed
      7    effective continuous service throughout the day from the time
      8    of such service through the opening of the garnishee's business
      9    the next business day."  That order was entirely consistent
     10    with governing authority in this Circuit and persuasive
     11    authority in this District.  The attachment order was properly
     12    served.
     13             Defendant next argues that because the money was in
     14    the hands of an intermediate bank, intermediary bank prior to
     15    it reaching the destination bank and the account of the
     16    defendant, that the attachment of the EFTs was improper.  I've
     17    looked at the cases.  I have concluded that I don't agree with
     18    that argument.  Rather than take the time to try to go through
     19    that analysis orally, I simply note that I will file an
     20    appropriate memorandum dealing with that point in due course.
     21             I move now to the arguments in support of the motion
     22    to dismiss the petition.  The first argument is that the
     23    petition should be dismissed on grounds of comity in favor of
     24    the proceeding in India.  I see no merit to that argument at
     25    all, which is not to say that I don't have much respect and
                          SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
```

26

```
     6c7zallm                        Motion
      1    esteem for my judicial colleagues in India.
      2             Putting aside all the questions -- and there are
      3    questions concerning whether the two proceedings are in fact
      4    truly parallel, which I doubt -- there is simply no basis for
      5    me to decline to go forward.
      6             In Colorado River Water Conservation District versus
      7    the United States, 424 U.S. 800 at page 817, the Supreme Court
      8    made it clear that district courts have a "virtually unflagging
      9    obligation to exercise the jurisdiction given them."  In the
     10    very recent decision only last month in Royal and Son Alliance
```

```
                         6C7ZALLM
11   Insurance Company of Canada versus Century International Arms,
12   466 Fed. 3d, 88, the Second Circuit applied that principle in
13   reversing a District Court dismissal of an action based on
14   considerations of international comity.  It made clear that,
15   only in the most exceptional circumstances should a District
16   Court surrender jurisdiction in favor of a parallel foreign
17   proceeding.
18             I see no exception or extraordinary circumstances here
19   that warrant my staying my hand in favor of the Indian
20   proceeding.  Indeed, the only argument that I can imagine is
21   the first filed argument, and it seems to me it just doesn't
22   cut it here.  I see no more reason to stay my hand here than in
23   any other circumstance involving parallel proceedings, even
24   assuming that we are dealing here with parallel proceedings.
25             The next argument is that the petition should be
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

27

```
     6c7zallm                  Motion
 1   dismissed because there was in fact no arbitration agreement.
 2   It may well be that if the defendant can demonstrate the lack
 3   of an arbitration agreement, or if the burden is on the
 4   plaintiff, if the plaintiff should fail to demonstrate the
 5   existence of such an agreement, the petition ultimately will be
 6   denied or dismissed.  That certainly cannot be determined on a
 7   motion to dismiss the petition, and I do not have a record
 8   before me that's adequate to that task.
 9             Finally, the defendant requests that I require the
10   plaintiff to post counter security.  I'm simply going to take
11   that under submission.
12             So that the disposition here is that the motion,
13   insofar as it seeks vacated order of the writ of Maritime
14   attachment and dismissal of the petition, is denied.
15             Insofar as it seeks counter security, decision is
16   reserved.  Anything further, folks?
17             MR. LENNON:  Your Honor, on the counter security
18   issue?  I understand the Court's taken that under advisement,
19   but I would only point out there hasn't been a counterclaim
20   asserted here, which would be required first before that motion
21   was actually properly before the Court.
22             THE COURT:  I'll take that into consideration.
23             MR. LENNON:  Thank you, your Honor.
24             THE COURT:  All right.  Thank you, folks.
25             (Adjourned)
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```