**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Defendant
Fuchuen Dihai Shipping Co. Ltd.
Empire State Building
350 Fifth Avenue, Suite 3304
New York, New York 10118
Phone:(201) 882-0303
Fax:    (201) 301-3576
E-mail: rwanchoo@wanchoolaw.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                        :
TRANSFIELD ER CAPE LIMITED                              :
                                                        :     ECF CASE
                        Plaintiff,                      :
                                                        :     07 cv 4528 (MGC)
                                                        :
        - against -                                     :
                                                        :
FUCHUEN DIHAI SHIPPING CO. LTD., AND   :
ZHEJIANG FUCHUEN CO. LTD.                               :
                                                        :
                        Defendants.                     :
                                                        :
---------------------------------------------------------------X


**DEFENDANT FUCHUEN DIHAI SHIPPING CO. LTD'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO VACATE MARITIME RULE B ATTACHMENT**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................... 3

**PRELIMINARY STATEMENT** ..................................................................... 5

**REPLY TO PLAINTIFF'S FACTS** ................................................................ 6

**ARGUMENTS** ................................................................................................ 7

**POINT I**
**PLAINTIFF HAS NOT SATISFIED ITS BURDEN OF PROOF UNDER
SUPPLEMENTAL ADMIRALTY RULE B AND E(4)(f)** ............................... 7

**POINT II**
**THE COURT DOES NOT HAVE ADMIRALTY JURISDICTION OVER
PLAINTIFF'S CLAIM WHICH ARISES UNDER AN ALLEGED BREACH
OF A SETTLEMENT AGREEMENT** ............................................................ 11

**POINT III**
**THE ATTACHMENT SHOULD BE VACATED BECAUSE DEFENDANT
FUCHUEN IS PRESENT IN THE SAME DISTRICT WHERE PLAINTIFF
IS LOCATED** ................................................................................................14

**CONCLUSION** ............................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

Aifos Trade SA v. Midgulf International Ltd.,

06-203 (S.D.N.Y. May 1, 2006) ........................................................... 17

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,

460 F.3d 434 (2d. Cir. 2006).................................................... 7, 14, 16

Aqua-Marine Constructors v. Banks,

1993 U.S. Dist. LEXIS 17541 (D. Or. 1993)...................................... 13

Blake Maritime, Inc. v. Petrom S.A.,

2005 U.S. Dist. LEXIS 26310 (S.D.N.Y. 2005).................................. 15

Brown v. M/V Global Link,

2003 U.S. Dist. LEXIS 14723 (S.D.N.Y. 2003).................................. 12

Consolidated Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson,

645 F. Supp. 884 (S.D. Fla. 1986) ...................................................... 12

D/S A/S Flint v. Sabre Shipping Corp.

228 F. Supp. 384 (E.D.N.Y. 1964) ..................................................... 15

Fednav, Ltd. v. Isoramar, S.A.,

925 F.2d 599 (2d Cir. 1991)................................................................ 11

Greenslate v. Tenneco Oil Co.,

623 F. Supp. 573 (D. La. 1985) .......................................................... 13

Mulvaney v. Dalzell Towing Co.,

    90 F. Supp. 259 (S.D.N.Y. 1950)..................................................................... 12

Oceangate Trans. Co. Ltd. v. R.P. Logistics Pvt. Ltd. *et al.*,

    2007 U.S. Dist. Lexis 46841, (S.D.N.Y. 2007) ...................................... 17

United Philippine Lines v. Metalsrussia Corp.,

    1997 U.S. Dist. LEXIS 5616  (S.D.N.Y. 1997)..................................... 12

Winter Storm Shipping Ltd. v. TPI,

    310 F. 3d 263 (2d Cir. 2002)..................................................................... 14

**Statutes**

28 U.S.C. §1333 ............................................................................................. 13

## PRELIMINARY STATEMENT

Defendant, Fuchuen Dihai Shipping Co. Ltd. ("Fuchuen", or Defendant) by and through its undersigned counsel, Law Offices of Rahul Wanchoo, respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiff's, Transfield ER Cape Ltd.'s ("Transfield" or "Plaintiff") complaint and vacate the Rule B attachment. Plaintiff has filed a consolidated Memorandum of Law in Opposition to the Motions to Vacate Maritime Attachment ("Plaintiff's Cons. Opp.") filed by defendants Zhejiang Fuchuen Co. Ltd. ("Zhejiang") and Fuchuen. We will respond only to those arguments in Plaintiff's Cons. Opp. which relate to Defendant Fuchuen.

At the outset, Defendant Fuchuen would like to correct an erroneous contention put forward by Transfield that it entered into a charter party with Fuchuen Dihai Shipping as a Hong Kong company and that it altered its name on the charter party with "White Out" to show that it was a "B.V.I. company instead of a Hong Kong company." *See Declaration of Chris Howse in Opposition to Defendants' Motion to Vacate Maritime Attachment at ¶ 9.* In fact, as clarified by Mr. Paul Rodgers Fuchuen Dihai Shipping Hong Kong was not in existence at the time the parties entered into the charter, but was "only incorporated in late 2004 several months AFTER the charter party in question. *Second Declaration of Paul Robert Rodgers in support of Defendants' Motion to Vacate Maritime Attachment*

*dated July 23, 2007 ("Rodgers Second Decl.").* Plaintiff entered into a charter party with Fuchuen Dihai Shipping Co. Ltd. with a registered address in the British Virgin Islands. Id. at ¶ 7. Thus, there is absolutely no merit to Plaintiff's allegation that Fuchuen Dihai B.V.I "misrepresented the close relationship between the defendants when it filed its Amended Rule 7.1 Statement with this Court." *Howse Decl. ¶ 3.*

## REPLY TO PLAINTIFF'S FACTS

Reference is made to Rodgers & Co Solicitors (Asia) Pte Ltd's letters dated July 10 and July 17, 2007 along with the Reply Submissions served on behalf of Fuchuen in the London arbitration, copies of which are attached to the Reply Declaration of Rahul Wanchoo ("Wanchoo Reply Decl.") as Exhibits 1 and 2, respectively. Reference is also made to the Second Declaration of Paul Rodgers dated July 23, 2007 ("Rodgers Second Decl."). Additional facts relevant to Fuchuen's motion to vacate the attachment are set forth in the affidavit of Rahul Wanchoo dated July 2, 2007 ("Wanchoo Aff.") and the declaration of Paul Rodgers dated June 27, 2007 ("Rodgers Decl.") (Annexed as Exhibit F to the Wanchoo Aff.), and the exhibits annexed thereto, to which the Court is respectfully referred.

## ARGUMENTS

## POINT I

## PLAINTIFF HAS NOT SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULE B AND E(4)(f).

Supplemental Admiralty Rule E(4)(f) clearly places the burden on the

plaintiff to show that an attachment was properly ordered and complied with the

requirements of Rules B and E.  See Aqua Stoli Shipping Ltd. v. Gardner Smith

Pty. Ltd., 460 F.3d 434, 445 n. 5 (2d. Cir. 2006).  In addition to having met the

filing and service requirements of Rule B, the plaintiff must show and that it has a

valid prima facie admiralty claims against the defendant.  Id.  In the present case,

the evidence clearly shows that the plaintiff does NOT have a "**valid**" prima facie

admiralty claim against Defendant Fuchuen.

Plaintiff first obtained an ex parte order of maritime attachment from this

Court on June 17, 2004, almost two months before it in fact commenced arbitration

proceedings against Fuchuen in London for a claim which was considered by

Fuchuen's solicitors to be no more than a 'nuisance claim'. *See Rodgers Decl., Ex.*

*1 p.7*. Transfield's claim was based on an allegation that Fuchuen failed to

discharge the cargo on a Customary Quick Dispatch ("CQD") basis in China.

*Rodgers Decl. ¶4 (a)*.  However, no evidence was ever produced to substantiate

these allegations or quantify Transfield's losses for the alleged detention of the

vessel.   Notwithstanding, on or about August 3, 2004 Transfield commenced

arbitration against Fuchuen in London and appointed its arbitrator. Id. From about

August 2004 to February 2005, Transfield took absolutely no step to prosecute its

claim in the London arbitration and in September 2004 Plaintiff voluntarily

dismissed the New York complaint because none of Fuchuen's assets were located

in jurisdiction of this Court.

On or about July 2005, Plaintiff and Fuchuen settled their disputes, whereby

Fuchuen agreed that Transfield was to terminate the arbitration proceedings

effective immediately and Fuchuen will not recover its substantial legal defense

costs against Transfield. *Rodgers Second Decl. ¶ 6; Wanchoo Reply Decl., Ex. 2*

*¶¶12-17.* Since 2005 Fuchuen's position has consistently been that the charter

party dispute between Transfield and Fuchuen was settled. *Wanchoo Reply Decl.,*

*Ex. 2 ¶22.* Indeed, on or about July 2006, Transfield's solicitors advised the

arbitrators that "the matter has now been amicably settled and we should therefore

be grateful if the Tribunal close this file". *Rodgers Decl. Ex. 3; Wanchoo Reply*

*Decl., Ex. 2 ¶18 .* On the other hand, Plaintiff has taken inconsistent and

contradictory positions with respect to the settlement of the parties' dispute. See

*Wanchoo Reply Decl., Ex. 2 ¶29.* In London Plaintiff argues that no settlement had

been reached between the parties. *See Murphy Decl., Ex.1.* However, in the 2007

(second) Rule B proceedings which Plaintiff commenced in May 2007 it pleads

that "the parties negotiated a compromise settlement" and that Fuchuen has

"denied the existence of the settlement agreement". *Plaintiff's Compl. ¶¶ 15-16;*

*Wanchoo Reply Decl., Ex. 2 ¶29(e)*. On the contrary, it has always been Fuchuen's

position that the parties' disputes arising under the Charter Party dated November

28, 2003 were settled in 2005 and that "the original cause of action has been

extinguished by reason of that settlement." *See Rodgers Decl., p. 5.* Plaintiff also

erroneously claims that Fuchuen failed to pay amounts due and owing under the

settlement agreement. *Plaintiff's Compl. ¶ 17.* In fact, the settlement agreement is

completely silent with regard to any monetary damages payable to the Plaintiff.

*See Rodgers Decl., Ex. 2 p. 5.*

In the 2007 (second) Rule B complaint Plaintiff has pled its claim arising out

of Fuchuen's alleged breach of the charter party as follows:

6. On or about November 28, 2003, Plaintiff and Defendant Fuchuen Dihai entered into a charter party whereby Plaintiff agreed to supply a sea going vessel to Defendant Fuchuen Dihai to carry a total volume of 170,000 metric tons of iron ore from one safe berth, one safe port at Ponta Do Ubu, Brazil to a final discharge at one or two safe berths, one safe port at Beilun, Peoples Republic of China.

7. Defendant Fuchuen Dihai was required to pay Plaintiff $33.50 per metric ton of cargo carried on the performing vessel. Defendant Fuchuen Dihai was further required to pay demurrage, or additional hire for use of the Plaintiffs vessel in excess of the time permitted under the contract of charter, at a rate set forth in the contract depending on the gross tonnage of the performing vessel. Detention of the vessel required that Defendant Fuchuen Dihai pay Plaintiff $100,000 per day.

8. Plaintiff nominated the M/V "Alina" to perform the carriage of the cargo

contemplated by the charter party.

9.  Pursuant to the aforesaid agreement the Plaintiff employed the M/V "Alina" to perform the carriage of Defendant Fuchuen Dihai's cargo and thus vessel arrived at the discharge port of Beilum, China on March 14, 2004.

10. Due to a shortage of storage capacity and barge availability the Defendant Fuchuen Dihai's cargo was not fully discharged from the M/V "Alina" until April 8, 2004 in breach of the agreement.

11. Disputes arose among the parties regarding Defendant Fuchuen Dihai's failure to pay detention due and owing to Plaintiff under the agreement.

12. As a result of Defendant Fuchuen Dihai's breach of the agreement, as best as may be reasonably approximated, Plaintiff sustained damages in the total principal amount of $2,475,000.00, exclusive of interest, arbitration costs and attorney's fees."

Plaintiff's own evidence shows that any and all claims and disputes arising out of the Charter Party dated November 28, 2003 as pled above were referred to the London arbitrators in August 2004. *Rodgers Decl. Ex. 1.* All such disputes were settled between the parties in July 2005.[1] *Rodgers Decl. Ex. 3.* Accordingly, there are no outstanding claims or disputes arising under the November 28, 2003 charter party. It is thus clear, that Plaintiff has no cause of action and hence no valid basis to bring the present Rule B action before this Court.

---

[1] The Court will note that Plaintiff is now alleging detention damages of $100,000 per day versus $80,000 per day demanded in the 2004 complaint thereby inflating its claim from $1,980,000 to $2,475,000, exclusive of interest, attorneys' fees and arbitration costs. Wanchoo Aff. ¶ 5. In the event the Court finds that Plaintiff has a valid prima facie admiralty claim against Fuchuen, which is denied, Defendant Fuchuen requests the Court to hold an evidentiary hearing on Plaintiff's alleged damages.

Even under the limited inquiry that this Court must conduct at the Supplemental Rule E4(f) post-attachment hearing as contemplated by the Second Circuit in Aqua Stoli, Plaintiff cannot meet its burden to demonstrate that this Court's attachment order was validly issued. Accordingly, we respectfully submit that the Court should vacate the Rule B attachment because Plaintiff has failed to make out a valid prima facie admiralty claim against the Defendant, Fuchuen.

## POINT II

### THE COURT DOES NOT HAVE ADMIRALTY JURISDICTION OVER PLAINTIFF'S CLAIM WHICH ARISES UNDER AN ALLEGED BREACH OF A SETTLEMENT AGREEMENT

Plaintiff argues in the alternative that it has alleged a valid prima facie admiralty claim for a breach of a settlement "which is itself a maritime contract." *Plaintiff's Cons. Opp. at p. 9.* Defendant Fuchuen in its Memorandum Of Law in Support Of its Motion To Vacate The Maritime Attachment (Fuchuen's Memo in Support") has set forth the test which District courts have used for determining whether a contract is maritime in nature so as to exercise the court's jurisdiction over disputes arising out of such contracts. *Fuchuen's Memo in Support at pp. 12-16.* The cases discussed in Fuchuen's Memo in Support clearly show that settlement agreements relating to charter party or bill of lading disputes are NOT maritime contracts. Fednav, Ltd. v. Isoramar, S.A., 925 F.2d 599, 601 (2d Cir.

11

1991); United Philippine Lines v. Metalsrussia Corp., 1997 U.S. Dist. LEXIS

5616, 6* (S.D.N.Y. 1997). See also Mulvaney v. Dalzell Towing Co., 90 F. Supp.

259, 260 (S.D.N.Y. 1950) ("If this is an action for breach of contract to

compromise and settle, it is not within the admiralty jurisdiction."); Consolidated

Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson, 645 F. Supp. 884, 886 (S.D.

Fla. 1986) ("An agreement to satisfy an obligation arising from a maritime tort or

contract is not a maritime contract, and an action for breach of such a contract is

not an admiralty claim.").

Plaintiff's reliance on Brown v. M/V Global Link, 2003 U.S. Dist. LEXIS

14723 (S.D.N.Y. 2003) that this court has subject matter jurisdiction for an action

for an alleged breach of settlement of a charter party claim is clearly misplaced.

Brown, involved a personal injury action brought by an injured seaman against the

defendant ship owner under the Jones Act.  The seaman settled his claim with the

ship owner and the court entered a 60-day order, dismissing the action with

prejudice, and subsequently entered a stipulation of dismissal. Id. at *1-*2.  When

a dispute arose regarding defendants' compliance with the settlement agreement,

the seaman requested that the court reinstate the action and enforce the agreement.

Id. at *2-*3. The court held that it had jurisdiction to enforce the settlement

agreement as it related to maritime employment. "It is a maritime contract

extinguishing plaintiff's claims against defendants for injuries sustained while employed on a maritime vessel." Id. at *5.

No such facts are present in the instant case. Unlike Brown, Plaintiff is not a ward of the court nor was the settlement conducted under the auspices of this Court. The settlement agreement does not refer to the disputes arising under the charter party dated November 28, 2003 nor does it provide for any monetary damages payable by Fuchuen to Plaintiff. Plaintiff simply dropped its claim in expectation of some future unspecified business. *Rodgers Decl. ¶ 4(a)*. The settlement agreement has no more than a "speculative and attenuated" connection with maritime commerce. See Folksamerica, 413 F.3d at 313. Thus the Settlement Agreement is at best collateral to a maritime contract of charter party. See Aqua-Marine Constructors v. Banks, 1993 U.S. Dist. LEXIS 17541 (D. Or. 1993), at 3*-4* citing, Greenslate v. Tenneco Oil Co., 623 F. Supp. 573, 576 (D. La. 1985).

Accordingly, we respectfully submit that the settlement agreement in question and any dispute arising therefrom is NOT a maritime dispute cognizable by this Court under 28 U.S.C. §1333.

## POINT III

## THE ATTACHMENT SHOULD BE VACATED BECAUSE DEFENDANT FUCHUEN IS PRESENT IN THE SAME DISTRICT WHERE PLAINTIFF IS LOCATED

In Aqua Stoli, the Second Circuit held that "a maritime attachment would likewise be properly vacated if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets". Aqua Stoli, 460 F.3d at 444-45 (emphasis added). Plaintiff argues that the factors established by the Second Circuit in Aqua Stoli for vacating a maritime attachment apply only to "across the river" cases and not "where the defendant is located elsewhere around the globe." *Plaintiff's Cons. Opp. at pp. 25-26.* Plaintiff's argument is untenable and clearly not supported by the facts of that case.

First, the cases cited by the Aqua Stoli court in its discussion of "district" and "jurisdiction" should be put in its proper historical context. All the so-called "across the river cases" pre-dated the Second Circuit's ruling in Winter Storm which held that electronic fund transfers to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction. See Winter Storm Shipping Ltd. v. TPI, 310 F. 3d 263, 273 (2d Cir. 2002). Prior to Winter Storm, Rule B attachments were generally limited to the attachment of defendants' bank accounts in the United States where the defendants were not present in that

14

district. Typically in those cases the defendant had its assets in one district and maintained a place of business in an adjacent district, and the question for the court was whether it may vacate the attachment as defendant was subject to suit in a convenient adjacent jurisdiction. For example, in <u>D/S A/S Flint v. Sabre Shipping Corp. 228 F. Supp. 384 (E.D.N.Y. 1964)</u> the plaintiff had attached assets in the Eastern District belonging to the defendant, who maintained a place of business in the Southern District and conducted some business in the Eastern District. In deciding whether to vacate the attachment, the District Court looked to the textual requirements of the Rule B statute which provided that the defendant could not be "found" within the district. Because the defendant's business presence in the Eastern District was sufficient to subject it to personal jurisdiction and because the defendant could be served there, the defendant could be "found" within the Eastern District, and the attachment was held to be improper. <u>Id.</u> at 389–90.

The Second Circuit's ruling in <u>Winter Storm</u> has changed the whole landscape of Rule B Attachments in New York. "Since US Dollar-denominated EFTs are invariably routed through New York", it has "spawned a 'cottage industry of Rule B attachments'" which has "forced this District to resolve numerous secondary disputes over the attachments of EFTs, which must be resolved on an expedited basis." <u>See</u> <u>Blake Maritime, Inc. v. Petrom S.A.</u>, 2005 U.S. Dist. LEXIS 26310, *4-5 (S.D.N.Y. 2005). In majority of the post <u>Winter</u>

15

Storm Rule B cases, both plaintiff and defendant are present in foreign

jurisdictions where they are either litigating or arbitrating their disputes. The only

connection the parties have with the United States is the fleeting presence of the

defendant's assets in the form of electronic wire transfers passing through New

York banks. Accordingly, we submit that the Court should consider the definition

of the words "district" and "jurisdiction" in the context of the present day Rule B

attachments where invariably plaintiffs and defendants are both located in foreign

jurisdictions.

Second, in Aqua Stoli the plaintiff was a Liberian company while the

defendant was an Australian company. The Second Circuit held that the

defendant's rebuttal did not establish any of the limited grounds that could justify

vacatur, namely that "it would be subject to in personam jurisdiction in an adjacent

district, that it was located and subject to personal jurisdiction in the same district

as [plaintiff]", i.e., Liberia. Aqua Stoli, 460 F.3d at 447. We submit that had the

plaintiff in Aqua Stoli been an Australian company, the Second Circuit would have

vacated the attachment as the parties would have been both present in the same

"district" and plaintiff could obtain in personam jurisdiction over defendant in

Australia where its assets were located. Id. Thus, there is no merit to Plaintiff's

arguments that this Court should limit the words "district" and "jurisdiction" to

"across the river" situations and not where the parties are located outside the United States.

Plaintiff cites to <u>Aifos Trade SA v. Midgulf International Ltd.</u>, 06-203 (S.D.N.Y. May 1, 2006), (copy attached to *Murphy Decl. as Ex. 4*) and argues that that case correctly analyzed the concept of "convenience" in a Rule B setting. However, in that case defendant was asserting that the case should be dismissed and the attachment vacated on the grounds of forum non conveniens. More importantly, <u>Aifos Trade</u> was decided before <u>Aqua Stoli</u>, and hence the "limited circumstances" under which a court may vacate the attachment were never considered by that court. Thus, <u>Aifos Trade</u> is clearly irrelevant to the discussion whether a court may vacate the attachment where plaintiff and defendant are both located in the same district.

Finally, Judge Sweet in a very recent case rejected the narrow definition of "district" propounded by Plaintiff and under the <u>Aqua Stoli</u> analysis vacated the maritime attachment where plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff was located, that is either Kolkata or Hong Kong. See <u>Oceangate Trans. Co. Ltd. v. R.P. Logistics Pvt. Ltd. *et al.*</u>, 2007 U.S. Dist. Lexis 46841, *16-17 (S.D.N.Y. 2007).

Similarly, in the present case, Plaintiff brings the present Rule B proceedings in the Southern District of New York to attach Fuchuen's assets for an alleged

17

breach of a charter party contract which was executed by both parties at Hong

Kong, or alternatively for an alleged breach of a settlement agreement which was

negotiated by both parties also in Hong Kong. Furthermore, Transfield and

Defendant Fuchuen are both incorporated under the laws of the British Virgin

Islands. See *Wanchoo Aff. Ex. C, ¶2; Wanchoo Reply Decl. Ex. 3*. Plaintiff and

Defendant both have their offices in Hong Kong and conduct their respective

businesses from Hong Kong. See *Wanchoo Aff. Ex. G & H*.  As Plaintiff and

Defendant Fuchuen are both incorporated in the British Virgin Islands and have

offices in Hong Kong, Plaintiff could easily obtain in personam jurisdiction over

Fuchuen in either the British Virgin Islands or Hong Kong where Plaintiff is

located.  These facts fit squarely within the "limited circumstances" factors laid

down by the Second Circuit in <u>Aqua Stoli</u> under which a district court may

properly vacate the attachment. Thus, the Court should vacate the attachment in the

present case.

## CONCLUSION

**FOR ALL THE REASONS STATED HEREIN AND IN ITS MEMORANDUM OF LAW, DEFENDANT, FUCHUEN DIHAI SHIPPING CO. LTD. RESPECTFULLY SUBMITS THAT DEFENDANT'S MOTION TO DISMISS THE VERIFIED COMPLAINT AND VACATE THE ATTACHMENT SHOULD BE GRANTED.**

Dated:    New York, NY
          July 23, 2007

Respectfully submitted,

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Defendant
Fuchuen Dihai Shipping Co. Ltd.

By: _Rahul Wanchoo_
     Rahul Wanchoo (RW-8725)

To:    Lennon, Murphy & Lennon, LLC
      Attorneys for Plaintiff
      Transfield ER Cape Limited.
      420 Lexington Avenue, Suite 300
      New York, NY 10170

      Chalos, O'Connor & Duffy, LLP
      Attorneys for Defendant,
      Zhejiang Fuchuen Co. Ltd.
      366 Main Street
      Port Washington, New York 110050